COPY

1  BARRETT S. LITT, SBN 45527
   E-Mail: blitt@kmbllaw.com
2  DAVID MCLANE, SBN 124952
   KAYE, MCLANE, BEDNARSKI & LITT, LLP
3  234 Colorado Blvd., Suite 230
   Pasadena, California 91101
4  Telephone: (626) 844-7660
   Facsimile: (626) 844-7670
5

6  KONRAD L. TROPE, SBN 133214
   MARK S. FAULKNER, SBN 102679
7  CENTURION LAW GROUP, P.C.
   9107 WILSHIRE BLVD., STE. 450
8  BEVERLY HILLS, CA 90210
   TEL: 888-942-9997
9  FAX: 888-942-9997
   EMAIL: ktrope@centurionlawgroup.com
10

11 ATTORNEYS FOR PLAINTIFF
   VALLEY SURGICAL CENTER, LLC
12

13                UNITED STATES DISTRICT COURT

14        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                      WESTERN DIVISION

16 VALLEY SURGICAL CENTER,        Case No. CV13-02265-DDP(AGR)

17 LLC, a California Limited Liability
   Company,

18                                 COMPLAINT FOR DAMAGES
                                   AND INJUNCTIVE RELIEF:
19        Plaintiff,

20        vs.                      1.  VIOLATIONS OF
                                       CONSTITUTIONAL RIGHTS
21 COUNTY OF LOS ANGELES, a            UNDER *42 U.S.C. § 1983*
   government entity,  LAKSHMANAN  2.  VIOLATIONS OF
22 SATHYAVAGISWARAN, M.D., an          CONSTITUTIONAL RIGHTS
   individual, ADRIAN MARINOVICH,      UNDER *42 U.S.C. § 1983* -
23 M.D., an individual, RAFFI           *MONELL* AND SUPERVISORY
   DJABOURIAN, M.D. , an individual,    LIABILITY
24 DENIS C. ASTARITA, M.D. , an     3.  VIOLATIONS OF STATE LAW
   individual, SELMA CALMES, M.D.,  4.  INJUNCTIVE RELIEF
25

26

27 Case No. _____           COMPLAINT FOR DAMAGES
                                   AND INJUNCTIVE RELIEF

                                  1

FILED
CLERK, U.S. DISTRICT COURT
MAR 2 9 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

an individual, JOHN KADES, an individual, ED WINTER, an individual, and DOES 1-10,

    Defendants.

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.    For the past nineteen months, the Los Angeles County Coroner's Office ("Coroner's Office") has been pursuing what can only be described as a vendetta against Valley Surgical Center, LLC ("Valley"), arising out of its investigation into the death of Paula Rojeski after weight loss surgery at Valley. The Coroner's Office has systematically engaged in conduct violating Valley's constitutional rights.  The Coroner's Office and its representatives have falsified the available and known evidence regarding the Rojeski surgical procedure and misrepresented the cause of death by contending that this fabricated evidence demonstrates that the surgical procedure caused the death. The Coroner's Office has forwarded the same fabricated evidence to the LAPD Robbery-Homicide Division and to the next of kin of Paula Rojeski.  In violation of the Coroner's Office own Security Hold, the Coroner's Office has leaked aspects of the as yet unreleased autopsy report and investigation to the media. A Coroner's Office representative, at a public forum, referred to the supposed facts she found and presented false facts that were readily identifiable as a reference to the Rojeski death at Valley.

2.    Far from being an impartial investigative body seeking the truth, the Coroner has demonstrated a clear bias against Valley, which disqualifies it from continuing to investigate the Rojeski death. This bias has been manifested by,

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

*inter alia*, (1) using a principal investigator who is a strident advocate of banning ambulatory surgery centers from performing weight loss surgery and who was the person whose initial report fabricated and falsified the surgical evidence on which the Coroner has systematically relied; (2) placing a supposed "security hold" (the legal basis of which has never explained) on its investigation to justify not communicating its report to Valley while simultaneously communicating it to others, including the Rojeski family; (3) threatening to release the autopsy report – the investigation of which has to date taken 19 months – if Valley or anyone else were to publicly disclose or complain of the wrongful actions of the Coroner's Office; (4) relying on the unverified allegations of an anonymous source; and (5) obtaining access to Valley's surgical offices by presenting a subpoena demanding access for which it did not have  the legal authority represented in the subpoena.

      3.    The Coroner's actions (not all of which are recounted above) have resulted in numerous violations of Valley's constitutional rights and state laws and the liberty and property interests protected by these state laws, including violations of due process based on the deliberate falsification of evidence in the autopsy and use of that report to trigger a criminal investigation, recommending disciplinary proceedings, and jeopardizing Valley's accreditation.  In addition, the Coroner's Office has intimidated and chilled Valley's exercise of its rights to free speech, to petition the government, and to access the courts, violated its right to be free from unreasonable search and seizure, deprived it of procedural and substantive due process of law, and deprived it of equal protection of the law. Defendants have engaged in a systematic campaign lasting over a year resulting in the deprivation of Valley's constitutional rights and threatened its very existence in doing so.

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

4.     It is the Coroner's repeated threats to release the extant autopsy report that brings Valley to seek *ex parte* relief, i.e., for a Temporary Restraining Order to restrain the Coroner from taking further action, including release of the extant autopsy report or any modified report pending a hearing on Valley's motion for preliminary injunction, at which Valley will request that the Coroner be preliminarily (and ultimately permanently) enjoined from further participation and investigation into the death of Paula Rojeski or forwarding or divulging its current report or any variant thereof. (This would not preclude Los Angeles County from requesting that a coroner from another county or other independent body be appointed to complete the investigation and issue a report not based on fabricated evidence).

5.     There is a grave likelihood that Valley's very existence will be fatally destroyed if this Court does not act. Valley has already been severely damaged by the conduct at issue in this case – its business has dramatically declined due to the cloud over its head because of the implication that Ms. Rojeski died due to Valley's actions, and it has spent large sums of money (including attorneys and expert consultants) defending itself against the fabricated evidence and other conduct of the Coroner's Office. If this false report is allowed to issue, Valley will likely have its accreditation and certification withdrawn by The Joint Commission, which accredits health care facilities in California.  Without that accreditation, Valley will be forced to close its doors.

## PARTIES

6.     Plaintiff Valley Surgical Center, LLC, is a California limited liability company with a principal place of business in the County of Los Angeles.

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

4

1    7.    Defendant County of Los Angeles is a government entity operating

2  under the laws of the State of California.  Defendant County of Los Angeles

3  oversees the Department of the Coroner (hereinafter collectively referred to as the

4  "Coroner's Office").  The Coroner's Office is a governmental entity operating

5  under the laws of the State of California and also operating under the regulations

6  of the County of Los Angeles.

7    8.    Defendant Lakshmanan Sathyavagiswaran, M.D. is an individual

8  employed by the County of Los Angeles and is officially listed as the Interim Head

9  of the Los Angeles County's Department of the Coroner ("Sathyavagiswaran"). He

10  is being sued in his individual and official capacities.

11    9.    Defendant Adrian Marinovich, M.D. is an individual who was

12  employed by the County of Los Angeles ("Marinovich").  He is being sued in his

13  individual capacity.

14    10.    Defendant Raffi Djabourian, M.D. is an individual employed by the

15  County of Los Angeles as Senior Deputy Medical Examiner ("Djabourian").  He is

16  being sued in his individual capacity.

17    11.    Plaintiff is informed, believes, and thereon alleges that Defendant

18  Denis C. Astarita, M.D. is an individual retained by the Coroner's Office as an

19  outside consultant with the title of Deputy Medical Examiner ("Astarita").  He is

20  being sued in his individual capacity.

21    12.    Plaintiff is informed, believes, and thereon alleges that Defendant

22  Selma Calmes, M.D. is an individual retained by the Coroner's Office as an

23  outside consultant with the title of Deputy Medical Examiner ("Calmes"). She is

24  being sued in her individual capacity.

25

26

27  Case No. _____                    COMPLAINT FOR DAMAGES
                                            AND INJUNCTIVE RELIEF

13.     Plaintiff is informed and believes and thereon alleges that Defendant John Kades, is an individual employed by the County of Los Angeles as a Deputy Coroner, with the rank of Captain within the Investigations Division of the Department of the Coroner ("Kades").  He is being sued in his individual capacity.

