1  Kenneth A. Maranga, Esq.  (SBN 94116)
   ken.maranga@marmorlaw.com
2  Patricia E. Ellyatt, Esq. (SBN 112552)
   pellyatt@marmorlaw.com
3  Morgan A. Metzger, Esq. (SBN 273330)
   mmetzger@marmorlaw.com
4  Patricia "Molly" Ford, Esq. (SBN 285045)
   pford@marmorlaw.com
5  MARANGA • MORGENSTERN
   A Professional Law Corporation
6  5850 Canoga Avenue, Suite 600
   Woodland Hills, CA 91367
7  (818) 587-9146 ■ Fax: (818) 587-9147

8  Attorneys for Defendants
   COUNTY OF LOS ANGELES, a
9  government entity; LAKSHMANAN
   SATHYAVAGISWARAN, M.D., RAFFI
10 DJABOURIAN, M.D., DENIS C.
   ASTARITA, M.D., SELMA CALMES,
11 M.D., JOHN KADES, and ED WINTER,
   public employees
12

13            UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15

16 VALLEY SURGICAL CENTER,          | **Case No.  CV 13-02265 DDP (AGRx)**
   LLC, a California Limited Liability | Complaint Filed: March 29, 2013
17 Company,                           | Assigned to:  Hon. Dean D. Pregerson – Courtroom 3

18          Plaintiff,               | **DEFENDANTS' OPPOSITION TO
                                     | APPLICATION FOR TEMPORARY
19      v.                           | RESTRAINING ORDER AND
                                     | STATUS CONFERENCE RE:
20 COUNTY OF LOS ANGELES, a          | PRELIMINARY INJUNCTION**
   government entity, LAKSHMANAN
21 SATHYAVAGISWARAN, M.D., an        | *[Filed concurrently with Declaration of
   individual, ADRIAN MARINOVICH,    | Patricia E. Ellyatt]*
22 M.D. an individual, RAFFI
   DJABOURIAN, M.D., an individual,  | DATE:        April 4, 2013
23 DENIS C. ASTARITA, M.D., an       | TIME:        2:30 p.m.
   individual, SELMA CALMES, M.D.,   | LOCATION:  Courtroom 3
24 an individual, JOHN KADES, an
   individual, ED WINTER, an individual
25 and DOES 1-10,                    | Discovery Cut-Off:      None Set
                                     | Motion Cut-Off:          None Set
26          Defendants.              | Trial Date:               None Set

27

28 ///

                          - 1 -

Defendants COUNTY OF LOS ANGELES, a government entity, LAKSHMANAN SATHYAVAGISWARAN, M.D., an individual, RAFFI DJABOURIAN, M.D., an individual, DENIS C. ASTARITA, M.D., an individual, SELMA CALMES, M.D., an individual, JOHN KADES, an individual, ED WINTER, an individual (hereafter "Defendants"), hereby submit an Opposition to VALLEY SURGICAL CENTER, LLC's Application for Temporary Restraining Order and OSC Re: Preliminary Injunction as follows:

## I.   **INTRODUCTION**

Plaintiff VALLEY SURGICAL CENTER, LLC. (hereafter, "VSC"), has issued an application for Temporary Restraining Order and OSC re: Preliminary Injunction to enjoin Defendants' (1) from releasing and/or further publishing and disseminating an autopsy report with respect to the manner and cause of Paula Rojeski's death, and/or, (2) from further investigating the manner and cause of Paula Rojeski's death, activities which the Coroner is statutorily mandated to perform.  This Application makes numerous baseless allegations unsupported by any evidence provided to the Court.  In fact, VSC has attacked the autopsy reports issued by the Coroner without attaching the original report and/or its corresponding supplemental report.   In light of VSC's pending request for TRO/preliminary injunction, Defendants are hesitant to concurrently electronically file a copy of the autopsy report at issue.  However, Defendants will bring a copy of the autopsy report at issue to the hearing on the Status Conference for submission to and consideration by the Court.  Additionally, VSC did not provide any basis for its contentions, other than *speculation,* that the autopsy report will (1) subject VSC to disciplinary proceedings by the California Medical Board and (2) "likely" result in revocation of VSC's accreditation by the Joint Commission to justify its request to interfere with the Coroner's statutorily mandated duties.  Indeed, much of the alleged supporting information attached to VSC's Application is in a form which is

DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION

1  not admissible and, therefore, unworthy of consideration.  As a result, VSC has not

2  alleged sufficient grounds or any legal basis for injunctive relief.

