Kenneth A. Maranga, Esq. (SBN 94116)
ken.maranga@marmorlaw.com
Patricia E. Ellyatt, Esq. (SBN 112552)
pellyatt@marmorlaw.com
Morgan A. Metzger, Esq. (SBN 273330)
mmetzger@marmorlaw.com
Patricia "Molly" Ford, Esq. (SBN 285045)
pford@marmorlaw.com
MARANGA • MORGENSTERN
A Professional Law Corporation
5850 Canoga Avenue, Suite 600
Woodland Hills, CA 91367
(818) 587-9146 ■ Fax: (818) 587-9147

Attorneys for Defendants
COUNTY OF LOS ANGELES, a
government entity; LAKSHMANAN
SATHYAVAGISWARAN, M.D., RAFFI
DJABOURIAN, M.D., DENIS C.
ASTARITA, M.D., SELMA CALMES,
M.D., JOHN KADES, and ED WINTER,
public employees

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY SURGICAL CENTER, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a government entity, LAKSHMANAN SATHYAVAGISWARAN, M.D., an individual, ADRIAN MARINOVICH, M.D. an individual, RAFFI DJABOURIAN, M.D., an individual, DENIS C. ASTARITA, M.D., an individual, SELMA CALMES, M.D., an individual, JOHN KADES, an individual, ED WINTER, an individual and DOES 1-10,<br><br>Defendants. | **Case No. CV 13-02265 DDP (AGRx)**<br>Complaint Filed: March 29, 2013<br>Assigned to: Hon. Dean D. Pregerson – Courtroom 3<br><br>**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**<br><br>DATE:   TBA<br>TIME:   TBA<br>LOCATION: Courtroom 3<br><br>Discovery Cut-Off:   None Set<br>Motion Cut-Off:       None Set<br>Trial Date:                None Set |

///

- 1 -

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 2

II.  STATEMENT OF FACTS.................................................................................. 2

    A.  Original Autopsy Report .......................................................................... 4

    B.  VSC's Request to Review the Autopsy Report ....................................... 6

    C.  Supplemental Autopsy Report ................................................................. 7

III. VSC HAS FAILED TO ESTABLISH IRREPARABLE HARM.............. 9

    A.  Preliminary Injunction ............................................................................. 9

    B.  Constitutional Violations ....................................................................... 13

    C.  Improper Motive .................................................................................... 13

IV.  DISCOVERY SOUGHT IS OVERBROAD ............................................. 13

V.   CONCLUSION .................................................................................................. 15

- i -

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**

# TABLE OF AUTHORITIES

**CASES**

*Alliance For The Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) .................................................................. 11

*Cotter v. Desert Palace, Inc.*
880 F.2d 1142 (9th Cir. 1989) .................................................................. 10

*Galbraith v. County of Santa Clara*
2000 WL 1793164 (not reported) ............................................................ 12

*Galbraith v. County of Santa Clara*
(9th Cir. 2002) 307 F.3d 1119 ................................................................. 12

*Herbert v. Morley*
(C.D. Cal. 1967) 273 F. Supp 800 ........................................................... 12

*Lawyer v. Kernodle*
(8th Cir. 1983) 721 F.2d 632 ................................................................... 12

*Loya v. INS*
583 F.2d 1110 (9th Cir. 1978) .................................................................. 11

*Mission Power Engineering Co. v. Continental Cas. Co.*
883 F.Supp. 488 (C.D. Cal. 1995) ............................................................. 9

*Sanborn Mfg. Co., Inc. v. Cambell Hausfeld/Scott Fetzer Co.*
997 F.2d 484 (8th Cir. 1993) ................................................................... 11

*Sigel v. LePore*
234 F.3d 1163 (11th Cir. 2000) ............................................................... 10

*Simula, Inc. v. Autoliv, Inc.*
175 F.3d 716 (9th Cir. 1999) ................................................................... 10

*Stanley v. University of Southern Cal.*
13 F.3d 1313 (9th Cir. 1994) ................................................................... 10

*Winter v. Natural Resources Defense Council*
555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ................................ 12

**OTHER**

Cal. Gov. Code, Sections 27491-27491.6 ................................................ 12