14.     Plaintiff is informed and believes and thereon alleges that Defendant Ed Winter, is an individual employed by the County of Los Angeles as the Assistant Chief Investigator, Operations Bureau, of the Department of the Coroner ("Winter").  He is being sued in his individual capacity.

15.     Plaintiff is uncertain as to the identity or capacity of the other Defendants included herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by fictitious names.  Plaintiff is informed and believes and thereon alleges that said Defendants, DOES 1 through 10, inclusive, and each of these, are liable to Plaintiff on the facts herein alleged and will seek leave of this Court to amend this Complaint when true names are ascertained.

16.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of these Defendants was an agent, or employee of each of the other co-Defendants and, in doing the things herein alleged, was acting in the scope of his or her authority as such agent with the permission and consent of each of the other co-Defendants.

17.     Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

Case No. _____                          COMPLAINT FOR DAMAGES
                                              AND INJUNCTIVE RELIEF

All acts alleged herein are alleged as part of a conspiracy to violate Plaintiff's rights.

## JURISDICTION, VENUE AND DIVISION ASSIGNMENT

18.    The jurisdiction of this court over the subject matter of this action is predicated upon *28 U.S.C. §§ 1331 and 1343.*

19.    Venue is proper under *28 U.S.C. §1391(b)(2),* and assignment to the Western Division of this Court is proper, because a substantial part of the events or omissions giving rise to the claims herein occurred in Los Angeles County, California.

20.    Plaintiff's federal claims arise under the United States Constitution, in particular the First, Fourth, Fifth, and the Fourteenth Amendments.  In addition, Plaintiff's federal claims arise under federal law including, but not limited to, the federal Civil Rights Act, *Title 42, United States Code §§ 1983.*  The acts and omissions of Defendants and others, as alleged herein, were committed by Defendants and others, and each of them, under color and pretense of the Constitution, statutes, ordinances, rules, regulations, practices, customs, patterns, and usages of the State of California and/or of the counties referenced herein.  Supplemental jurisdiction for the state claims is appropriate pursuant to *28 U.S.C. § 1367(b).*

## OVERVIEW OF RELIEF SOUGHT

21.    Valley Surgical Center, LLC ("Valley") seeks injunctive relief and damages against the Coroner's Office, its agents and employees and outside retained consultants, including but not limited to Dr. Lakshmanan Sathyavagiswaran, Dr. Adrian Marinovich, Dr. Raffi Djabourian, Dr. Denis C. Astarita, Dr. Selma Calmes, and Ed Winter restraining them from having further

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

1   participation in the death investigation of Paula Rojeski. In this 19 month
2   investigation, the Coroner's Office and its agents have engaged in reckless and
3   illegal conduct by drafting and disseminating a false autopsy report concerning the
4   death of Paula Rojeski.

5         22.    The Defendants' conduct violated Plaintiff's rights under the First,
6   Fourth, Fifth and Fourteenth Amendments (and their California analogues) –
7   including depriving them of the following statutes:

8         a.   Violate its due process right to a governmental investigation not
9              based on false and/or fabricated evidence;

10        b.   Violate its due process right to an unbiased governmental
11             investigation not based on false and/or fabricated evidence;

12        c.   Violate its due process right not to have exculpatory evidence
13             destroyed in bad faith;

14        d.   Violate its First Amendment and due process rights to petition the
15             government and to have access to the courts;

16        e.   Violate its First Amendment rights to engage in lawful speech
17             without being retaliated against for doing so;

18        f.   Violate its First Amendment rights to engage in lawful speech
19             without having its right to do so infringed upon and chilled by the
20             actions of governmental agents or employees;

21        g.   Violate its due process rights to petition the government and to
22             have access to the courts;

23        h.   Violate its Fourth Amendment right not to be subjected to an
24             unlawful search and seizure;

25        i.   Violate its equal protection and/or due process right not to be
26             singled out for irrational and/or arbitrary discriminatory treatment.

27  Case No. _____                    COMPLAINT FOR DAMAGES
                                            AND INJUNCTIVE RELIEF

23.    Defendants' conduct also violated, *inter alia*, (1) Cal. Gov't Code § 27491.4 (coroner must act in accordance with medico-legal practice); (2) Cal. Gov't Code § 27491.5 (coroner's report must be in accordance with facts ascertained from inquiry, autopsy and other scientific findings); (3) Cal. Gov't Code § 27491.45 and Cal. Health & Safety Code § 7151.2 (regarding appropriate organ harvesting); (4) Civil Code § 815.6 (violation of mandatory duty), and (5) Cal. Civil Code § 52.1 (use of threats, intimidation or coercion to interfere and attempt to interfere with exercise of rights secured by Federal or State Constitution or law.

## The Bariatric Surgery and the Failure by the Coroner to Preserve Evidence

24.    On September 8, 2011, Paula Rojeski, a 55 year old female, underwent laparoscopic surgery at Valley Surgical Center for placement of an adjustable gastric band to treat her longstanding obesity.   As demonstrated by the Anesthesia Record from the Rojeski surgery contained in the Figures below, the surgery lasted for 30 minutes, with a start time of 9:15 a.m. and a finish time of 9:45 a.m.  When the attending surgeon closed the patient, there were no indications of bleeding or complications.



9

25.     From 9:45 a.m. until approximately 10:55 a.m., the patient recovered from the anesthesia.[1] The anesthesiologist was available and continued to monitor the patient after the surgery ended. (The anesthesiologist remained by the patient's side and continued to observe the patient until 11:15 a.m. which is the reason that the Operating Room Record reflects that the anesthesiologist ended his monitoring at 11:15 and the patient was turned over to LA City Firemen for transport to the hospital). At 10:55 a.m., the patient suffered PEA (pulseless electrical activity) and cardiac arrest.  The surgeon at Valley Surgical Center initiated CPR and promptly called 911.

26.     LA City Firemen responded and initiated their own vigorous CPR on the deceased.  The significant resuscitative trauma and injuries included anterolateral fractures of the left rib 3, and right ribs 2, 3, 4, 5, 6, and 7.  There were also resuscitative injuries resulting in abrasions of the midline anterior chest.

27.     Prior to the initiation of resuscitation, there was no blood coming from the laparoscopic incisions.  However, following the resuscitation efforts from LA City Firemen, which broke her ribs, damaged her lungs, and caused hemorrhage into the mediastinum, the LA City Firemen also observed blood coming from the laparoscopic incisions.  The firemen then transported the patient to West Hills Medical Center at 11:15 a.m., where the patient was pronounced dead at 11:41 a.m.

28.     The Coroner's Office was informed of the death at 12:17 p.m. on September 8, 2011, and the case was accepted by Coroner's Representative Hiath with the Coroner's Reference No. 2011 1-05916.

---

[1]  The anesthesiologist stayed with the patient, which is why the records show 11:15 a.m. for the "Anesthesia End" time.  However, the administration of anesthesia ceased at 9:45 a.m. the same time as the conclusion of the surgery.

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

29.     Following the patient's death, there was extensive post-mortem tissue and bone procurement by OneLegacy, Inc. ("OneLegacy"), a tissue procurement company. The deceased's sister, Michele Pelter, gave authorization over the phone to OneLegacy, Inc. to harvest the heart, skin, and bones from the deceased. The authorization was given at 7:55 a.m. on September 9, 2011, the day following the surgery, but prior to the autopsy. Unfortunately, the Coroner did nothing to prevent the deceased's organs from being harvested, which interfered with the death investigation by failing to preserve exculpatory evidence, the value of which was known at the time. The Coroner did not even observe the harvesting.

30.     On September 12, 2011, the Los Angeles County Coroner's Office conducted an autopsy of Ms. Rojeski's body. The Coroner's Report states that "skin and bones, legs, arms, and back" were harvested from the patient's body before the autopsy. The organ procurement was so extensive that the pathologist wrote in the Coroner's Report, "Rigor mortis cannot be assessed due to prior organ procurement." *See* Coroner's Rojeski Final Report, attached hereto as Exhibit "6."

31.     The Coroner's Office knew that the deceased had suffered from PEA (pulseless electrical activity) which is frequently caused from a pulmonary embolism resulting from dislodging of blood clots from the lower extremities. When the paramedics arrived to transport Ms. Rojeski to the hospital, they knew about her PEA condition and her medical records accompanied her to the hospital. Indeed, the Hospital Emergency Room report and the report from the harvesting company all confirm Ms. Rojeski's PEA condition.