3  ## II.   STATEMENT OF FACTS

4          This case revolves around the death of Paula Rojeski and subsequent autopsy

5  by the Department of Coroner.  Ms. Rojeski received Lap-Band surgery at VSC on

6  September 8, 2011.  After the surgery, Ms. Rojeski's condition deteriorated and she

7  suffered cardiac-arrest.  She was taken from VSC to West Hills Hospital, where

8  resuscitative efforts were unsuccessful and she was pronounced dead.  Prior to any

9  autopsy, skin and bones from Ms. Rojeski were harvested with the permission of

10 the Department of Coroner and Ms. Rojeski's next of kin, Michele Pelter.   The

11 autopsy was performed by Defendant RAFFI DJABOURIAN, M.D. (hereafter "Dr.

12 Djabourian"), and, fellow, Defendant ADRIAN MARINOVICH, M.D. (hereafter

13 "Dr. Marinovich").  The cause of death was determined to be penetrating defect of

14 the aorta near the origin of the inferior mesenteric artery.  The manner of death was

15 "undetermined."

16         During the autopsy investigation, an anesthesia consultant, Defendant

17 SELMA CALMES, M.D. (hereafter, "Dr. Calmes"), and a surgical consultant,

18 Defendant DENIS C. ASTARITA, M.D. (hereafter, "Dr. Astarita"), were called

19 upon to aid in determining the manner of death.  Dr. Calmes inadvertently misread

20 the anesthesia chart times which she used in support of her opinions.   An

21 anonymous letter was received by the Coroner's office, which alleged several

22 missteps by the anesthesiologist in charge of Ms. Rojeski's care during the

23 operation.  Dr. Calmes *initially* took these allegations into consideration in forming

24 her opinions.   Ultimately, Dr. Calmes concluded that the anesthesiologist's

25 handling of the case was a gross deviation from the standard of care.  On December

26 31, 2012, Dr. Djabourian signed the autopsy report.

27 ///

28 ///

On January 3, 2012, Assistant Chief Winters from the Department of Coroner met with the FBI, FDA, California DOJ, and MBC. A security hold was requested by these government agencies while they conducted their respective investigations. On January 6, 2012, the FDA followed-up with a written request for a 90-day hold.

On August 7, 2012, The Los Angeles Police Department (LAPD) issued a letter to the Coroner indicating that it continues to investigate the death of Paula Rojeski. As a result, and due to the purported "sensitivity of the investigation", the LAPD requested a 60-day hold on the release of the Coroner's findings.

On October 13, 2012, Konrad Trope, attorney for VSC, sent a letter to Dr. Lakshmanan requesting an opportunity to review and comment on the Coroner's report before making it public. Mr. Trope also complained that the delay in the Coroner's investigation had caused his clients a drop in patients and injury to their reputation. Mr. Trope's request was not granted because the LAPD had continued to telephonically renew its request for a security hold until sometime on or around December 28, 2012.

When the security holds were lifted, representatives from the Coroner's officer met with Mr. Trope and provided him with a copy of the autopsy report. Thereafter, Mr. Trope began forwarding multi-specialty expert reports criticizing the Coroner's handling of the case and the conclusions in the autopsy report. In total, there were seven reports written by outside physicians hired by Mr. Trope to evaluate the case. As a result, the Coroner issued its own discretionary internal hold on the autopsy report while it considered the seven reports from the outside physicians and reassessed its report, as would be the case when any new information comes to light either prior to, or, after a coroner case has been finalized, for the sake of due diligence. In preparation for its reassessment of the original autopsy report, the Coroner hired an independent anesthesiologist, Earl Strum, M.D., to further evaluate the case.    Dr. Strum concluded that

- 4 -

1    anesthesiologist's handling of the case fell below the standard of care, though the

2    failure to recognize a rare complication should not be deemed "gross negligence".

3    In regard to the anonymous letter, he only remarks, "it is very difficult to assess

4    without actually being on site."

5         Throughout review of the seven physician reports referred by Mr. Trope, Dr.

6    Calmes discovered that she had misread the anesthesia chart times.  In light of the

7    admitted error, Dr. Calmes wrote a new anesthesia consultation report.    She

8    corrected her error in timing and completely discarded her consideration of the

9    anonymous letter.  However, her ultimate conclusions remained largely the same.

10   Dr. Djabourian then drafted a new report which included the independent report by

11   Dr. Strum, the supplemental report by Dr. Calmes and a report by Dr. Astarita.  The

12   cause and manner of death remain unchanged.