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**

Defendants COUNTY OF LOS ANGELES, a government entity, LAKSHMANAN SATHYAVAGISWARAN, M.D., an individual, RAFFI DJABOURIAN, M.D., an individual, DENIS C. ASTARITA, M.D., an individual, SELMA CALMES, M.D., an individual, JOHN KADES, an individual, ED WINTER, an individual (hereafter "Defendants"), hereby submit an Opposition to VALLEY SURGICAL CENTER, LLC's Ex Parte Application for Order Expediting Discovery and Shortening Time for Defendants' Responses as follows:

## I. INTRODUCTION

Plaintiff VALLEY SURGICAL CENTER, LLC. (hereafter, "VSC"), has issued an Ex Parte Application for Order Expediting Discovery and Shortening Time for Defendants' Responses in preparation (1) for an alleged future preliminary injunction hearing and (2) to prove its alleged Constitutional violations, which are the grounds upon which the entire complaint is based. However, VSC provides no defensible basis for their claim that they – and they alone – should be entitled to seek broad discovery at an early stage of litigation before pleadings are set. Furthermore, VSC has failed to establish irreparable harm if discovery proceeds within the normal course of the Federal Rules of Civil Procedure. Additionally, the discovery requested by VSC is not narrowly tailored, seeks to discover matters upon which the entire Complaint is based and seeks to investigate Defendants and their conduct before Defendants have actual knowledge of the claims against which they must defend. Furthermore, this Application makes numerous baseless allegations unsupported by any evidence. As a result, VSC has not established any legal basis upon which ex parte relief may be granted for expedited discovery.

## II. STATEMENT OF FACTS

This case revolves around the death of Paula Rojeski and subsequent autopsy performed by the Department of Coroner. VSC takes issue with the autopsy report released by the Coroner. First, VSC contends that an anesthesia consultant, Defendant SELMA CALMES, M.D. (hereafter, "Dr. Calmes"), made a factual error

- 2 -

regarding the surgery end-time upon which she relied in rendering her opinions regarding the anesthesiologist's standard of care. Second, VSC contends that Dr. Calmes improperly relied upon an anonymous letter when rendering her opinions regarding the anesthesiologist's standard of care. Third, VSC contends that the Defendants arrived at an improper *opinion* in their determination of the manner of death. When VSC brought these concerns to the attention of the Coroner, the Coroner, in good faith, issued its own discretionary internal hold on the autopsy report while it considered VSC's concerns and reassessed its report, as would be the case when any new information comes to light for the sake of due diligence. Thereafter, the Coroner authored a supplemental report admitting its error, correcting its error and addressing VSC's concerns, which the Coroner released within its normal course of practice. VSC continues to contest the autopsy report because it does not entirely comport with VSC's position. As a result, VSC seeks to interfere with the statutorily mandated duties of the Coroner by court intervention.

     Ms. Rojeski underwent Lap-Band surgery at VSC on September 8, 2011. After the surgery, Ms. Rojeski's condition deteriorated and she suffered cardiac-arrest. She was taken from VSC to West Hills Hospital, where resuscitative efforts were unsuccessful and she was pronounced dead. Prior to any autopsy, skin and bones from Ms. Rojeski were harvested with the permission of the Department of Coroner and Ms. Rojeski's next of kin, Michele Pelter. The autopsy was performed by Defendant RAFFI DJABOURIAN, M.D. (hereafter "Dr. Djabourian"), and, fellow, Defendant ADRIAN MARINOVICH, M.D. (hereafter "Dr. Marinovich"). The cause of death was determined to be a penetrating defect of the aorta near the origin of the inferior mesenteric artery. The manner of death was "undetermined."

     During the autopsy investigation, anesthesia consultant, Dr. Calmes, and a surgical consultant, Defendant DENIS C. ASTARITA, M.D. (hereafter, "Dr. Astarita"), were called upon to aid in determining the manner of death.