32.     Despite this knowledge, the Coroner's Office allowed OneLegacy organ procurement, without supervision, to extensively harvest bones from the lower extremities prior to autopsy destroying any opportunity of discovering

Case No. _____                     COMPLAINT FOR DAMAGES
                                         AND INJUNCTIVE RELIEF

1  possible blood clots in the lower extremities which may have led to a pulmonary
2  embolism. Such exculpatory evidence, was consciously and recklessly
3  disregarded by the Coroner's Office by its allowing OneLegacy to harvest
4  Rojeski's body for organs and tissue without significant limitations. Such
5  evidence, which is now destroyed, cannot be obtained by other means. Therefore
6  the Coroner should have denied harvesting of tissue from the lower extremities.
7  Further, the Coroner should have also denied harvesting of the heart and lungs as
8  well, but did not.

9    33.    Instead, the Coroner's Office did not observe the harvesting of the
10 tissues and bones or substantially or significantly limit in any way the harvesting
11 procedure. Nor did the Coroner's Office limit in any way the alteration and
12 disruption of the deceased's body, which interfered with the investigation, from
13 the skin and bones from the harvesting, as mandated by *California Health &*
14 *Safety Code § 7151.2* and *Cal. Gov't Code §27491.45*. The Coroner's Office
15 merely requested that OneLegacy's "recovery avoids operations site."

16   34.    Following the completion of the autopsy, the Coroner's office also
17 failed to embalm the body of the deceased, despite having the statutory authority
18 to do so under *Cal. Gov't. §27471*. Thus, the Coroner's Office allowed
19 destruction of the heart valves which it incorrectly interpreted as normal at
20 autopsy. As ample evidence shows, Ms. Rojeski had calcification of the heart
21 valves and moderate aortic regurgitation as evidenced by radiographic imaging.
22 Again the value of this exculpatory evidence was known at the time of destruction
23 of evidence. Rather than embalm the body and protect evidence which could not
24 be recovered by other means in this case where the cause of death was unknown,
25 the Coroner's Office instead chose to do a shoddy autopsy which missed the

26

27 Case No. _____                    COMPLAINT FOR DAMAGES
                                          AND INJUNCTIVE RELIEF

1  significant fact that the heart valves were damaged and allowed burial with

2  decomposition of the body.

3      35.    Any attempt to exhume Mrs. Rojeski's body for a re-examination

4  would be utterly useless, thereby permanently depriving Valley of this evidence.

5  Such spoliation of evidence, owing to the unsupervised tissue harvesting, and

6  failure to embalm the body, constitutes multiple violations of law enforcement's

7  duty to preserve evidence that might be expected to be exculpatory, as well as play

8  a significant role in any investigation.

9      36.    The value of this evidence was known at the time of its destruction as

10  being essential to Valley and its medical staff regarding any cause of death or

11  criminal investigation.  The failure to collect and preserve such evidence

12  materially affects the possibility of homicide charging recommendations and/or

13  decisions.  The failure to collect and preserve evidence substantially affects the

14  Coroner's recommendations for further disciplinary action by the California

15  Medical Board against Valley and its medical staff, and it significantly affected

16  the outcome of the Rojeski Final Report, which the Coroner seeks to release.

17      37.    Prejudice to Plaintiff has accrued from the foregoing failure to

18  preserve evidence as that evidence would have further confirmed that Plaintiff's

19  explanation of the circumstances of death are correct and would have further

20  undermined any suggestion that the death qualifies as a homicide or was the result

21  of gross negligence by Valley.  It is especially prejudicial to Valley because the

22  Coroner's Office refuses to rule out homicide as the cause of death, and also

23  recommends that Valley and two members of its medical staff be referred to the

24  California Medical Board for disciplinary proceedings.

25  ///

26  ///

27  Case No. _____                    COMPLAINT FOR DAMAGES
                                          AND INJUNCTIVE RELIEF

## **The Anonymous Letter and Illegal Search of Valley Surgical Center**

38.    On October 17, 2011, the Coroner's Office received an "anonymous letter" from an individual claiming that during the September 8, 2011 surgery: (1) oxygen tanks were empty, (2) fluids leaked on the floor, (3) the anesthesiologist recorded false information, (4) the monitoring equipment was broken, and (5) the times of the cardiac arrest were falsified[2] (the "Anonymous Letter").

39.    In late November, the Coroner's Office announced that it wanted to inspect the premises of Valley and in particular inspect Valley's anesthesia equipment and other medical equipment.  Valley then learned that the Coroner's Office had retained Selma Calmes, M.D., as its Anesthesia Consultant for the Rojeski case and that she would be accompanying the Coroner's team to the inspection of Valley's facilities.

40.    On or about December 1, 2011, prior to the Coroner's site inspection, Valley's counsel, Robert Silverman, sent a letter to the Coroner's Office protesting Dr. Calmes as the Consulting Anesthesiologist for the Rojeski investigation.  *See December 1, 2011 letter from Robert Silverman to Coroner's Office, attached hereto as Exhibit "1."*  The letter noted that Dr. Calmes had a publicly documented professional bias against ambulatory surgery centers.  *See Id.*  Dr. Calmes publicly stated in a previous autopsy report issued by the Coroner's Office in January 2011 that she considered any ambulatory outpatient facility to be an inappropriate platform for gastric banding procedures for patients with sleep

---

[2] Nevertheless, nowhere in the Rojeski Final Report was there any verification of any of these allegations.  In fact, Valley refuted all of the allegations in the Anonymous Letter as Valley provided full and complete surgical logs, medical records, and equipment maintenance logs to the Coroner's Office which disproved most, if not all, of the allegations in the Anonymous Letter.

Case No. _____        COMPLAINT FOR DAMAGES
                            AND INJUNCTIVE RELIEF

1   apnea. *See Exhibit "1" attached hereto and incorporated herein.*[3]  Despite her

2   obvious bias, the Coroner's Office refused to utilize a different anesthesiology

3   consultant and insisted that the inspection would go forward with Dr. Calmes in

4   attendance. *See December 2, 2011 letter from County Counsel to Robert*

5   *Silverman attached hereto and incorporated herein as Exhibit "2."*

6         41.    Notwithstanding the foregoing, the Coroner's Office issued an illegal

7   Administrative Subpoena on December 5, 2011 signed by John Kades, Deputy

8   Coroner, which improperly demanded that Valley consent to a search of its

9   premises and equipment. *See Exhibit "3".*  The Administrative Subpoena was

10  issued without any judicial adjudication or judicial review and thus was illegal on

11  its face in terms of compelling a search of Valley's premises by Dr. Calmes,

12        42.    The Coroner's Office appeared on December 5, 2011 at Valley's

13  facilities with this unauthorized and unlawful subpoena compelling Valley to

14  allow the Coroner's Office and "its duly appointed deputies" to access the

15  anesthesia equipment used on Ms. Rojeski.

16        43.    The Coroner's Office admitted at the time of the inspection that they

17  issued the subpoena solely to compel Valley to allow Dr. Calmes onto the

18  premises.[4]  *See Exhibit "3" attached hereto and incorporated herein.*

19

20  _____

21  [3] In that January 2011 autopsy report, Dr. Calmes cites to outdated guidelines issued by
    the American Society of Anesthesiologists in 2006.  The overwhelming majority of
22  scientific literature published since 2006 on this topic approves and endorses gastric
    banding procedures in an outpatient setting.  Thus, Dr. Calmes not only had a publicly
23  documented bias against Valley, but had relied on outdated scientific data to support her
    biased position. *See Exhibit "2"* attached hereto and incorporated herein.  This fact was
24  called to the Coroner's attention in a March 2011 letter from Valley's attorney, Robert
    Silverman, to the Coroner in March 2011.
25  [4] The issuance of an administrative subpoena to compel a "search" is illegal.

26

27  Case No. _____                    COMPLAINT FOR DAMAGES
                                             AND INJUNCTIVE RELIEF

15

44.     Because of the close nexus in time between Valley protesting Dr. Calmes appointment to the Rojeski investigation on December 1, 2011, and the issuance of the illegal Administrative Subpoena on December 5, 2011 compelling Valley, under threat of criminal contempt prosecution, to allow Dr. Calmes onto its premises, Plaintiff alleges, on information and belief, that this action was in retaliation for Valley's lawful exercise of its First Amendment right to petition the government and object to Dr. Calmes' participation, and that Valley's prior complaint regarding Dr. Calmes was a motivating factor in unlawfully presenting the administrative subpoena to search Valley's premises.