13        Defendants submitted the original autopsy report and the supplemental

14   autopsy report within its normal and customary practice pursuant to its statutory

15   duties.  Though Plaintiff's counsel had threatened that he would file a complaint

16   and seek a TRO on the morning of April 1, 2013, as of 3:00p.m, Pacer did not

17   reflect that Plaintiff's counsel had filed an application, a proposed TRO or a

18   proposed order to show cause why a preliminary injunction should not issue

19   pursuant to L.R. 65-1. (Declaration of Patricia E. Ellyatt, ¶¶3, 4 and 5). Nor had

20   Plaintiff's counsel given Defendants or defense counsel notice that such papers

21   were filed were filed at any time on April 1, 2013.  (Decl. Ellyatt, ¶ 7).

22        Nonetheless, Pacer *did* reflect that Plaintiff had filed its complaint as

23   indicated by Mr. Trope, but *without* filing an application for TRO.  (Decl. Ellyatt, ¶

24   7).  As a result, Defendants and its defense counsel had no reason to believe that

25   Mr. Trope had made good on his threat to file an application for TRO and seek this

26   specified relief which the defense interpreted as his attempt to manipulate

27   statutorily mandated actions of the Coroner to benefit his clients.    Since the

28   autopsy report and supplement report were complete and had addressed the

- 5 -

DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION

1    concerns previously brought to the attention of the Department by VSC, the
2    Coroner released its reports within its normal and customary practice.   (Decl.
3    Ellyatt, ¶10).  The supplemental report takes into consideration the criticisms of Mr.
4    Trope and the seven outside physician reports and makes corrections to some of the
5    original opinions.

6          Injunctive relief against a coroner is only available where the coroner has
7    exceeded his or her statutory authority.   Additionally, public officials, including
8    coroners and their consultants, are generally immune from complaints which arise
9    out of discretionary activities, reasonably performed within the appropriate scope of
10    their official authority and capacity.  [*Herbert v. Morley*, (C.D. Cal. 1967) 273 F.
11    Supp 800, 802; *Lawyer v. Kernodle* (8th Cir. 1983) 721 F.2d 632, 635-636;
12    *Galbraith v. County of Santa Clara*, 2000 WL 1793164 (not reported); *Galbraith v.*
13    *County of Santa Clara* (9th Cir. 2002) 307 F.3d 1119, affirmed in part, reversed in
14    part, and remanded – wherein the Ninth Circuit did not overrule the "established
15    rule" that coroners are immune from acts taken in the scope of their official duties.
16    The central question of this case on appeal was whether a heightened pleading
17    standard should continue to apply to constitutional tort claims in which improper
18    motive is an element.]   In this instance, Defendants have acted reasonably and
19    within the permissible discretion of their official capacity.  Defendants had full and
20    complete statutory authority and capacity to make findings and report opinions
21    exactly as they did in the course of their duties pursuant to Cal. Gov. Code,
22    Sections 27491-27491.6.  When the Defendants' activities are measured by their
23    statutory discretion, and the scope of their official authority, the Court will
24    necessarily find that they are immune from the action filed by VSC.

25    ///
26    ///
27    ///
28    ///

DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION

1  **III.    THE COURT MAY ISSUE A PRELIMINARY INJUNCTION ONLY**

2  **ON NOTICE TO THE ADVERSE PARTY**

3        Pursuant to the notice given regarding the status conference scheduled for

4  Thursday, April 4, 2013, regarding VSC's "application for preliminary injunction",

5  it is unclear to Defendants whether a hearing will be held on the merits.  Defendants

6  respectfully request that the Court afford Defendants an opportunity to completely

7  brief this matter before it holds a hearing on VSC's request for a preliminary

8  injunction.

9        Furthermore, the court may issue a preliminary injunction <u>only on notice to</u>

10  <u>the adverse party</u>.  [Fed.R.Civ.Proc. §65(a)(1)].  An "adverse party" has been held

11  to mean both opposing parties and nonparties who will be directly affected by the

12  preliminary injunction.  [Parker v. Ryan (5th Cir. 1992) 960 F2d 543, 545.]

13        VSC has admitted its concern regarding the effect that the autopsy report

14  would have on the wrongful death action filed by Paula Rojeski's heirs.  In fact,

15  VSC contends that its civil liability "hinge[s]" on the content of the autopsy report.

16  [VSC Suppl. Memo, 5:20-25].  Surely, the heirs of Paula Rojeski, albeit nonparties

17  to <u>this</u> action, have filed a wrongful death action against VSC and would be directly

18  affected by a preliminary injunction enjoining the publication and dissemination of

19  the autopsy reports.  As a result, Paula Rojeski's heirs should be given notice of the

20  preliminary injunction and should have an opportunity to be heard.