### A. Original Autopsy Report

In providing her Anesthesiology Consult, Dr. Calmes inadvertently misread the anesthesia chart times which she used in support of her opinions. She erroneously indicated that the length of surgery was from 0915 to 1115, noting that no further anesthetic drugs appear to have been given after 0945. She also noted twice that the anesthesia records were nearly illegible. (Exhibit "6", Document No. 26-1, Rojeski Autopsy Report, Forensic Consultant's Report, Anesthesiology Consult, pages 1-2).

While partially relying upon this inadvertent error, Dr. Calmes made the following opinions in the Original Autopsy Report:

> Anesthesia care was an extreme departure from the accepted standard of care and is, most likely, directly responsible for this patient's death....The injury could conceivably been repaired if the surgeon had been informed promptly that the patient appeared to be bleeding intra-abdominally....This patient was probably awake and feeling pain as she proceeded along the path to her death over the next 1 ½ hours. ...

(*Id.* at 4).

Dr. Calmes further opined that the anesthesia care fell below the standard of care because the anesthesiologist failed to (1) communicate the patient's deteriorating condition to the surgeon; (2) take action to resuscitate promptly; and (3) provide pain relief and amnesia during surgery. (*Id.*). An anonymous letter was received by the Coroner's office, which alleged several missteps by the anesthesiologist during Ms. Rojeski's operation. Dr. Calmes *initially* took these allegations into consideration in forming her opinions. In reliance on the anonymous letter, Dr. Calmes made further opinions regarding the maintenance of the monitors. Based upon her findings, she determined that "[t]his case can be considered grossly negligent anesthesia care." (*Id.*).

In providing his Surgery Consult, Dr. Astarita, noted the following:

///

- 4 -

> The autopsy findings and pictures showed a puncture of the abdominal aorta at a level of the inferior mesenteric artery. The operative note describes problems with hypotension, but offers no proper evaluations (such as searching for pneumothorax or bleeding or air embolism or cardiac events.)

(Exhibit "6", Rojeski Autopsy Report, Forensic Consultant's Report, Surgery Consult). Dr. Astarita determined that "[t]he manner of death is more appropriately undetermined at this time pending further investigation." (*Id.*). He further agreed with reporting this case to the California Medical Board for "gross negligence with incompetence." (*Id.*).

In determining the cause and manner of death, Dr. Djabourian noted that the surgery consultant indicated that "gross negligence with incompetence had a role in this death." Furthermore, he noted that the anesthesiology consultant indicated that "there was gross negligence on the part of the anesthesiologist" because he failed to meet basic standards of care including failure to (1) assess the patient's condition during surgery; (2) communicate the patient's deteriorating condition to the surgeon; and (3) provide pain relief and amnesia while the patient was paralyzed during surgery. (Exhibit "6", Rojeski Autopsy Report, Autopsy Report, pages 12-13).

Dr. Djabourian determined that the cause of death was intra-abdominal hemorrhage due to perforation of the aorta during laparoscopic surgery. (*Id.* at 13). He further determined that the decedent's atherosclerotic heart disease and enlarged heart were significant conditions. Nonetheless, he finds that "prompt recognition of the problem may have prevented this death. The injury itself, together with the failure to detect the resulting hemorrhage and respond appropriately, constitute an extreme deviation from the standard of care on the part of both the surgeon and the anesthesiologist." (*Id.*)

In terms of the manner of death, Dr. Djabourian found the following:

> Certifying the manner of death as homicide vs. accident would require knowledge of whether or not this death resulted from a conscious disregard for the patient's

-5-

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**

safety. The currently available information does not allow for a conclusion that the surgeon or anesthesiologist intentionally disregarded the patient's safety. The manner of death thus <u>could not be determined</u>.

(*Id.*) (emphasis added.)

### B. VSC's Request to Review the Autopsy Report

On January 5, 2012, Assistant Chief Winters from the Department of Coroner met with the FBI, FDA, California DOJ, and MBC. A security hold was requested by these government agencies while they conducted their respective investigations. On January 6, 2012, the FDA followed-up with a written request for a 90-day hold.

On August 7, 2012, The Los Angeles Police Department (LAPD) issued a letter to the Coroner indicating that it continues to investigate the death of Paula Rojeski. As a result, and due to the purported "sensitivity of the investigation", the LAPD requested a 60-day hold on the release of the Coroner's findings.