45.     At the inspection, Valley Surgical showed the Coroner's representatives its records demonstrating the Anonymous Letter was false:

    a.  there had been no defect in the equipment;

    b.  the oxygen system functioned correctly at the time of surgery;

    c.  the equipment had been serviced only 10 days earlier without incident, and;

    d.  two surgeries took place at the facility in the same operating room only 45 minutes after the Rojeski surgery without incident, utilizing the same equipment and oxygen system.

**The Coroner's Office Breached its Own Security Hold on the Investigation**

46.     For the next four months, Valley heard nothing from the Coroner's Office. Whenever Valley asked about the status of the investigation, the Coroner's Office replied that there was a "Security Hold" on the investigation, and nothing could be released or discussed until the investigation was completed.

47.     During the same four months, Valley discovered that an ex-employee had filed a "whistleblower" lawsuit against Valley, in which the whistleblower

Case No. _____                     COMPLAINT FOR DAMAGES
                                         AND INJUNCTIVE RELIEF

admitted to having made a written complaint to the Coroner's Office regarding the circumstances of Rojeski's death. Valley responded not only to the complaint, but also provided the Coroner's Office with information that refuted and disproved the allegations in the Whistleblower complaint and the Whistleblower's subsequent amended complaint. In the amended complaint, the plaintiff/Whistleblower significantly and substantially changed and revised the allegations concerning Rojeski's death. Valley requested the opportunity to discuss the alleged complaints with the Coroner's Office. However, the Coroner's Office, again, declined to meet with Valley's representatives replying that there was a "Security Hold" on the investigation, and nothing could be discussed until the investigation was completed.

48.    Then on or about April 6, 2012, several major news outlets, including the Los Angeles Times and the Orange County Register published a story that the Coroner's Office had referred the Rojeski investigation to the Los Angeles Police Department Robbery-Homicide Division. Thus, despite the Coroner's "Security Hold" on the investigation, the Coroner leaked its LAPD investigative referral to the news media. Valley's counsel spoke with Detective Dan Myers of the LAPD Robbery-Homicide division, who confirmed the Coroner's Office referral and that the Coroner's Office had not forwarded to the LAPD Valley's two letters which showed that the allegations regarding the death of Rojeski in both versions of the Whistleblower complaint were false. This was in violation of the Coroner's legal directive in Government Code § 27491.1, which states that the Coroner's report to law enforcement must include "information received by the Coroner relating to the death."

49.    Despite an active investigation and a Security Hold on the investigation, Plaintiff Valley is informed and believes and thereon alleges that

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

Defendant Calmes breached the Security Hold during an active investigation when she gave a presentation on September 21, 2012 titled "Ambulatory Surgery Disasters" at Hotel Nikko in San Francisco. Calmes, appearing under the title of "Los Angeles County Coroner/Medical Examiner," violated the Coroner's Security Hold by discussing two Lap Band deaths where she was the appointed Anesthesia Consultant to the Coroner's Office.

50.    Her charts and slides intentionally and openly criticized surgery centers working with 1 800 GET THIN, which include Plaintiff Valley.  She violated the Coroner's Security Hold on the Rojeski investigation by intentionally disclosing unconfirmed information regarding the Rojeski death and repeating her discredited professional opinions regarding bariatric surgeries in ambulatory surgery centers. In fact, she even put up a billboard of 1 800 GET THIN's advertising in her speech and related that there were two related Lap Band deaths. Obviously, one of those two deaths was the death of Paula Rojeski, and as of September 2012, this matter was still under investigation and the Coroner's Security Hold. *See Exhibit "5."*

51.    Approximately two weeks before that speech, Valley submitted a written letter with medical records to the Coroner's Office demonstrating how Paula Rojeski had a prior, undisclosed history of prescription weight loss medication use, including Fen-Phen and that she had admitted in court documents to having suffered significant cardiac damage. *See Exhibit "4" attached hereto.* Valley's presentation of this evidence to the Coroner's Office called into the question the entire methodology of the Rojeski investigation in general with lack of any investigation into her past medical history. The close nexus in time between Valley's September 8th letter to the Coroner's Office and Defendant Calmes speech, in her official capacity as Deputy Medical Examiner for the Coroner's

Case No. _____          COMPLAINT FOR DAMAGES
                              AND INJUNCTIVE RELIEF

1    Office, suggests that the later action was partly in retaliation for Valley's exercise

2    of its First Amendment rights, and Valley so alleges on information and belief.

3    **Plaintiff Valley Conducts Its Own Investigation into Paula Rojeski**

4        52.    In September, 2012, Paula Rojeski's estate filed a wrongful death

5    action against Valley and its medical staff.  By this time, the Coroner's

6    Investigation had been pending for 12 months without any report or indication

7    when a report would be issued.

8        53.    Valley uncovered a series of medical records which showed Ms.

9    Rojeski had a severely compromised, but undisclosed heart condition from her use

10   of Fen-Phen and other weight loss medications during the years 2001-2002, and

11   again during 2009-2010.  In addition, Valley uncovered documents showing that

12   Ms. Rojeski was a lead plaintiff in a civil lawsuit against the makers of Fen-Phen

13   where she admitted to having suffered severe cardiac damage from Fen-Phen

14   usage. *See Exhibit "4"attached hereto and incorporated herein.*

15       54.    Not less than ten times in statements to Valley Medical personnel, the

16   deceased stated she had <u>no prior heart damage</u> when in fact she had filed a lawsuit

17   in 2003 entitled *Paula Rojeski v. Wyeth, et. al.,* Orange County Superior court

18   Case No. 03CC00687, claiming <u>severe heart injury</u> from her use of Fen Phen in

19   2001 and 2002.  Ms. Rojeski also concealed from Valley Medical personnel that

20   she commenced taking the prescription weight loss medication, Phentermine, in

21   2009. *See Exhibit "16" attached hereto and incorporated herein.* In fact, she

22   obtained the Phentermine in 2009, from the same physician from whom she had

23   obtained the Fen Phen in 2002. *Id.*

24       55.    Ms. Rojeski also concealed that she had gone to the emergency room

25   at Saddleback Medical Center in Lake Forest, California, on August 11, 2011,

26   which was only 28 days prior to her September 8, 2011 surgery, with malignant

27   Case No. _____              COMPLAINT FOR DAMAGES
                                       AND INJUNCTIVE RELIEF

1  blood pressure of 205/150, radiating pain in her neck and shoulders, heart

2  palpitations, and an abnormal EKG.  *See Exhibit "15" attached hereto and*

3  *incorporated herein.*

4       56.    Valley provided these previously undisclosed and concealed records

5  to the Coroner's Office in Fall 2012, several months before the Rojeski Final

6  Report was completed.

7       57.    With her weakened heart from the prior Fen-Phen usage, Ms. Rojeski

8  was not a good candidate for laparoscopic surgery because she had a compromised

9  heart, and could not sustain events during surgery which would not have affected a

10 healthy patient.  *See Declaration and expert report attached thereto of* Dr. Terry

11 Simpson, *attached hereto as Exhibit "10".*  Dr. Simpson's report states that Ms.

12 Rojeski likely died after surgery because of her undisclosed injury.

13      58.    All of this uncovered information, which had been concealed from

14 Valley and its medical staff by Ms. Rojeski, was addressed and documented in a

15 series of letters to the Coroner's Office.  The letters were dated September 7, 2012,

16 October 3, 2012, October 8, 2012, October 25, 2012, November 6, 2012,

17 November 13, 2012, November 16, 2012, November 21, 2012, December 6, 2012,

18 and December 10, 2012.  The letters contained more than 1,000 pages of Paula

19 Rojeski's medical records, and other relevant documents.

## Valley Surgical's Review of the Coroner's Report.

20      59.    While sending the various letters, Valley repeatedly asked to meet

21 with the Coroner's Office to review the evidence that Valley had presented

22 regarding Ms. Rojeski.  The Coroner's Office, claiming that there was a Security

23 Hold on the investigation, rebuffed Valley's requests.

24      60.    In January 2013, Valley's Counsel, Centurion, heard through legal

25 representatives of Ms. Rojeski's estate that the Coroner had shared the findings of

26

27 Case No. _____         COMPLAINT FOR DAMAGES
                                  AND INJUNCTIVE RELIEF

1   its autopsy report concerning Ms. Rojeski's death (the "Rojeski Final Report")

2   with representatives of Ms. Rojeski's estate. Valley then immediately renewed its

3   demand for a meeting with the Coroner's Office.