21  **IV.    CONCLUSION**

22        VSC's allegations of constitutional violations and irreparable harm are

23  completely unsupported and based upon speculation.  Additionally, their contention

24  that they have made a showing of likely success on the merits lacks foundation and

25  support.  VSC has not alleged sufficient grounds or any legal basis for immediate

26  injunctive relief of any kind.  Thus, Defendants pray that Court deny the TRO.

27  Furthermore, if the Court holds a hearing on the preliminary injunction matter,

28  Defendants respectfully request that the Court afford Defendants a reasonable

- 7 -

1  opportunity to submit points and authorities in defense of their position on this

2  matter and an opportunity to be heard.

3

4  Dated: April 4, 2013                        MARANGA * MORGENSTERN

5

6                                              By:
7                                              KENNETH A. MARANGA
                                               PATRICIA E. ELLYATT
8                                              MORGAN A. METZGER
                                               PATRICIA "MOLLY" FORD
9                                              Attorneys for Defendants
                                               COUNTY OF LOS ANGELES, a
10                                             government entity; LAKSHMANAN
                                               SATHYAVAGISWARAN, M.D.,
11                                             RAFFI DJABOURIAN, M.D., DENIS C.
                                               ASTARITA, M.D., SELMA CALMES,
12                                             M.D., JOHN KADES, and ED WINTER,
                                               public employees

13

14  F:\ADMIN\MATTERS - ACTIVE\HLTH - Maranga Morgenstern - LAP BAND MATTER\Pleadings\Opposition.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION

# PROOF OF SERVICE
## [C.C.P. §1013]

STATE OF CALIFORNIA    )
                          ) ss:
COUNTY OF LOS ANGELES )

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 5850 Canoga Ave., Suite 600, Woodland Hills, CA 91367.

      On **April 4, 2013**, I served the foregoing document entitled **DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION,** on all parties in this action as follows:

## PLEASE SEE ATTACHED SERVICE LIST.

\_\_\_\_\_  **By Mail.**  By placing a true copy thereof enclosed in a sealed envelope.  I am "readily familiar" with the firm's practice of collection and processing for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with first class postage thereon fully paid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter is more than one day after day of deposit for mailing in this Proof of Service.

\_\_\_\_\_  **By Telefax.**  I transmitted said document by telefax to the offices of the addressees at the telefax numbers on the attached Service List.

\_\_\_\_\_  **By Personal Service.**  I delivered such envelope by hand to the addressee(s).

\_\_\_\_\_  **By Overnight Courier**.  I caused the above-referenced document(s) to be delivered to an overnight courier service for next day delivery to the above addressee(s).

  X  **By Email Transmission**. I caused the abovementioned document(s) to be transmitted by email to the address(es) listed below at their respective email address(es) as listed and described below. I am "readily familiar" with this office's practice for transmissions by email.  Under that practice transmissions are sent as soon as possible and are repeated, if necessary, until they are reported as complete and without error. In sending the foregoing document(s) by email, I followed this office's ordinary business practices. The sending email address is mchavez@marmorlaw.com.

///

///

///

///

///

- 9 -

1        The below listed individuals are registered with the Court to receive notice of
2    electronically filed documents and will therefore be served via the Court's ECF
     System:

| | |
|---|---|
| 3  Barrett S. Litt, Esq. (SBN 45527)<br>4  E-Mail: blitt@kmbllaw.com<br>David McLane, Esq. (SBN 133214)<br>5  KAYE, MCLANE, BEDNARSKI &<br>  LITT, LLP<br>6  234 Colorado Blvd., Suite 230<br>Pasadena, California 91101<br>7  (626) 844-7660; FAX (626) 844-7670 | *Attorneys for Plaintiff,*<br>*VALLEY SURGICAL CENTER, LLC* |
| 8  Konrad L. Trope, Esq. (SBN 133214)<br>E-Mail: ktrope@centurionlawgroup.com<br>9  Mark S. Faulkner, Esq. SBN 102679)<br>CENTURION LAW GROUP, P.C.<br>10  9107 Wilshire Blvd., Ste. 450<br>Beverly Hills, CA 90210<br>11  (888) 942-9997; FAX (888) 942-9997 | *Attorneys for Plaintiff,*<br>*VALLEY SURGICAL CENTER, LLC* |

12      __X__   **(Federal)** I declare under penalty of perjury that the foregoing is true and
13    correct, and that I am employed in the office of a member of the bar of this
      Court at whose direction the service was made.

14    Executed on **April 4, 2013**, at Woodland Hills, California.

17    _____
      Michelle Metz Chavez

DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND STATUS CONFERENCE RE: PRELIMINARY INJUNCTION