On October 13, 2012, Konrad Trope, attorney for VSC, sent a letter to Lakshmanan Sathyavagiswaran, M.D. requesting an opportunity to review and comment on the Coroner's report before making it public. Mr. Trope also complained that the delay in the Coroner's investigation had caused his clients a drop in patients and injury to their reputation. Mr. Trope's request was not granted at this time because the LAPD had continued to telephonically renew its request for a security hold until sometime on or around December 28, 2012.

When the security holds were lifted, representatives from the Coroner's office met with Mr. Trope and provided him with a copy of the autopsy report. Thereafter, Mr. Trope began forwarding multi-specialty expert reports criticizing the Coroner's handling of the case and the conclusions made in the autopsy report. In total, there were seven reports written by outside physicians hired by Mr. Trope to evaluate the case. As a result, and in good faith, the Coroner issued its own discretionary internal hold on the autopsy report while it considered the seven reports from the outside physicians and reassessed its report. In preparation for its

1 reassessment of the original autopsy report, and in response to VSC's allegation
2 that Dr. Calmes' bias pervaded the integrity of her opinions, the Coroner hired an
3 independent anesthesiologist, Earl Strum, M.D., to further evaluate the case.

### C. Supplemental Autopsy Report

Dr. Calmes reviewed the seven physician reports referred by Mr. Trope on behalf of VSC and discovered that she had misread the anesthesia chart times. In light of the admitted error, Dr. Calmes issued a supplemental report which *superseded* her previous consultations. She corrected her error in timing, omitted all opinions regarding the anesthesiologist's failure to provide pain relief and amnesia during surgery, and completely discarded her consideration of the anonymous letter. (Exhibit "6", Rojeski Autopsy Report, Forensic Consultant's Report, Supplemental Anesthesiology Consult, page 1). She noted that from 1000 to 1100, the patient's pattern of vital signs was that of hypovolemia (rapid heart rate and falling blood pressure) which is characteristic of uncompensated blood loss. (*Id.* at 2). The patient finally could not compensate for the on-going blood loss and arrested. (*Id.*). However, her ultimate conclusions remained largely the same. Dr. Calmes' ultimate opinions are as follows:

> This was a salvageable injury. Injury to the abdominal blood vessels, usually when trocars are placed, is well known to occur during laparoscopy. If the surgeon is alerted, repair is possible, even as resuscitation is occurring. Part of an anesthesiologist's job is to inform the surgeon that a patient appears to be losing blood inside the abdomen. Transfer to another hospital would be needed in this out-patient setting, and a hospital capable of vascular surgery was nearby. The anesthesiologist did not meet the standard of care because he failed to identify the problem and inform the surgeon of the patient's deterioration.

(*Id.*).

By March 7, 2013, Dr. Strum, the independent anesthesiologist retained to consult on this matter, issued a report which noted that there was no documentation of any communication with the surgeon regarding the need to maintain the patient

- 7 -

on inotropic agents, such as epinephrine, to support the blood pressure at any point until 10:55 a.m., when a code blue was called. (Exhibit "6", Rojeski Autopsy Report, Case Review – Earl Strum, M.D., page 6). He opined that "[t]he fact that Dr. Chau was treating a low blood pressure with epinephrine for 70 minutes after the case had ended and did not communicate this to the surgeon or call for additional help is below the standard of care and is considered negligent." (*Id.* at 7). He also opined that the death "was attributable to unrecognized bleeding from the aorta that occurred during the procedure." (*Id.*). The fact that the anesthesiologist did not recognize that "there was [a] major problem with the patient when epinephrine was required for a prolonged period of time" and did not consider "any other differential diagnoses such as bleeding, heart failure, or myocardial infarction falls below the standard of care." (*Id.*). Furthermore, the anesthesiologist's failure to communicate this problem to the surgeon or others "prevented this patient from receiving an earlier intervention, falls below the standard of care and is considered negligent." (*Id.* at 8).