4      61.   On January 15, 2013, more than 16 months following the deceased's

5   death, the Coroner's Office met with Valley's representatives. After admitting to

6   having revealed the contents of the Rojeski Final Report to Rojeski's estate

7   representative, the Coroner's Assistant Chief Investigator, Ed Winter, agreed to

8   release a copy of the Rojeski Final Report to Valley's legal counsel who were in

9   attendance. *See Exhibit "6," to be filed under seal separately from this*

10  *Complaint.*

11     62.   The Coroner's representatives stated that Valley had one week in

12  which to review the Rojeski Final Report. However, Ed Winter emphasized that

13  the Rojeski Final Report would not be modified or revised. He stated that, at best,

14  the Coroner's Office might issue a supplemental report.

15     63.   At the conclusion of the meeting, Investigator Winter stated that the

16  Rojeski Final Report was being released to Valley's legal counsel under an

17  understanding of confidentiality. Winter further elaborated by saying that, if

18  anyone from Valley released or disclosed the Rojeski Final Report to any third

19  party, that the Coroner's Office would then immediately release and distribute the

20  Rojeski Final Report to the public. Defendant Winter additionally stated "I don't

21  want to hear about this in any report from any source." Winter's statements were

22  reasonably interpreted by Valley and its legal representatives as a threat and

23  intimidation against Valley presenting any complaints about the Coroner's

24  investigation or any complaints about the Rojeski Final Autopsy Report to any

25  government agency or judicial forum outside of the Coroner's Office. As a result,

26  Valley has felt constrained from filing complaints regarding the Coroner's

27  Case No. _____               COMPLAINT FOR DAMAGES
                                      AND INJUNCTIVE RELIEF

1  Office's violations of its rights, including filing administrative tort claims under
2  Govt. Code § 910.[5]

3      64.    The Rojeski Final Report stated the mode of death for the deceased
4  was "undetermined."  *(Exhibit "6," to be filed separately under seal).*  More
5  specifically:

   a.  the Coroner's Office could not rule out that the death was a homicide;

   b.  the Coroner's Office found the attending Anesthesiologist, Dr. Demming
       Chau, and the attending Surgeon, Dr. Julius Gee, were grossly negligent
       and that they both should be referred over for further disciplinary
       proceedings by the California Medical Board;

   c.  the Coroner's Office found (without any factual substantiation) that
       Valley did not comport itself within the bounds of the standards of due
       care.

13     65.    The Rojeski Final Report contains a separate opinion by Dr. Selma
14 Calmes, who was retained as a Consulting Anesthesiologist by the Coroner's
15 Office. Her factual findings erroneously declare on page 2 starting at line 5:
16 "The inhalation anesthetic isoflurane was stopped at 0945, and circuit gas flow
17 was increased, to remove isoflurane from the system. **No further anesthetic
18 drugs appear to have been given for the remaining 1 1/2 hrs of surgery**, on
19 review of the anesthesia record." (Emphasis added).

---

[5] Valley's legal representatives have only shown the report to the seven retained experts
for purposes of refuting the conclusions contained in the Rojeski Final Report of gross
negligence and sub-standard care.  However, Valley's legal representatives have refrained
from filing any public complaint regarding Valley's allegations of violations of its rights
by the Coroner's Office as Valley has feared, and continues to fear, that the Coroner's
Office would retaliate by officially releasing the Rojeski Final Report in its current form
with all of its false findings and conclusions.

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

66. To the contrary, the medical and surgical records clearly state that the surgery ended at 9:45 a.m., the same time the anesthesia was stopped. There was no "remaining 1-1/2 hours of surgery" without anesthesia. Calmes thus erroneously claims that the patient was therefore awake during the last hour of her surgery, though paralyzed while bleeding to death with the surgeon standing there. This is erroneous because the patient was closed up at 9:45 a.m. and then placed in recovery and thus there was no need to be administering any more anesthesia. The surgeon had completed his task and closed up Ms. Rojeski approximately 75 minutes before she went into cardiac arrest.

67. Dr. Calmes complained that she was unable to read the records and that "The hand-written anesthesia record is nearly unreadable, even using a magnifying glass." However, the records supplied to the LA Coroner's Office were in no manner illegible and are reproduced in sufficient clarity as shown below.

**FIGURE 1**



Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

68.     The records unquestionably indicate the times of the surgery and anesthesiologist's supervision which the Coroner's Consultant has ignored. Instead, the Consultant fabricated and falsified facts that were patently contradicted by the medical records.  Moreover, if the records were so illegible, then Dr. Calmes and the rest of the authors of the Rojeski Final Report should never have been so adamant and confident in their findings and conclusions.

69.     The Anesthesia Record unambiguously specifies the start time of the surgery as 9:15 a.m. and end time of the surgery as 9:45 a.m., and the writing is both clear and legible in direct contravention of the claim from the consultant.

70.     The Operating Room Record completed by the nurse also clearly specifies the start and end time of surgery:

**FIGURE 2**



**OPERATING ROOM RECORD**

Age: 55   Sex: F   Allergies: NKDA
Type of Anesthesia: [ X ] General [ ] MAC [ ] Local [ ] Spinal [ ] Epidural [ ] Block

| Patient in Room | Anesthesia Start | Anesthesia End | Surgery Start | Surgery End |
|---|---|---|---|---|
| 0855 | 0855 | 1115 | 0915 | 0945 |

Surgeon: GEE
Anesthesia Provider: Clesmer? Lik O.C.        Assistant: CLINN

Given the unambiguous medical records, the factual findings from the Anesthesia Consult cannot be supported.

71.     Dr. Calmes states in her portion of the Rojeski Final Report:

"If there was cerebral perfusion during this time (we can anticipate that cerebral flow was present for at least some part of the next 1 1/2 hrs even though she was in a steep head-up position, which works against adequate cerebral blood flow when BP is low), **she had to be feeling pain and was conscious but paralyzed as she probably bled to death.**

Case No. _____                    COMPLAINT FOR DAMAGES
                                                          AND INJUNCTIVE RELIEF

24

72.     Dr. Calmes, without any justification or confirmation whatsoever, and, with complete disregard for the medical records and surgical logs, goes on to say:

"Strangely the anesthesiologist realized the patient could not tolerate the anesthetic agent (it was turned off at 0945) but told the surgeon all was well. This patient was probably awake and feeling pain as she proceeded along the path to her death over the next 1 ½ hours." (Emphasis added).

73.     However, the undisputed medical records, as shown from the excerpts above in Figures 1 and 2 clearly demonstrate (1) anesthesia was initiated at 8:55 a.m. (2) surgery commenced at 9:15 a.m. and (3) surgery ended at 9:45 a.m. The patient was not awake and paralyzed for 1 ½ hours of surgery, feeling pain and bleeding to death as Calmes falsely and outrageously proclaims. There is no evidentiary basis for these false statements in the Final Autopsy Report. This reckless conduct was done as part of Coroner's Office's concerted effort to harm Valley by instilling terror and outrage in anyone reading the report.

**Other Medical Examiners Blindly Adopt Dr. Calmes' Erroneous Findings**

74.     The Coroner's pathologists performing the autopsy, Dr. Adrian Marinovich and Dr. Raffi Djabourian, state at page 12-13 of their Report:

"The anesthesiology consultant report indicates that there was gross negligence on the part of the anesthesiologist, in that he failed to meet basic standards of anesthesia care, in particular: failure to adequately assess the patient's condition during surgery, to communicate the patient's deteriorating condition to the surgeon, **and to provide pain relief and amnesia while the patient was paralyzed during surgery.**" (Emphasis added).

Case No. _____        COMPLAINT FOR DAMAGES
                            AND INJUNCTIVE RELIEF

75.     Thus, the pathologists assigned to the Rojeski investigation decided to blindly rely upon and entirely premise their own allegedly independent findings and conclusions on Dr. Calmes' false factual statements and inaccurate conclusions.