> Dr. Strum's ultimate opinions are as follows:
>
>> In summary there are serious issues with the anesthetic management of this case, the most troublesome is the lack of communication by the anesthesiologist regarding the patients [sic] circulatory status and the need to support blood pressure for an extended period of time with epinephrine. Lack of critical thinking and not considering a differential diagnostic list are factors I considered to be below the standard of care and are negligent and not what the practice of anesthesiology should be.

(*Id.* at 9). Thus, he concluded that the anesthesiologist's handling of the case fell below the standard of care, though the failure to recognize a rare complication should not be deemed "gross negligence" (*Id.* at 8). In regard to the anonymous letter, he only remarked that "it is very difficult to assess without actually being on site." (*Id.* at 9).

Dr. Djabourian drafted a Supplemental Autopsy Report which revised his opinions to the initial autopsy report based upon a review of the seven physician

- 8 -

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY
AND SHORTENING TIME FOR DEFENDANTS' RESPONSES

reports provided by VSC, the supplemental report by Dr. Calmes, the independent report by Dr. Strum and a discussion with Dr. Astarita. Dr. Djabourian addressed various criticisms raised by VSC. [See Exhibit "6", Rojeski Autopsy Report, Supplemental Report, page 3(a)–(d)]. Nonetheless, the cause and manner of death remain <u>unchanged</u>. Dr. Djabourian further opined that though VSC takes issue with the Coroner's determination of manner of death, manner of death determinations are *opinions* which are defined in various ways. [*Id.* at 3(b)]. Furthermore, he stated that "[i]f any future investigations clarify that there definitely was or was not a conscious disregard for patient safety, the manner of death can be revised to homicide or accident respectively. As of now…this death does not conform to any one particular manner of death." (*Id.* at 2). Once Defendants concluded their reassessment of its initial autopsy report, it simultaneously released the original autopsy report and the supplemental autopsy report within its normal and customary practice pursuant to its statutory duties.

### III. VSC HAS FAILED TO ESTABLISH IRREPARABLE HARM

As a threshold matter, VSC has failed to establish good cause entitling it to ex parte relief. Ex parte applications, such as this one, are rarely justified. *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 490 (C.D. Cal. 1995). This ex parte application is not justified because VSC has failed to establish that it will be irreparably harmed if discovery proceeds within its normal course pursuant to the Federal Rules of Civil Procedure. VSC offers the following three reasons for requesting expedited discovery: (1) to prepare for an alleged future preliminary injunction hearing; (2) to prove its alleged Constitutional violations; and (3) to prove the "motive" for the alleged vendetta that the Coroner has against VSC, none of which justify ex parte relief.

#### A. Preliminary Injunction

First, Plaintiff contends that that they are entitled to expedited discovery in preparation to file a motion for preliminary injunction. But, the Court denied

VSC's application for TRO and OSC re: Preliminary Injunction; and, Plaintiffs have not since moved for a preliminary injunction. And, if they had, that would entitle *both* parties to limited preliminary discovery – not the one-sided discovery sought by VSC. *See Stanley v. University of Southern Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994)(noting that plaintiff may be able to obtain early discovery in a case where the plaintiff *actually* moved for a preliminary injunction.)

Additionally, the core purpose of a preliminary injunction is to prevent irreparable injury. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). And, to obtain injunctive relief, VSC must also demonstrate a likelihood of success on the merits. *Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1144 (9th Cir. 1989). However, if VSC cannot show the threat of irreparable injury, then a preliminary injunction is improper even *if* VSC proves the likelihood of success on the merits. *Sigel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Defendants have released the autopsy report and the supplemental report as it relates to the cause and manner of Paula Rojeski's death pursuant to its mandated statutory duties. This report is considered final though the Coroner has reserved its right to supplement the report again, if further evidence is offered. VSC contends that the autopsy report will subject VSC to (1) civil liability in the wrongful death action filed by Paula Rojeski's heirs; (2) disciplinary proceedings by the California Medical Board; and (3) revocation of its accreditation by the Joint Commission which does not justify its request to interfere with the Coroner's statutorily mandated duties. As evidenced by the interest from multiple state and federal agencies regarding this death and the pending wrongful death claim filed by the Rojeski heirs, VSC had been in the crosshairs of other litigants and multiple governmental agencies regarding this death well before the autopsy report was finalized and released. Additionally, it is not unusual for related Coroner opinions to be challenged by litigants in other civil and/or criminal litigations and/or investigations where those parties' experts disagree with the Coroner's conclusions. VSC has voiced concern