76.     The repeating of the erroneous findings and conclusions by Dr. Calmes was continued by others within the Coroner's Office who were assigned to investigate the Rojeski matter. The portion of the Rojeski Final Report authored by Drs. Marinovich and Djabourian states:

> "Certifying the manner of death as homicide vs. accident would require knowledge of whether or not this death resulted from a conscious disregard for the patient's safety.  The currently available information does not allow for a conclusion that the surgeon or anesthesiologist intentionally disregarded the patient's safety.  The manner of death thus could not be determined."

77.     The statement is internally inconsistent and illogical.  Since there is no evidence of intentional disregard of the patient's safety or any "knowledge" that would indicate a homicide, the only possible explanation for the patient's death is that it was an accident.

78.     The Surgical Consultant retained by the Coroner's Office for the Rojeski Final Report, Dr. Denis Astarita, states "the likely manner of Death will be Accident."  To ignore this obvious fact and classify this death as "undetermined" ignores the admitted facts in the statement above.  The Coroner's Office exhibits bad faith by avoiding the obvious appropriate conclusion that the manner of death was an accident.

79.     The findings from Drs. Marinovich and Djabourian are also based on the receipt by the Coroner's Office of the Anonymous Letter which the Anesthesia

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

1   Consult recites in detail and leads the Coroner's Office to conclude there was
2   gross negligence committed by Valley's medical staff.

3       80.     Furthermore, on the basis of the gross negligence conclusion, the
4   Rojeski Final Report calls for referral of Valley's medical staff over to the
5   California Medical Board for further disciplinary proceedings.  This conclusion of
6   gross negligence and the call for further disciplinary proceedings are without any
7   evidentiary foundation.

8       81.     In the Coroner's Anesthesiology Consult, drafted by Dr. Selma
9   Calmes, she states on page one that she has reviewed "a 1 ½ page anonymous
10  letter to the Coroner by staff who were apparently present during the procedure."
11  Dr. Calmes says the Anonymous Letter "appears to be written by people familiar
12  with the OR and anesthesia routines."  However, Dr. Calmes never verified
13  anything about the letter, neither its author, nor its accuracy.

14      82.     The Surgical Consult states:

15          "I have discussed the case and autopsy findings with Drs. Djabourian
16      and Marinovich.  The pending cause of death is hemorrhage (from
17      laparoscopic surgery) and the likely manner of Death will be Accident.  I
18      also reviewed an anonymous letter sent here which outlines various
19      shortcomings of the "1-800-get-thin" surgery centers…. My opinion agree
20      [sic] with reporting this case to the California Medical Board for gross
21      negligence with incompetence.  I suggest that the anonymous letter be
22      submitted to the Board."

22      83.     The Coroner's illegal site inspection (see ¶¶ 39-45, *supra*)
23  demonstrated that the accusations of the Anonymous Letter were untrue.
24  Nonetheless, defendants have continued to utilize the refuted and contradicted
25  Anonymous Letter as the basis for their findings.

26

27  Case No. _____                    COMPLAINT FOR DAMAGES
                                             AND INJUNCTIVE RELIEF

84.    The Rojeski Final Report prepared by these five contributing defendant authors from the Coroner's Office does not indicate any effort to verify the contents of the Anonymous Letter, nor does it reflect information available that flatly contradicted the Letter's allegations.  At a minimum, the Report should reflect such contradictory evidence as well as the efforts made to verify the allegations (and the results of such efforts). Neither the Surgical Consult nor the Anesthesia Consult demanded or required such verification.  If there was such an effort, the results must be placed in the Report.  The absence of verification creates an extreme departure from the standards of practice in autopsy findings.

**Plaintiff Valley Retains Independent Medical Experts to Review the Coroner's Rojeski Final Report**

85.    In response to the seriously flawed Rojeski Final Report released confidentially to Valley's legal representatives on January 15, 2013, Valley responded by providing independent surgical and anesthesiology reviews of the report as follows from Dr. Michael Sedrak (Exhibit "7"), Dr. Michael Fishbein (Exhibit "9"), Dr. Ivan Hronek (Exhibit "8"), Dr. Cyril Wecht (Exhibit "10"), Dr. Terry Simpson (Exhibit "12"), Dr. Juan Felix (Exhibit "13") and Dr. Mirali Zarrabi (Exhibit "14") (collectively "Valley's Independent Experts").

86.    Valley's Independent Experts were highly critical of the Coroner's gross error in claiming the surgery lasted 1 ½ hours beyond 9:45 a.m., when the anesthesia and the surgery procedure actually stopped.  The medical records were unambiguous that the surgery lasted from 9:15 a.m. until 9:45 a.m., and that the patient recovered from anesthesia following surgery until she arrested at 10:55 a.m. and was transported to West Hills Medical Center at 11:15 a.m.

87.    The findings of Valley's seven independent experts, which directly contradict the five authors of the Coroner's Rojeski Final Report, are significant

Case No. _____          COMPLAINT FOR DAMAGES
                              AND INJUNCTIVE RELIEF

for several reasons. First, with the surgery only lasting 30 minutes instead of two hours, it explains why the attending surgeon and the attending anesthesiologist did not see or notice any unusual bleeding: Ms. Rojeski did not suffer any complications until approximately 10:55 a.m., over an hour after the surgery had ended and she was "closed up."

88.    Second, as a corollary to the above, Ms. Rojeski was neither awake during the surgical procedure, nor was she "awake and feeling pain as she proceeded along the path to her death over the next 1 ½ hours," as outrageously claimed by the Rojeski Final Report.  Valley's independent experts show that by correctly reading the stop time in the medical records, the anesthesia was appropriately stopped at 9:45 a.m. and was not stopped prematurely, recklessly or negligently as claimed by Dr. Calmes and her four colleagues from the Coroner's Office.

89.    Third, these erroneous factual findings created by Dr. Calmes and blindly repeated by the other four authors of the Rojeski Final Report destroy the scientific and legal validity of the Report. Each one of the Coroner's investigative team repeated the same erroneous factual finding regarding the stop time in making their conclusions as to the cause of death.

90.    Valley's Independent Experts were highly critical of the Coroner's Report use of the Anonymous Letter in reaching the Report's conclusions.  The reviewers pointed out that, after 17 months of investigation (now 19 months), none of the claims from the Anonymous Letter were ever verified.  Indeed, the equipment logs at Valley showed the accusations were incorrect, and there was no evidence to support the letter's claims that oxygen tanks were empty, equipment malfunctioned, fluids spilled on the floor, the anesthesiologist wasn't paying attention, or that the time of Rojeski's coronary arrest was inaccurate.

Case No. _____          COMPLAINT FOR DAMAGES
                              AND INJUNCTIVE RELIEF

91.     Valley presented its first expert report to the Coroner's Office on or about January 24, 2013.  Valley's legal representatives personally delivered the expert report prepared by Dr. Michael Sedrak to the Coroner's Assistant Chief Investigator, Ed Winter. Upon being handed Dr. Sedrak's report, Investigator Winter responded that the Coroner's Office was going to issue the Rojeski Final Report without any modification.  Investigator Winter further added that Valley's submission of expert reports, along with Rojeski's prior medical records, would, at best, possibly result in the issuance of a supplemental report. Investigator Winter also repeated his warning that the Rojeski Final Report had been shared with Valley and its legal representatives under a confidentiality mandate; any release or disclosure or discussion with a third party, besides a retained expert, would result in the Coroner's Office immediately publicly distributing the Rojeski Final Report.

92.     Valley provided a total of seven independent expert reports to the Coroner's Office which categorically and unequivocally repudiated the findings of the Rojeski Final Report. Indeed, two of the retained experts, Dr. Fishbein, and Dr. Felix, are Deputy Medical Examiners to the Coroner's Office, just like Dr. Calmes.

93.     On January 31, 2013, Kenneth Maranga, Esq. informed Valley's counsel, Centurion Law Group, that his office was now the retained counsel for the Coroner's Office.  By phone Mr. Maranga also twice repeated the mantra stated by Investigator Winter, that the result of Valley's responses to the Rojeski Final Report would, at best, be discussed in a supplemental report to be subsequently issued by the Coroner's Office and that the Rojeski Final Report was not going to be revised or modified from what had been shown to Valley on January 15, 2013. Mr. Maranga confirmed that position again in a follow up letter

Case No. _____                          COMPLAINT FOR DAMAGES
                                              AND INJUNCTIVE RELIEF

he sent later that day. *See Exhibit "11" attached hereto and incorporated herein.*[6]
Maranga also stated that any future submissions by Valley regarding the Rojeski
matter had to be submitted through his office.