- 10 -
DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY
AND SHORTENING TIME FOR DEFENDANTS' RESPONSES

over the "admissibility" of the autopsy reports in these other actions, but equally as admissible is VSC's evidence which disagrees with the Coroner's findings and opinions as stated in the autopsy report. Furthermore, VSC has demonstrated that it has at least seven medical experts of their own to argue their position in those other forums. Therefore, there is no indication of irreparable harm upon which injunctive relief may be granted.

Furthermore, VSC's effort is legally unsound because VSC would be seeking a preliminary injunction as a remedy for *past* actions. Past harm is insufficient to establish the threat of irreparable injury. *Loya v. INS,* 583 F.2d 1110, 1114 (9th Cir. 1978) ("injunctive relief is designed to deter future misdeeds, not to punish for past conduct... As a matter of law...plaintiffs could not obtain an injunction as to alleged past violations of their rights.") Not only is past conduct insufficient to establish the threat of irreparable injury, but the continuing effects of past conduct cannot establish the threat of immediate future irreparable injury. *Sanborn Mfg. Co., Inc. v. Cambell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 489-90 (8th Cir. 1993) (affirming district court's conclusion that "present harm" from acts that occurred before the preliminary injunction motion were "not sufficient" to justify the sought relief.) Here, VSC relies upon the past conduct of Defendants' release of the autopsy report to justify their intent to file a preliminary injunction and subvert the statutory obligations of the Coroner without any evidentiary showing. Though VSC has conceded its concern regarding possible civil liability to the Rojeski heirs, possible discipline from the California Medical Board, and possible withdrawal of accreditation by the Joint Commission, this is only evidence of the continuing effects of the past conduct of the release of the autopsy report, a duty which the Coroner is statutorily obligated to perform. Moreover a mere possibility of harm is insufficient to justify a preliminary injunction – plaintiff "must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction. *Alliance For The Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.

- 11 -

2011), citing, *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 21-24, 129 S.Ct. 365, 375-76, 172 L.Ed.2d 249 (2008); emphasis in original. Therefore, there is no immediate irreparable harm upon which relief may be granted.

VSC also cannot prove a likelihood of success on the merits because public officials, including coroners and their consultants, are generally immune from complaints which arise out of discretionary activities, reasonably performed within the appropriate scope of their official authority and capacity. *Herbert v. Morley*, (C.D. Cal. 1967) 273 F. Supp 800, 802; *Lawyer v. Kernodle* (8th Cir. 1983) 721 F.2d 632, 635-636; *Galbraith v. County of Santa Clara*, 2000 WL 1793164 (not reported); *Galbraith v. County of Santa Clara* (9th Cir. 2002) 307 F.3d 1119, (affirmed in part, reversed in part, and remanded – wherein the Ninth Circuit did not overrule the "established rule" that coroners are immune from acts taken in the scope of their official duties. The central question of this case on appeal was whether a heightened pleading standard should continue to apply to constitutional tort claims in which improper motive is an element.) In this instance, Defendants have acted reasonably and within the permissible discretion of their official capacity. Defendants had full and complete statutory authority and capacity to make findings and report opinions exactly as they did in the course of their duties pursuant to Cal. Gov. Code, Sections 27491-27491.6. Furthermore, to permit VSC to interfere with these duties simply because they disagree with the Coroner's opinions subverts the process authorized by the Legislature. If permitted here, in such a speculative manner based only upon a supposition that VSC may be able to prove "improper motive", it would create a precedent whereby other litigants may do the same whenever their own opinions differ with the Coroner. When the Defendants' activities are measured by their statutory discretion, and the scope of their official authority, the Court will necessarily find that they are immune from the action filed by VSC.

///

- 12 -

### B. Constitutional Violations

Second, VSC contends that they are entitled to expedited discovery to prove their unspecified Constitutional violations. However, this "justification" does not entitle VSC to one-sided discovery. VSC's contention that Defendants violated its Constitutional rights goes to the merits of the entire Complaint, and both parties are entitled to investigate those allegations through discovery in the ordinary course.