94.    Valley's Independent Expert Reviewers have declared that the mode
of death was an "accident," and that the Coroner's conclusions are based upon
errors regarding the end time of surgery and unsubstantiated claims from the
Anonymous Letter.

## The Coroner's Imminent Threat to Issue the Flawed Rojeski Final Report

95.    Valley's Counsel, Centurion, has asked Mr. Maranga, on four
different occasions between February 18 and March 11, 2013, when the Coroner's
Office would finish its review of Valley's Independent Expert Reports. Mr.
Maranga has only replied that the matter is still under review.  Additionally,
Centurion has also asked Mr. Maranga in three separate e-mails whether or not the
matter has been referred to the California Medical Board as repeatedly
recommended in the Rojeski Final Report. Mr. Maranga stated he would check
with his client, the Coroner's Office, but has failed to provide a substantive

---

[6]  On February 1, 2013, counsel for Plaintiff Valley, Konrad Trope, Esq., of Centurion
Law Group, P.C., sent an e-mail to the Defendant County's retained counsel, Ken
Maranga. In that e-mail, Mr. Trope reconfirmed Mr. Maranga's previously stated position
that the Coroner's Office was not going to modify or revise the Rojeski Final Report. On
February 8, 2013, in response to Mr. Trope's request for access to the slides, photographs
and tissue samples that are referenced in the Rojeski Final Report, Mr. Maranaga stated:
*"As you have been advised, The LA County Coroner is in the process of re-reviewing its
findings and conclusions.  This may, or may not result in modified opinions and
conclusions.  Until such time as that process has been completed, the Coroner's Office
advises it will not permit access to slides, or photographs."*

Case No. _____          COMPLAINT FOR DAMAGES
                              AND INJUNCTIVE RELIEF

response. The fact that Coroner's Office refuses to substantially respond to these reasonable inquiries compels Valley to seek an application for injunctive relief.

96.     In addition, over the past 19 months, the Joint Commission, the accreditation agency which oversees medical facilities like Valley, pursuant to *Cal. Health & Safety Code § 1248.4,* has repeatedly informed Valley that it is awaiting the issuance of the Coroner's Rojeski Final Report.  The Joint Commission has made its position quite clear that Valley's continued accreditation hinges on the outcome of the Coroner's Rojeski Final Report.

97.     The Joint Commission is authorized by the California Medical Board - Division of Licensing, to oversee the accreditation of ambulatory surgery centers in California, such as Valley. *See Cal. Health & Safety Code § 1248.4.*

98.     Because the Coroner's Office leaked the contents of the erroneous and flawed Rojeski Final Report to Rojeski's heirs in early January 2013, Rojeski's heirs, instead of settling their wrongful death lawsuit filed in September 2012, have announced that they will be amending their complaint to seek punitive damages and will be continuing their lawsuit, thus unnecessarily subjecting Valley to additional damages and legal fees attributable to the Constitutional violations more fully described herein below.

**Declaratory and Injunctive Relief, Irreparable Harm, Damages Suffered By Plaintiff and Color of Law**

99.     As a result of the conduct described above, Plaintiffs have been and continue to be injured, including suffering loss of income, lost profits, damage to its professional reputation, damage to its goodwill, damage to its business operations, damage to its ability to effectively recruit physicians and staff as a medical facility, expenses in retaining consultants and attorneys to attempt (unsuccessfully) to convince the Coroner's Office and its representatives that its

Case No. _____                          COMPLAINT FOR DAMAGES
                                              AND INJUNCTIVE RELIEF

statements and conclusions are false and without any evidentiary foundation, diversion of resources (including staff and professional time) from carrying out its normal medical activity to address the problems occasioned by Defendants' conduct, injury to its constitutional rights, the exacerbation of claims in the Rojeski lawsuit that it was responsible for her death, and the need to prepare to defend itself before the relevant licensing/accreditation authorities in California, to name some of the injuries caused to date.

100.   Plaintiff is entitled to declaratory relief with respect to the unconstitutionality of the conduct of the Coroner's Office and its agents and with regard to the falsity of the evidence that forms the basis for the Coroner's Report, and an injunction preventing the continuing participation of the Coroner's Office and its agents in the investigation into the Rojeski death, including participation in releasing any reports related thereto. The pattern of unconstitutional and unlawful conduct in which the Defendants have engaged demonstrate that they are so biased and irrationally and arbitrarily hostile to Plaintiff as to disqualify them from any such further role.

101.   Without such a declaration and injunction, Plaintiffs will be irreparably harmed. It will face the ongoing threat that its business will be completely destroyed before it can successfully defend itself. Official issuance of the current report, based on fabricated evidence and information whose falsity at this point is beyond dispute, would almost certainly lead to withdrawal of Valley's licensure/accreditation in the short term and possibly longer, with the likely effect of destroying what is left of its business. If this false Coroner's Report is released, as threatened by the Coroner's Office, it will almost assuredly lead to the financial collapse of Valley, a collapse from which it is unlikely that it could ever recover even if ultimately vindicated.

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

33

102.  All of the Defendants, while often described in the past tense throughout the complaint, continue to engage in the conduct set forth herein to the present, and, unless enjoined by this court, will continue to do so. The conduct of defendants as alleged herein has been, continues to be and, unless enjoined by this court, will continue to be deleterious to the Plaintiff and its fundamental rights. Unless they are restrained from doing so, Defendants will continue to engage in such unlawful conduct.

103.   Unless this Court acts to enjoin the unlawful conduct described herein, Plaintiff will continue to suffer irreparable harm. Plaintiff has no adequate remedy at law. Damages alone are insufficient in light of the continuing violation of its constitutional rights and the threat to its very existence as a viable entity.

104.   Plaintiff seeks injunctive relief under both federal and state law.

105.   In engaging in the conduct described above, all of the Defendants, when sued in their individual capacity, acted willfully, wantonly, maliciously, oppressively, and/or with conscious or reckless disregard or deliberate indifference to the Constitutional rights of Plaintiff Valley.  Therefore, Plaintiff Valley is entitled to seek punitive damages against said Defendants.

106.   At all times herein, the individual Defendants acted or purported to act within the course or scope of their employment or agency and were acting under color of law as employees or agents of the County Coroner's Office, or persons acting in concert with, and under the direction and control of, the County Coroner's Office.

///

///

///

Case No. _____                          COMPLAINT FOR DAMAGES
                                               AND INJUNCTIVE RELIEF

## FIRST CLAIM FOR RELIEF – VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983

### *(Damages Against All Defendants Sued In Their Individual Capacity)*

107.   Plaintiff alleges and incorporates, as though fully stated herein, all the foregoing and any subsequent allegations and paragraphs set forth in this Complaint.

108.   Defendants, and each of them, personally and/or as part of a conspiracy, acted, under color of state law, to violate Plaintiff's constitutional rights, including but not limited to:

    a.  Violate its due process right to a governmental investigation not based on false and/or fabricated evidence;

    b.  Violate its due process right to an unbiased governmental investigation not based on false and/or fabricated evidence;

    c.  Violate its due process right to not have exculpatory evidence destroyed in bad faith;

    d.  Violate its First Amendment and due process rights to petition the government and to have access to the courts;

    e.  Violate its First Amendment rights to engage in lawful speech without being retaliated against for doing so;

    f.  Violate its First Amendment rights to engage in lawful speech without having its right to do so infringed upon and chilled by the actions of governmental agents or employees;

    g.  Violate its due process rights to petition the government and to have access to the courts;

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

h. Violate its Fourth Amendment right not to be subjected to an unlawful search and seizure;

i. Violate its equal protection and/or due process right not to be singled out for irrational and/or arbitrary discriminatory treatment.[7]

109. Defendants' actions violated Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. To the extent that any Court were to determine that the foregoing claims are appropriately brought under a different or additional constitutional right not expressly named above, such claims are also brought under such alternative or additional provisions.

///

///

///

[7] To avoid any possible confusion, Plaintiff Valley is claiming to be a class of one for equal protection purposes because Valley and its medical staff was repeatedly subjected to intentional treatment that was clearly different from others similarly situated, and there is no rational basis for the difference in treatment. In other words, Valley was subjected to an ongoing investigation by the Coroner's Office without any legitimate basis for doing so, and the Coroner's Office has subsequently, in the Rojeski Final Autopsy Report, recommended that Valley and its medical staff be referred for further prosecutorial actions on the basis of deliberately fabricated false evidence.