### C. Improper Motive

Third, VSC has acknowledged that it is seeking expedited discovery to seek facts in support of its contention that the Coroner had an improper "motive" when it authored an allegedly intentionally false report. Admittedly, VSC currently has no facts in support of the purported improper motive of Defendants. Therefore, as argued above, VSC's allegations of Defendants' "vendetta" against VSC are completely unsupported and based upon speculation. Furthermore, the requested expedited discovery is improper especially when VSC has failed to establish that it would obtain a preliminary injunction even if the requested discovery were granted. Not only would expedited discovery be futile, but it would be prejudicial to Defendants to grant VSC expedited and unilateral discovery based upon unsupported allegations upon which the entire Complaint is based.

## IV. DISCOVERY SOUGHT IS OVERBROAD

Though VSC contends that it seeks only limited discovery, what it actually seeks are extremely broad categories of documents consisting of nearly all possible discovery in this case at an early stage of litigation before pleadings are set. Defendants intend to file a 12(b)(6) motion which may result in the dismissal of one or more causes of action. It is also unclear at this time whether or not VSC intends to amend its Complaint. Unless or until the pleadings are set, the requested expedited discovery would also allow VSC to investigate Defendants and their conduct before Defendants have actual knowledge of the claims against which they must defend. Additionally, VSC seeks to depose four of the seven individual

- 13 -

1 Defendants without limiting the scope of their deposition and leaves open the
2 potential that these Defendants would be deposed *again* within the normal course of
3 discovery. Furthermore, the Request for Production seeks the following:

> **REQUEST NO. 1:**
>
> All DOCUMENTS, COMMUNICATIONS, AND CORRESPONDENCE CONCERNING OR RELATING TO the investigation of the death of Paula Marie Rojeski..."
>
> **REQUEST NO. 2:**
>
> All DOCUMENTS, COMMUNICATIONS, AND CORRESPONDENCE YOU have had with any person, business or other entity CONCERNING OR RELATING TO Paula Rojeski...
>
> **REQUEST NO. 3:**
>
> All DOCUMENTS CONCERNING OR RELATING TO "security hold" policies, security protocols, and privacy policies for the Los Angeles County Coroner's Office...
>
> **REQUEST NO. 4:**
>
> All DOCUMENTS, COMMUNICATIONS, AND CORRESPONDENCE CONCERNING OR RELATING TO work logs, telephone logs, telephone messages, telephone calls, billing for services rendered, time sheets, time accountings, description of services, and all other documents showing the work performed and time expended relating by the LA County Coroner's office, and all of its agents, REPRESENTATIVES, and employees CONCERNING OR RELATING TO Paula Rojeski...

(Declaration of Konrad L. Trope In Support of Ex Parte Application for Expedited Discovery, Exhibit 2). Moreover, the number of documents that VSC seeks from each defendant is inconsistent within VSC's moving papers; i.e. **four** documents requested in their Ex Parte Application; **five** documents requested in their Memorandum of Points and Authorities; and **ten** requested in their Proposed Order. Nonetheless, VSC has only provided Defendants and the Court the opportunity to assess the **four** requests for production provided above. Notwithstanding the apparent discrepancy among the number of requested documents, the proposed

- 14 -

1  discovery relates to the allegations made in the Complaint and would allow VSC –
2  and only VSC – to conduct nearly all discovery in an expedited fashion under the
3  premise of preparing for a preliminary injunction hearing. This is clearly not the
4  purpose of expedited discovery. Furthermore, Request No. 1, which in part
5  requests the *entire* Coroner case file. This document alone consists of thousands of
6  pages. It would be impossible to locate, review and redact the thousands of pages
7  of records for any material that is protected by attorney-client privilege or privacy
8  rights under shortened time as requested by VSC. As a result, Defendants request
9  the Court to deny VSC's request for expedited discovery.

## V. **CONCLUSION**

VSC has not established good cause to warrant one-sided expedited discovery at an early stage of litigation before pleadings are set. Not only has VSC failed to file a motion for preliminary injunction at this time, but VSC has failed to establish irreparable harm if discovery proceeds within the normal course of the Federal Rules of Civil Procedure now that the autopsy report has been released. Additionally, its allegations of Constitutional violations and improper motive are completely unsupported and based upon speculation. Furthermore, VSC's request for expedited discovery is not narrowly tailored limited, but rather overbroad in a

///
///
///
///
///
///
///
///
///

- 15 -

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**

unilateral attempt to conduct all discovery now. As a result, VSC has not established any legal basis upon which ex parte relief may be granted for expedited discovery.

Dated: April 11, 2013

MARANGA * MORGENSTERN

By: _____
KENNETH A. MARANGA
PATRICIA E. ELLYATT
MORGAN A. METZGER
PATRICIA "MOLLY" FORD
Attorneys for Defendants
COUNTY OF LOS ANGELES, a government entity; LAKSHMANAN SATHYAVAGISWARAN, M.D., RAFFI DJABOURIAN, M.D., DENIS C. ASTARITA, M.D., SELMA CALMES, M.D., JOHN KADES, and ED WINTER, public employees

Z:\ADMIN\MATTERS - ACTIVE\HLTH - Maranga Morgenstern - LAP BAND MATTER\Pleadings\Opposition.Ex.Parte.Expedited.Discovery.docx

# PROOF OF SERVICE
## [C.C.P. §1013]

STATE OF CALIFORNIA )
) ss.:
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5850 Canoga Ave., Suite 600, Woodland Hills, CA 91367.

On April 11, 2013, I served the foregoing document entitled **DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES,** on all parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST.**

\_\_\_\_ **By Mail.** By placing a true copy thereof enclosed in a sealed envelope. I am "readily familiar" with the firm's practice of collection and processing for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with first class postage thereon fully paid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter is more than one day after day of deposit for mailing in this Proof of Service.

\_\_\_\_ **By Telefax.** I transmitted said document by telefax to the offices of the addressees at the telefax numbers on the attached Service List.

\_\_\_\_ **By Personal Service.** I delivered such envelope by hand to the addressee(s).

\_\_\_\_ **By Overnight Courier.** I caused the above-referenced document(s) to be delivered to an overnight courier service for next day delivery to the above addressee(s).

_X_ **By Email Transmission.** I caused the abovementioned document(s) to be transmitted by email to the address(es) listed below at their respective email address(es) as listed and described below. I am "readily familiar" with this office's practice for transmissions by email. Under that practice transmissions are sent as soon as possible and are repeated, if necessary, until they are reported as complete and without error. In sending the foregoing document(s) by email, I followed this office's ordinary business practices. The sending email address is mchavez@marmorlaw.com.

///

///

- 1 -

The below listed individuals are registered with the Court to receive notice of electronically filed documents and will therefore be served via the Court's ECF System:

| | |
|---|---|
| Barrett S. Litt, Esq. (SBN 45527)<br>E-Mail: blitt@kmbllaw.com<br>David McLane, Esq. (SBN 133214)<br>KAYE, MCLANE, BEDNARSKI & LITT, LLP<br>234 Colorado Blvd., Suite 230<br>Pasadena, California 91101<br>(626) 844-7660; FAX (626) 844-7670 | *Attorneys for Plaintiff,*<br>*VALLEY SURGICAL CENTER, LLC* |
| Konrad L. Trope, Esq. (SBN 133214)<br>E-Mail: ktrope@centurionlawgroup.com<br>Mark S. Faulkner, Esq. SBN 102679)<br>CENTURION LAW GROUP, P.C.<br>9107 Wilshire Blvd., Ste. 450<br>Beverly Hills, CA 90210<br>(888) 942-9997; FAX (888) 942-9997 | *Attorneys for Plaintiff,*<br>*VALLEY SURGICAL CENTER, LLC* |

__X__ **(Federal)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **April 11, 2013**, at Woodland Hills, California

_____
Michelle Metz Chavez

- 2 -

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER EXPEDITING DISCOVERY AND SHORTENING TIME FOR DEFENDANTS' RESPONSES**