Case No. _____                COMPLAINT FOR DAMAGES
                                    AND INJUNCTIVE RELIEF

## SECOND CLAIM FOR RELIEF – VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983

*(Monell Damages Against The County of Los Angeles, the County Coroner's Office, And Defendant Lakshmanan Sathyavagiswaran In His Official Capacity, and Against Defendant Sathyavagiswaran In His Individual Capacity for Supervisory Liability)*

110.    Plaintiff alleges and incorporates, as though fully stated herein, all the foregoing and any subsequent allegations and paragraphs set forth in this Complaint.

111.    Defendant County of Los Angeles, County Coroner's Office and Defendant Lakshmanan Sathyavagiswaran (hereafter the *"Monell* Defendants") are sued under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

112.    On information and belief, Defendant Sathyavagiswaran was, at all times herein relevant, an employee of the Coroner's Office and had the final policy making authority for the conduct of the Coroner's Office and its investigation, including having authority over the other individual Defendants named herein. Defendant Sathyavagiswaran, as the policy maker for the County Coroner's Office, maintained, enforced, tolerated, ratified, permitted, approved, acquiesced in, and/or engaged in the conduct and constitutional violations alleged above, thereby making the County directly liable for these actions.

113.    Alternatively, the ongoing conduct over 19 months of repeated constitutional violations of Plaintiff's constitutional rights – separated in time and of varying types – constitute a custom and practice sufficient to make the County directly liable under *Monell* for the conduct alleged herein.

Case No. _____            COMPLAINT FOR DAMAGES
                                AND INJUNCTIVE RELIEF

1   114.    Additionally, Defendant Sathyavagiswaran is individually liable

2   under the doctrine of supervisory liability because (1) he was personally involved

3   in the constitutional violations alleged herein (including but not limited to the use

4   of fabricated and false evidence), or (2) he was aware of and acquiesced in the

5   constitutional violations and acted or failed to act with a reckless or callous

6   disregard for Valley's rights. Despite knowledge of the violations alleged herein,

7   he took no action of any kind to prevent or correct them. In short, Defendant

8   Sathyavagiswaran was unconstitutionally silent in preventing or correcting these

9   violations.

**THIRD CLAIM FOR RELIEF – VIOLATION OF STATE LAW**

*(Against All Defendants For Injunctive Relief With Amendments*
*To Be Added For Damages Claims Once Plaintiff Is Able to File*
*The Necessary Administrative Claims Without Fear Of Retaliation)*

115.    Plaintiff alleges and incorporates, as though fully stated herein, all the

foregoing and any subsequent allegations and paragraphs set forth in this

Complaint.

116.    Defendants violated many state laws governing the conduct of the

Coroner's Office, some of which provide a partial basis for injunctive relief,

provide protected liberty and/or property interests, and provide potential claims for

damages.

117.    Once conferred, California law provides a physician at least a

protected property interest in his/her license to practice medicine and provides an

accredited medical facility at least a protected property interest in his/her/its

accreditation.

Case No. _____            COMPLAINT FOR DAMAGES
                                AND INJUNCTIVE RELIEF

118.    Other relevant state laws include, but are not limited to, (1) Cal. Gov't Code § 27491.4 (coroner must act in accordance with medico-legal practice); (2) Cal. Gov't Code § 27491.5 (coroner's report must be in accordance with facts ascertained from inquiry, autopsy and other scientific findings); (3) Cal. Gov't Code § 27491.45 and Cal. Health & Safety Code § 7151.2 (regarding appropriate organ harvesting); (4) Civil Code § 815.6 (violation of mandatory duty), and (5) Cal. Civil Code § 52.1 (use of threats, intimidation or coercion to interfere and attempt to interfere with exercise of rights secured by Federal or State Constitution or law), as well as violation of the California Constitutional protections for freedom of speech and petition, freedom from unlawful searches and seizures, and the right to due process and equal protection of the law.

119.    Due to the intimidating and harassing conduct of Defendants as previously alleged, Plaintiff has not filed an administrative  claim under Govt. Code § 910 for damages, and accordingly does not currently allege state law damages claims. However, Plaintiff, with the anticipated protection of the court as requested in this complaint, intends to proceed to file such claims and to move to amend the complaint to add state law damages claims at the appropriate time.

## FOURTH CLAIM FOR RELIEF – INJUNCTIVE RELIEF AND DECLARATORY RELIEF

### (Against All Defendants For Injunctive and Declaratory Relief)

120.    Plaintiff alleges and incorporates, as though fully stated herein, all the foregoing and any subsequent allegations and paragraphs set forth in this Complaint.

121.    Based on the ongoing violations of law and of Plaintiff's constitutional rights, and the irreparable harm Plaintiff will experience if this

Case No. _____                    COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF

1   Court does not act, and the fact that there is no adequate remedy at law, Plaintiff

2   Valley seeks an injunction against the Coroner and its staff to prohibit it from:

3          a. any further role in the investigation into the death of Paula Rojeski.[8]

4            and

5          b. releasing the Coroner's Final Rojeski Report.

6        122. In the event the Court does not grant an injunction, then Plaintiff

7   seeks declaratory relief stating that 1) it violates Plaintiff 's constitutional rights,

8   including its right to due process of law, for the Coroner's Office to assert in any

9   official report or proceeding that Paula Rojeski's surgery lasted more than 30

10  minutes, or that she was in surgery or under anesthesia at the time of her cardiac

11  arrest at 10:55 a.m., because that is a statement unsupported by any evidence and

12  is directly contrary to all available medical records; 2) it violates Plaintiff's

13  constitutional rights, including its right to due process of law, for the Coroner's

14  Office to quote from or rely on the unverified and unsupported Anonymous Letter,

15  which could only be validly used, to the extent it could be used at all, as an

16  investigation tool, the contents of which have to be, but have not been,

17  independently verified; and 3) it violates Plaintiff's constitutional rights, including

18  its right to due process of law, for the Coroner's Office to forward to any

19  governmental body referrals for criminal, civil, or administrative proceedings that

20  rely in any respect on the unsupported statements described in ¶ 124(1) and (2).

**PRAYER FOR RELIEF**

Plaintiff seeks judgment as follows:

---

[8] This would leave the County free, if it so decided, to choose an independent or out of County Coroner's Office, which, after appropriate investigation, would be free to issue its own Report.

Case No. _____               COMPLAINT FOR DAMAGES
                                      AND INJUNCTIVE RELIEF

A. Preliminary and permanent injunctive relief prohibiting the Los Angeles County Coroner's Office from any further role in the investigation into the death of Paula Rojeski, including releasing its report regarding that death.

B. In the event that injunctive relief is not granted, declaratory relief as described in ¶ 124, *supra*.

C. Compensatory, general, and special damages against all Defendants, and each of them, in an amount according to proof;

D. Punitive and exemplary damages against all Defendants sued in their individual capacities, and each of them, in an amount according to proof;

E. Pre-judgment interest according to proof;

F. Reasonable attorney's fees and expenses of litigation as allowed by 42 U.S.C. § 1988, California CCP § 1921.5, California Civil Code § 52.1(h) and other applicable law;

G. Costs of suit reasonably incurred;

H. That Defendant Coroner's Office be required to pay any judgment pursuant to law.

DATE: 03/28/2013

Respectfully Submitted,

KAYE, MCLANE, BEDNARSKI & LITT, LLP

By: __/s/ Barrett S. Litt_____
Barrett S. Litt

CENTURION LAW GROUP, P.C.

By: __/s/ Konrad L.Trope _____
Konrad L.Trope

Attorneys for Plaintiff
VALLEY SURGICAL CENTER, LLC

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

Plaintiff Valley Surgical Center, LLC demands a jury trial, as provided by R.38(a) Federal Rules of Civil Procedure.

DATE: 3/28/2013

Respectfully Submitted

KAYE, MCLANE, BEDNARSKI & LITT, LLP

By:__/s/ Barrett S. Litt_____
Barrett S. Litt
Attorneys for Plaintiff
VALLEY SURGICAL CENTER, LLC

CENTURION LAW GROUP, P.C.

By:__/s/ Konrad L.Trope _____
Konrad L.Trope
Attorneys for Plaintiff
VALLEY SURGICAL CENTER, LLC

Case No. _____

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF