1   BARRETT S. LITT, SBN 45527
    E-Mail: blitt@kmbllaw.com
2   DAVID MCLANE, SBN 124952
3   KAYE, MCLANE, BEDNARSKI & LITT, LLP
    234 Colorado Blvd., Suite 230
4   Pasadena, California 91101
    Telephone: (626) 844-7660
5   Facsimile: (626) 844-7670

6
    KONRAD L. TROPE, SBN 133214
7   E-Mail: ktrope@centurionlawgroup.com
    MARK S. FAULKNER, SBN 102679
8   CENTURION LAW GROUP, P.C.
    9107 WILSHIRE BLVD., STE. 450
9   BEVERLY HILLS, CA 90210
    TEL: 888-942-9997
10  FAX: 888-942-9997

11
    ATTORNEYS FOR PLAINTIFF
12  VALLEY SURGICAL CENTER, LLC

13
14                    UNITED STATES DISTRICT COURT
15                   CENTRAL DISTRICT OF CALIFORNIA

16
17  **VALLEY SURGICAL CENTER,**          Case No.: CV 13-02265 DDP(AGRx)
    **LLC, a California Limited**
18  **Liability Company,**               [Honorable Dean D. Pregerson]

19              **Plaintiff,**           **REPLY BRIEF IN SUPPORT OF**
                                         **PLAINTIFF'S MOTION FOR**
20          **vs.**                      **EXPEDITED DISCOVERY**

21  **COUNTY OF LOS ANGELES, et al.**    Motion Hearing Date: TBD
                                         Preliminary Injunction Hearing Date: TBD
22          **Defendants.**              Courtroom: 3

23                                       Complaint Filed: March 29, 2013
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 1

II.   PROCEDURAL HISTORY ................................................. 5

III.  DEFENDANTS' ARGUMENTS AGAINST EXPEDITIED
      DISCOVERY ARE WITHOUT MERIT .............................. 8

      A.   *VALLEY'S REQUEST FOR INJUNCTIVE RELIEF HAS NOT BEEN
           RENDERED MOOT, AND VALLEY CONTINUES TO EXPERIENCE
           IRREPARABLE HARM AS A RESULT OF THE REPORT'S ONGOING
           STATUS AS AN OFFICIAL, LEGITIMATE GOVERNMENT REPORT.* ........... 8

      B.   *DEFENDANTS' CLAIMS OF IMMUNITY ARE WITHOUT MERIT* ............... 14

      C.   *VALLEY HAS DEMONSTRATED GOOD CAUSE FOR EXPEDITED
           DISCOVERY.* ......................................................... 17

      D.   *VALLEY'S EXPEDITED DOCUMENT REQUESTS CAUSE NO PREJUDICE TO
           DEFENDANTS.* ........................................................ 22

      E.   *VALLEY HAS ALSO DEMONSTRATED GOOD CAUSE BECAUSE THE
           REQUESTED DISCOVERY WILL LIKELY DEMONSTRATE DEFENDANTS'
           MOTIVES.* ........................................................... 23

IV.   CONCLUSION. .......................................................... 25

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*American LegalNet, Inc. v. Davis*
   673 F.Supp.2d 1063 (C.D. Cal. 2009) ........................................................ 2, 19

*Applied Med. Distrib. Corp. v. Surgical Co. BV*
   587 F.3d 909 (9th Cir. 2009) ........................................................................ 8

*Arizonans for Official English v. Arizona*
   520 U.S. 43 (1997) ........................................................................................ 7

*Ashcroft v. al-Kidd*
   —— U.S. ——, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ........................... 5, 15

*Ayyash v. Bank Al-Madina*
   233 F.R.D. 325 (S.D.N.Y.2005) .................................................................. 18

*Brown v. Miller*
   519 F.3d 231 (5th Cir. 2008) ...................................................................... 16

*Buckley v. Fitzsimmons*
   20 F.3d 789 (7th Cir.1994) ......................................................................... 13

*Christopher v. Harbury*
   536 U.S. 403, 122 S. Ct. 2179 (2002) .......................................................... 8

*Colorado Envtl. Coal. v. Office of Legacy Mgmt.*
   819 F. Supp. 2d 1193 (D. Colo. 2011) *amended on reconsideration,* 08-
   CV-01624-WJM-MJW, 2012 WL 628547 (D. Colo. Feb. 27, 2012) ............ 9, 10

*Conner v. Burford*
   848 F.2d 1441 (9th Cir.1988) ....................................................................... 9

*Costanich v. Dep't of Soc. & Health Services*
   627 F.3d 1101 (9th Cir. 2010) ..................................................... 11, 12, 13, 16

*Devereaux v. Abbey*
   263 F.3d 1070 (9th Cir.2001) (en banc) ....................................... 11, 12, 13, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Dimension Fin. Corp. v. Board of Governors of the Fed. Reserve Sys.*
   744 F.2d 1402 (10th Cir.1984) *aff'd,* 474 U.S. 361, 106 S.Ct. 681, 88
   L.Ed.2d 691 (1986) ........................................................................................ 9

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*
   344 F.Supp.2d 986 (S.D.Tex.2004) ............................................................ 18

*Farnam v. Walker*
   593 F. Supp. 2d 1000 (C.D. Ill. 2009) ........................................................ 11

*Finnegan v. Myers*
   2013 WL 359696 (N.D. Ind. Jan 30, 2013) ................................................ 12

*Foster v. General Motors Corporation*
   20 F.3d 838 (8th Cir.1994) ......................................................................... 10

*Gaddy v. Hartford Life Ins. Co.*
   218 F.Supp.2d 1123 (E.D. Missouri 2002) ................................................ 10

*Galbraith v. County of Santa Clara*
   307 F.3d 1119 (9th Cir.2002) ......................................................... 12, 15, 16

*Giebel v. Sylvester*
   244 F.3d 1182 (9th Cir. 2001) .................................................................... 13

*Gregory v. City of Louisville*
   444 F.3d 725 (6th Cir. 2006) ...................................................................... 16

*Harlow. Lawyer v. Kernodle*
   721 F. 2d 632 (8th Cir. 1983) ..................................................................... 15

*Harlow v. Fitzgerald*
   457 U.S. 800, 102 S. Ct. 2727 (1982) ........................................................ 15

*Hart v. Gaioni*
   354 F.Supp. 2d 1127 (C.D. Cal. 2005) ......................................................... 8

*Henry A. v. Willden*
   678 F.3d 991 (9th Cir. 2012) ...................................................................... 14

*Herbert v. Morley*
   273 F.Supp. 800 (C.D. Cal. 1967) ........................................................ 15, 16

iii

*In re Countrywide Fin. Corp. Derivative Litig.*
    542 F.Supp.2d 1160 (C.D.Cal.2008)..................................................... 17, 18

*Jones 'El v. Berge*
    164 F.Supp.2d 1096 (W.D.Wis. 2001)............................................................ 10

*Kamakana v. City & County of Honolulu*
    447 F.3d 1172 (9th Cir. 2006)........................................................... 22, 23

*Keko v. Hingle*
    318 F.3d 639 (5th Cir.2003) ..................................................................... 16

*Kessler v. City of Providence*
    167 F. Supp. 2d 482 (D.R.I. 2001) ............................................................. 9

*Lacy v. County of Maricopa*
    631 F.Supp.2d 1197 (D.Ariz. 2008)........................................................... 17

*Landrigan v. City of Warwick*
    628 F.2d 736 (1st Cir.1980) ...................................................................... 13

*Long v. Kroger*
    2013 WL 424474 (D. Or. Feb. 1, 2013)..................................................... 13

*Manochhio v. Moran*
    919 F.2d 770 (1st Cir. 1990) .................................................................... 10

*Matson & Isom Technology Consulting v. Dell Inc.*
    2008 U.S. Dist. LEXIS 75753 (E.D. Cal. 2008) ........................................ 19

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*
    194 F.R.D. 618 (N.D.Ill.2000) ................................................................. 18

*Millennium TGA, Inc. v. Doe*
    2012 U.S. Dist. LEXIS 38636 (E.D. Cal. 2012) ................................... 7, 19

*Miller v. Fairchild Indus., Inc.*
    797 F.2d 727 (9th Cir.1986), *aff'd in part, rev'd in part on other grounds,*
    885 F.2d 498 (1989) (*en banc* ) ............................................................... 24

*Milwaukee Police Ass'n v. Jones*
    192 F.3d 742 (7th Cir.1999)................................................................... 10

iv

*Pearson v. Callahan*
   555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ...................................... 15

*Pierce v. Gilchrist*
   359 F.3d 1279 (10th Cir. 2004) .......................................................................... 16

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*
   213 F.R.D. 418 (D.Colo.2003) ............................................................... 17, 18, 19

*Sanjour v. United States EPA*
   7 F.Supp.2d 14 (D.D.C.1998) ............................................................................... 9

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*
   217 F.3d 46 (1st Cir. 2000) ................................................................................ 24

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
   208 F.R.D. 273 (N.D.Cal.2002) .................................................................... 18, 19

*Snell v. Tunnell*
   920 F.2d 673 (10th Cir. 1990) ............................................................................ 12

*Storey v. Chelan County*
   2011 WL 1575506 (E.D. Wash. Apr. 26, 2011) ................................................. 12

*United States v. James*
   2013 WL 1235642 (2d Cir. Mar. 28, 2013) ....................................................... 10

*United States v. Stanley*
   24 F.3d 1314 (11th Cir. 1994) ........................................................................... 22

*Zahrey v. Coffey*
   221 F.3d 342 (2nd Cir. 2000) ...................................................................... 12, 13

**FEDERAL STATUTES**

42 U.S.C. §1983............................................................................... 12, 13, 16, 15

**RULES**

Fed. R. Evid, 803(6) ............................................................................................ 10

Fed. R. Evid., 803(8) ........................................................................................... 10

Fed. Rule Civ. Proc. Rule 12(b)(6)..................................................................... 1,5

1

Fed. Rule Civ. Proc. Rule 26(d). ................................................................ 17

2

Fed. Rule Civ. Proc. Rule 26(f) ................................................. 17, 18, 19

3

## CONSTITUTIONAL PROVISIONS

4

5

Fifth Amendment ...................................................................................... 8

6

First Amendment ................................................................................. 1, 8

7

Fourteenth Amendment .............................................................. 8, 11, 13

8

Fourth Amendment .................................................................................. 7

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

This Reply Memorandum will examine each of defendants' arguments and demonstrate that "good cause" – the applicable standard for expedited discovery – exists.  Defendants have presented no evidence or testimony to support any of their claims or to establish any prejudice from expedited discovery. We do not address whether an ex parte application for an order shortening time is needed, as this Court set the briefing schedule at the TRO hearing, mooting any such issue. Nor do we move to strike the Defendants' factual statement although we note that Defendants failed to present any admissible evidence for any of its factual asssertions. Plaintiff and Defendants met and conferred on April 5, as this Court ordered, but were unable to agree on any aspects of the pending motion.

Defendants have responded to Plaintiff Valley's Motion for Expedited Discovery with a series of inaccurate recitations of the governing law and facts, and irrelevant arguments that apply to a Rule 12(b)(6) motion. We provide a quick overview of our position before refuting in detail Defendants' erroneous arguments, which appear designed to confuse the court and obfuscate the issues .

Defendants' argue, "Admittedly, [Valley] currently has no facts in support of the purported improper motive of Defendants."  (Defendants' Opp., p. 13, lines 10-11).  However, the statement ignores previously filed pleadings from Valley.  The previously filed  affidavits of Roberto Macatangay (Doc.5-7), Michael Sedrak, M.D. (Document entries, 5-8), and Konrad Trope (Document entries 5-10 & 6-3), along with the Complaint, demonstrate defendants' unquestioned "motive" to retaliate against Valley for its 1st Amendment petitions complaining of the publicly documented professional bias of Medical Examiner Selma Calmes.

Every time Valley complained about Dr. Calmes' documented professional bias against bariatric surgeries in an outpatient setting, such as Valley's,  it was rebuffed and met with an almost immediate retaliatory violation of its constitutional rights, e.g., an illegal search and seizure on December 5, leaks of a

1    criminal investigation to the press on April 4, 2012, and  her description at a public

2    forum in September 2012  to false facts that were readily identifiable as a reference

3    to the Rojeski death at Valley.[1]

4         The Coroner's Office insisted over Valley's written objection dated

5    December 1, 2011, that the heavily biased Dr. Selma Calmes act as its anesthesia

6    expert.  (Complaint, Exhibit "1").  (Valley had previously protested her prejudice

7    on March 23, 2011. (Complaint, Exhibit "2").) After the December 1, 2011, letter,

8    the Coroner "circled around" Selma Calmes and forced her onto Valley's premises

9    to conduct an illegal search and seizure.  (Declaration of Roberto Macatangay,

10   Doc. 5-7, p. 4, line 4, to p. 5, line 8).  The Coroner's Office accomplished this by

11   fabricating an illegal subpoena and using the subpoena as if it were a search

12   warrant to demand and obtain access to Valley's premises on December 5, 2011.

13   (Complaint, Exhibit "3;" Macatangay Dec., p. 4, line 22, to p. 5, line 8).  The close

14   time proximity is strong evidence of retaliation. The existence of this continuing

15   pattern of retaliation provides "good cause" for expedited discovery.  *American*

16   *LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1066 (C.D. Cal. 2009).

17        On September 7, 2012, Valley sent an extensive memorandum to the

18   Coroner showing that Paula Rojeski suffered from a severe heart injury she had

19   concealed from Valley doctors from her prior use of the drug Fen Phen and

20   ───────────────────

21        [1] Defendants claim (Opp., pg. 6) that Dr. Calmes inadvertently misread the

22   anesthesia chart times she used in support of her original opinion. Plaintiff intends
     to challenge the claim that this was "inadvertent." Dr. Calmes in fact claimed that

23   the length of surgery was from 0915 to 1115, that no further anesthetic drugs

24   appear to have been given after 0945, and (twice) that the anesthesia records were
     nearly illegible. (Exhibit "6", Document No. 26-1, Rojeski Autopsy Report,

25   Forensic Consultant's Report, Anesthesiology Consult, pages 1-2). In fact, as the

26   exhibits to the complaint demonstrate, it was patently obvious that the surgery only
     lasted half an hour, and the record was clearly legible that that was so. Plaintiff

27   pointed this out to Defendants on numerous occasions, during none of which times
     did the Coroner's Office acknowledge the error. It was only acknowledged in the

28   rushed report issued April 1

1    criticizing Selma Calmes for a lack of investigation.  Two weeks later, Selma
2    Calmes gave September 21 speech, where she claimed that an "Ambulatory
3    Surgery Center Disaster" had led to the death of two lap band patients, one of
4    which was an obvious reference to Paula Rojeski.  (Complaint, p. 17, line 24, to p.
5    18, line 15).  Again, the close time proximity evidences retaliation. In doing so,
6    Calmes violated the Coroner's "Security Hold" on the case and used false
7    information to attack Valley which she has now retracted in her April 1, 2013,
8    Autopsy Report.  She prominently displayed in her speech a billboard from 1 800
9    Get Thin which advertised for Valley.  (Complaint, Exhibit "5").

10          In Defendants' opposition, they claim that all errors and references to an
11   anonymous letter were totally removed.  This is false. In the report issued on April
12   1, 2013, Selma Calmes had to admit to egregious errors in her original report.
13   However, the alleged revisions in the April 1, 2013 issued autopsy report still
14   repeatedly reference an "anonymous letter" which the Coroner's Office never
15   bothered to verify and indeed knew to be false. Defendants' new consultant, Dr.
16   Earl Strum, makes reference to the anonymous letter.  In addition, the two
17   contributing authors who did not provide revisions, Drs. Astarita and Marinovich,
18   whose original opinions are part of the April 1 report, still rely upon the unverified,
19   unreliable "anonymous letter."

20          Plaintiffs expect discovery to support the conclusion that the Coroner's
21   Office felt pressured and was motivated to assign maximum fault to Valley to
22   protect itself and Selma Calmes, so much so that the Coroner's Office appears to
23   have misrepresented to this Court on April 4, 2013, that the report was released in
24   the ordinary course of business.  There was clearly nothing "ordinary" about the
25   way this report was created and released because two of the original signatories of
26   the Report, Dr. Astarita and Dr. Marinovich, have glaringly not signed it.
27   Extraordinarily, the two co-authors who did sign the report dated their revisions
28   April 1, 2013, the same day the report was issued.  Valley does not believe that this

1   is a coincidence, but a rush to retaliate against Valley and beat the TRO.  It defies

2   credibility that the Coroner's Office reviewed these revised reports dated April 1,

3   and then issued them, in the ordinary course of business, on the very same day.

4   Expedited discovery will show the assertion of "ordinary course of business" was

5   pretextual, and, Plaintiff believes,  support its contention repeated and continuing

6   retaliation against Valley's and violation of its constitutional rights.

7          Defendants allege that they should not be compelled to appear for

8   depositions because they cannot ascertain the scope of the depositions until the

9   pleadings are confirmed. This argument lacks for several reasons, including 1)

10  Defendants were served with a 42 page complaint accompanied by approximately

11  300 pages of exhibits, and an Application for a TRO, which contained over 100

12  pages of briefing and exhibits; 2) Defendants have been aware for months of the

13  concerns Valley had regarding their handling of the autopsy, as Valley provided

14  detailed explanations of those concerns; and 3) Defendants were served with

15  Valley's instant motion for expedited discovery in which Valley set forth in detail

16  the scope and focus of the proposed four depositions and five document production

17  requests.

18         Defendants repeatedly complain about Valley's "one sided request" for

19  expedited discovery. It is not Valley's obligation in a motion for expedited

20  discovery to forecast or conjecture what expedited discovery the non-moving

21  parties might desire. Defendants have not in any manner whatsoever advised the

22  court in their opposition brief what expedited discovery they might need to respond

23  to Valley's motion for a preliminary injunction. They are free to bring such a

24  request to the Court.

25         Plaintiff's request for expedited discovery is the result of Defendants'

26  repeated and ongoing violations of Valley's constitutional. Thus, Defendants'

27  citation to the *Mission Power* decision is completely without merit. Ex Parte relief

28  for expedited discovery has been recognized as particularly appropriate when the

1   moving party is seeking discovery in support of a motion for preliminary
2   injunction. This was effectively recognized by this Court when it set this briefing
3   schedule in response to Valley's explanation that it would file a motion for a
4   preliminary injunction but first needed discovery.Thus, Defendants' criticism that
5   Valley must file its motion for Preliminary Injunction first before this instant
6   motion is heard is a gross distortion of the record.

7       Defendants' assertion that, as public officials, they are immune from
8   Valley's claims are pre-mature and irrelevant. This motion is about expedited
9   discovery to support Valley's forthcoming application for injunctive relief.
10  Defendants must bring a motion under *Fed. Rule Civ. Proc. Rule 12(b)(6)* if they
11  wish to challenge Plaintiff's complaint, which is not a defense to a request for
12  injunctive relief. Moreover, these Defendants are not protected under any concept
13  of qualified immunity as Valley has provided a very detailed complaint "showing
14  (1) that [these Defendants] violated a statutory or constitutional right, and (2) that
15  the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*
16  *v. al-Kidd,* ⸺ U.S. ⸺, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

17      Finally, Valley's request for injunctive relief is not moot. Valley seeks an
18  injunction to restraint Defendants from continuing to violate its rights, to invalidate
19  the legal effect of the Coroner's Report, and to prevent the Coroner's Office future
20  participation in any matters related to the Rojeski death.

21  ## II.    PROCEDURAL HISTORY

22      For 19 months, the Los Angeles County Coroner's Office ("Coroner's
23  Office") has been pursuing a biased investigation against Valley Surgical Center,
24  LLC ("Valley"), systematically violating Valley's constitutional rights, in
25  connection with the death of Paula Rojeski after weight loss surgery at Valley. The
26  Coroner's Office and its representatives have falsified the available and known
27  evidence regarding the Rojeski surgical procedure, misrepresented the cause of
28  death and falsely contended that Valley's surgical procedure caused the death.

1  Their initial false assessments were forwarded to the LAPD Robbery-Homicide

2  Division  and subsequently  was released to Paula Rojeski's next of kin. In

3  violation of its own Security Hold, the Coroner's Office has leaked aspects of the

4  autopsy investigation to the public .

5       The Coroner's Office published its original report in the revised autopsy

6  report released April 1 and, to the extent it changed certain contentions in the

7  original report, nonetheless continued the false premise of the original report, i.e.,

8  that the cause of death was potentially gross negligence and that homicide by the

9  medical staff could not be ruled out, , and it intentionally omitted critical facts

10  regarding the cause of death of which it was fully aware.

11       The Coroner's Office's biased, falsely premised actions disqualify it from

12  continuing to investigate the Rojeski death, and disqualify its report from having

13  any legal effect. Its bias has been manifested by, *inter alia*, (1) using a principal

14  investigator who stridently advocates banning ambulatory surgery centers from

15  performing weight loss surgery and whose initial report fabricated and falsified the

16  surgical evidence on which the Coroner has relied; (2) placing a supposed

17  "security hold" (the legal basis of which has never explained) on its investigation

18  to justify not communicating its report to Valley while simultaneously

19  communicating it to others, including the Rojeski family; (3) threatening to release

20  the autopsy report –not completed after 19 months – if Valley or anyone else were

21  to publicly disclose or complain of the wrongful actions of the Coroner's Office;

22  (4) relying on the unverified allegations of an anonymous source; and (5) obtaining

23  access to Valley's surgical offices by presenting a subpoena demanding access for

24  which it did not have the legal authority represented in the subpoena.

25       The Coroner's actions (only partly summarized above) have resulted in

26  numerous violations of Valley's constitutional rights and state laws, protected

27  liberty and property interests, including violations of due process involving the

28  deliberate falsification of evidence to trigger a criminal investigation,

1   recommending disciplinary proceedings, and jeopardizing Valley's accreditation.

2   The Coroner's Office has intimidated and chilled Valley's exercise of its rights to

3   free speech, to petition the government, and to access the courts, violated its Fourth

4   Amendment rights, deprived it of procedural and substantive due process of law,

5   and deprived it of equal protection of the law. Defendants have engaged in a

6   systematic campaign lasting over a year resulting in the deprivation of Valley's

7   constitutional rights and threatened its very existence in doing so.

8         Defendants' release, on April 1, 2013, of a false Autopsy Report on Paula

9   Rojeski that was full of fabricated and contradictory statements, was an

10  unmistakable, deliberate attempt to prevent, obstruct and defeat this Court from

11  considering this vital matter of repeated Constitutional violations.       Although

12  the Coroner's own new expert, Dr. Earl Shrum, rejected Dr. Calmes' erroneous

13  assessment, and she even admitted error, the final Report released by the Coroner's

14  office contains, without explanation, both versions.  (See Expert Declarations,

15  Docs 5-3 to 5-11).  Thus, Defendants have released an altered Autopsy Report that

16  was incomplete, internally inconsistent, and unapproved by two (2) of its original

17  signatories.  Good cause exists to for expedited discovery to uncover how these

18  continuing constitutional violation occurred.  *Millennium TGA, Inc. v. Doe*, 2012

19  U.S. Dist. LEXIS 38636  (E.D. Cal. 2012).

20        Valley expressed great fear in its prior filings before this Court that

21  Defendants had threatened Valley should it complain to the Court about the corrupt

22  investigation leading to the drafting of the false Autopsy Report. Now Defendants

23  have done the very thing which they threatened to do. Defendants engaged in a

24  deliberate "bad faith" effort to render Valley's request for Injunctive Relief as

25  "moot" by engaging in the improper conduct of attempting to "beat the TRO."

26  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) (Plaintiffs

27  have duty to bring to court's attention any issues which might indicate mootness).

28

1   However Defendants' efforts to "beat the TRO" have not rendered this case

2   moot because ***prohibitory*** injunctive relief against giving the Rojeski Final Report

3   any legal effect is now appropriate. *See, e.g., Applied Med. Distrib. Corp. v.*

4   *Surgical Co. BV*, 587 F.3d 909, 921 (9th Cir. 2009) (injunction where party seeks

5   "to evade the rightful authority of district court") and cases in Section III(A), *infra*.

6   Lastly, it should be noted that the Court ordered on April 4, 2013, that

7   counsel for the parties meet and confer regarding the possibility of developing a

8   compromise on expedited discovery.  The next day on April 5, 2013, counsel for

9   the parties "meet and conferred" in accordance with the Court's order from the

10  previous day's hearing.  Defendants' counsel refused to compromise on any aspect

11  of its opposition to expedited discovery, thus compelling Plaintiff Valley to go

12  forward with this instant motion.

13  **III. DEFENDANTS' ARGUMENTS AGAINST EXPEDITED**
14  **DISCOVERY ARE WITHOUT MERIT.**

15  **A. VALLEY'S REQUEST FOR INJUNCTIVE RELIEF HAS NOT BEEN**
    **RENDERED MOOT, AND VALLEY CONTINUES TO EXPERIENCE**
16  **IRREPARABLE HARM AS A RESULT OF THE REPORT'S ONGOING**
    **STATUS AS AN OFFICIAL, LEGITIMATE GOVERNMENT REPORT.**
17

18  Valley continues to experience irreparable injury from not only the

19  Coroner's latest conduct of releasing a false Autopsy Report, but also from

20  Defendants' continuing pattern of Constitutional violations including punishing

21  Valley for accessing this Court in violation of Article 4, First Amendment, Fifth

22  Amendment and Fourteenth Amendment of the Constitution. *Christopher v.*

23  *Harbury*, 536 U.S. 403, 413, 122 S. Ct. 2179, 2185, 153 L. Ed. 2d 413 (2002)

24  ("systemic official action [that] frustrates a plaintiff … in preparing and filing

25  suits" violates right of access to the courts); *see also Hart v. Gaioni,* 354 F.Supp.

26  2d 1127, 1130 (C.D. Cal. 2005) (right of access to the courts encompasses the right

27  to pursue grievances against the government without inappropriate governmental

28  interference during the course of that litigation).

1    In the instant action, Defendants have attempted to take action which

2    frustrates Valley's access to the courts and attempts to moot the relief which

3    Valley seeks. Plaintiff intends to demonstrate that the Report is retaliatory;

4    internally inconsistent; "an extreme departure from the standard of practice."  (Dr.

5    Michael Sedrak Dec., 4-3-13, Doc. 23, p. 5, lines 22-24); and should be

6    disqualified from constituting an official report.  Defendants' contention that

7    Plaintiff is attempting to interfere with the Coroner's mandated duties has the

8    matter backwards. It is the Coroner who has abused and failed to properly carry out

9    his mandated duties; indeed Valley contends that the Coroner affirmatively

10   violated many of those duties as well as his constitutional obligations.

11   The gravamen of Defendants' claim is essentially that, by virtue of their

12   rushed release of the Coroner's Report regarding Ms. Rojeski's death, any form of

13   injunctive relief is moot. However, that is not so because this Court may, upon a

14   proper showing, enter an injunction invalidating the Coroner's Report and

15   enjoining it from having any legal effect. *See, e.g., Colorado Envtl. Coal. v. Office*

16   *of Legacy Mgmt.*, 819 F. Supp. 2d 1193 (D. Colo. 2011) *amended on*

17   *reconsideration,* 08-CV-01624-WJM-MJW, 2012 WL 628547 (D. Colo. Feb. 27,

18   2012) (invalidating leases issued by DOE, which were issued arbitrarily and

19   capriciously, and ordering that they have "no further legal or practical effect");

20   *Conner v. Burford,* 848 F.2d 1441, 1460–61, 1462 (9th Cir.1988) (staying issued

21   leases until agencies on remand complied with NEPA and ESA); *Sanjour v. United*

22   *States EPA,* 7 F.Supp.2d 14, 17 (D.D.C.1998) ("courts frequently enjoin

23   enforcement of regulations ultimately held to be invalid"); *Dimension Fin. Corp. v.*

24   *Board of Governors of the Fed. Reserve Sys.,* 744 F.2d 1402 (10th Cir.1984)

25   (enjoining Board from enforcing or implementing invalid regulations) *aff'd,* 474

26   U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986); *Kessler v. City of Providence*, 167

27   F. Supp. 2d 482, 490 (D.R.I. 2001) (declaring regulations void and enjoining their

28   enforcement). Thus, an injunction voiding and invalidating the Coroner's Report

1    and ordering that it have "no further legal or practical effect" (*Colorado Envtl.*

2    *Coal, supra,* is not moot.

3         The Autopsy Report constitutes a continuing statement every day of the

4    Coroner's findings and is admissible as evidence in almost all circumstances. *See,*

5    *e.g., United States v. James*, 2013 WL 1235642 (2d Cir. Mar. 28, 2013) ("autopsy

6    reports could be admitted as business records without violating the Confrontation

7    Clause" even in criminal cases unless the report was prepared primarily for use at a

8    criminal trial). Federal courts routinely view autopsy reports from coroner's offices

9    as highly credible and reliable, possessing particularized guarantees of

10   trustworthiness. *See, e.g., Foster v. General Motors Corporation,* 20 F.3d 838 (8th

11   Cir.1994); *Manochhio v. Moran,* 919 F.2d 770, 776-778 (1st Cir. 1990); *Gaddy v.*

12   *Hartford Life Ins. Co.,* 218 F.Supp.2d 1123, 1127 (E.D. Missouri 2002).

13        The Rojeski Autopsy Report released by the Defendants on April 1, 2013

14   with its fabricated findings **is not a document of mere opinion**, as suggested at the

15   April 4, 2013 hearing. Coroner's Reports are viewed as fully admissible documents

16   as under the business records exception to the hearsay rule (Fed. R. Evid, 803(6)),

17   as well as the public records exception to the hearsay rule (Fed. R. Evid., 803(8)).

18   The very fact that Defendants and others can cite the Report as admissible

19   evidence demonstrates the continuing and irreparable harm which that Report daily

20   inflicts on Valley so long as it maintains its status as an official document. It is

21   incumbent on Valley to take all appropriate measures to prevent the harm inflicted

22   by this Report.

23        "Voluntary cessation of allegedly illegal conduct does not render a case

24   moot unless the defendant can demonstrate that 'there is no reasonable expectation

25   that the wrong will be repeated.' " *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742,

26   747 (7th Cir.1999) (quoted cites omitted); *Jones 'El v. Berge,* 164 F.Supp.2d 1096

27   (W.D.Wis.,2001)(granting preliminary injunction barring housing of certain

28   mentally ill patients at Supermax and prohibiting transfer of two mentally-ill

1   patients *back to* Supermax). The Defendants have not demonstrated that their

2   repeated violations of Valley's constitutional rights have ceased with the release of

3   Rojeski Autopsy Report. *See Farnam v. Walker*, 593 F. Supp. 2d 1000, 1010-11

4   (C.D. Ill. 2009) ("defendants have not demonstrated that the deliberate indifference

5   to the plaintiff's serious medical needs cannot reasonably be expected to reoccur").

6         The Coroner's Autopsy Report is an ongoing government statement as to the

7   cause of Paula Rojeski's death. The unique circumstances of the Report, the related

8   investigation, the documented false statements in it, along with its call for further

9   prosecutorial action, is an ongoing violation of Valley's rights to due process under

10   the 14th amendment as set forth in *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th

11   Cir.2001) (en banc) and *Costanich v. Dep't of Soc. & Health Services*, 627 F.3d

12   1101, 1111 (9th Cir. 2010). This Report's existence with the official weight and

13   authority of the Coroner's Office has a continuing impact on Valley. The Report

14   calls for prosecutorial action by the California Medical Board which will certainly

15   involve a referral from the California Medical Board to the Joint Commission for

16   review and likely revocation of Valley's accreditation. This matter is by no means

17   moot, and the Court has continuing jurisdiction to enjoin this document as an

18   official report of the cause of Paula Rojeski's death.

19         The way in which the entire investigation has been conducted with a

20   repetitive series of constitutional violations demonstrates that Defendants cannot

21   demonstrate that "there is no reasonable expectation that the wrong[s] will not be

22   repeated", especially since the Coroner's Report left open the possibility of further

23   Coroner action. See 4/1/13 Coroner's Report, pgs. 17 (""If any future

24   investigations clarify that there definitely was or was not a conscious disregard for

25   patient safety, the manner of death can be revised to homicide or accident,

26   respectively. As of now, the manner of death is undetermined").

27         The report, premised on false information, with a recommendation for

28   further prosecutorial action, is an ongoing violation of due process under the 14th

1  Amendment as initially articulated in *Devereaux,* 263 F.3d at 1074-1075 (9th Cir.

2  2001) (there exists a "clearly established constitutional right not to be subjected to

3  criminal charges on the basis of false evidence that was deliberately fabricated").

4       It is well established that a basis for § 1983 liability is created when a

5  coroner falsifies evidence. *See, e.g., Galbraith v. County of Santa Clara,* 307 F.3d

6  1119, 1126 (9th Cir.2002) (presumption of prosecutorial independence in filing

7  charges can be rebutted by "a coroner's reckless or intentional falsification of an

8  autopsy report that plays a material role in the false arrest and prosecution of an

9  individual...."); *Finnegan v. Myers*, 2013 WL 359696 at 5, 6 (N.D. Ind. Jan 30,

10 2013) (deputy coroner not immune from liability under § 1983 for bad faith failure

11 to include material exculpatory evidence in report to coroner); *Storey v. Chelan*

12 *County*, 2011 WL 1575506 (E.D. Wash. Apr. 26, 2011) (rejecting § 1983 claim

13 against coroner but noting in doing so that the Plaintiff "has not alleged that Dr.

14 Fino intentionally falsified any portion of the autopsy report").

15      Finally, the right to be free from the use of fabricated evidence applies even

16 where the evidence would be used in purely civil, as opposed to criminal,

17 proceedings, including specifically in civil licensure proceedings. *Costanich v.*

18 *Department of Social and Health Services*, 627 F.3d 1101, 1111 (9th Cir. 2010)

19 (deliberate falsification of evidence in connection with a civil investigation – there

20 of a foster care licensee – violates due process); *see also, e.g., Zahrey v. Coffey*,

21 221 F.3d 342, 348 (2nd Cir. 2000) (false evidence used in both criminal

22 proceedings and police disciplinary proceedings); *Snell v. Tunnell*, 920 F.2d 673,

23 691-92 (10th Cir. 1990) (false evidence used by DHS investigators to have

24 children removed from Plaintiffs' custody).

25      The Ninth Circuit has repeatedly held that "[p]recedent directly on point is

26 not necessary to demonstrate that a right is clearly established. Rather, if the

27 unlawfulness is apparent in light of preexisting law, then the standard is met. In

28 addition, even if there is no closely analogous case law, a right can be clearly

1    established on the basis of common sense." *Giebel v. Sylvester,* 244 F.3d 1182,

2    1189 (9th Cir. 2001) *quoted with approval in Devereaux v. Abby,* 263 F.3d 1070,

3    1075 (9th Cir. 2001).

4          This is not a situation of claiming that Defendants conducted a corrupt

5    investigation, and drafted a fabricated report that was ***placed in a drawer*** with no

6    further action taking place. *See Zahrey v.* Coffey, 221 F3d 342, 348 (2nd Cir. 2000)

7    *quoting with approval Buckley v. Fitzsimmons,* 20 F.3d 789, 795 (7th Cir.1994);

8    and *Landrigan v. City of Warwick,* 628 F.2d 736, 744 (1st Cir.1980). Rather the

9    conducting of a wrongful investigation, and then publishing a false report with

10   fabricated conclusions and findings and then recommending further prosecutorial

11   action based on the wrongful investigation is what constitutes a violation of

12   Plaintiff's rights to due process under 14th Amendment.

13         Courts across the country, as well as within the Ninth Circuit, recognize this

14   due process violation. In *Long v. Kroger*, 2013 WL 424474 (D. Or. Feb. 1, 2013),

15   the District Court recognized that a due process constitutional claim for subjecting

16   Plaintiff "to an ongoing criminal investigation without any legitimate basis" and

17   "recommend[ing] that he be terminated on the basis of deliberately fabricated false

18   evidence". As the Ninth Circuit recognized in *Costanich, supra,* when extending

19   *Devereaux* to the civil context:

20         [T]he right not to be accused based upon deliberately fabricated evidence is

21         sufficiently obvious, and *Devereaux* is sufficiently analogous to the facts

22         here, that government officials are on notice that deliberately falsifying

23         information during *civil investigations which result in the deprivation of*

24         *protected liberty or property interests* may subject them to § 1983 liability.

25         (*Costanich*, 627 F.3d at 1115.) (emphasis supplied).

26         In the instant case, Defendants conducted a corrupt investigation and

27   published an autopsy report replete with fabricated or omitted exculpatory

28   evidence. They  recommended that Valley and its doctors be referred to the

1    California Medical Board for further prosecutorial/disciplinary proceedings,

2    knowing or recklessly ignoring that such a referral and falsified report would then

3    result in further adverse proceedings by the Joint Commission to revoke Valley's

4    accreditation.

5         The Rojeski Autopsy Report is now on its way to the California Medical

6    Board and to the Joint Commission, and will also be presented in the Rojeski

7    wrongful death action pending in the California Superior Court. It will be received

8    by the California Medical Board, by the Joint Commission, by the Superior Court

9    for the State of California and by the public at large, thanks to the Internet, as

10   highly credible and reliable, possessing particularized guarantees of

11   trustworthiness. In short, ***it will be received and viewed as unimpeachable fact,***

12   ***when such is not the case.***

13        Valley will have to fight battle to demonstrate the invalidity of the Report.

14   Defendants' actions continue to cause irreparable and immediate damage to Valley

15   and its medical staff. Injunctive relief is required. Injunctive relief can be best

16   supported if limited and focused expedited relief is granted.

17        **B.    DEFENDANTS' CLAIMS OF IMMUNITY ARE WITHOUT MERIT**

18        Defendants claim that Plaintiffs cannot establish a likelihood of success on

19   the merits because "public officials, including coroners and their consultants, are

20   generally immune from complaints which arise out of discretionary activities,

21   reasonably performed within the scope of their official authority and capacity."

22   (Opp. at pg. 12.) Defendants also contend that they had "the statutory authority and

23   capacity to make findings and report opinions." (*Id.*) Leaving aside that the current

24   motion is for discovery, and not a motion for preliminary injunction, making these

25   contentions irrelevant at this stage, they are wrong on several counts.

26        First, immunity does not apply at all to claims for injunctive relief or money

27   claims against a government entity (as opposed to individuals). As the Ninth

28   Circuit explained in *Henry A. v. Willden*, 678 F.3d 991, 999 (9th Cir. 2012):

" 'Qualified immunity shields federal and state *officials* from *money damages* unless a Plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.' *Ashcroft v. al-Kidd,* ——— U.S. ———, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (emphasis added). Qualified immunity is not available as a defense in § 1983 cases 'against a municipality' or 'against individuals where injunctive relief is sought instead of or in addition to damages.' *Pearson v. Callahan,* 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)." (Original emphasis.)

Second, the standard for qualified immunity is not whether the defendant is abstractly engaged in a "discretionary function," but whether there is a violation of a clearly established constitutional right. *Ashcroft v. al-Kidd, supra.* Since 1982, it has been clear that the discretionary function language of earlier qualified immunity cases refers to violation of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

*Herbert v. Morley*, 273 F.Supp. 800, 802 (C.D. Cal. 1967), cited by Defendants, predates *Harlow*. *Lawyer v. Kernodle*, 721 F. 2d 632, 635-36 (8th Cir. 1983), also cited by Defendants, quotes the *Harlow* standard, and concludes that the claim addressed discretionary acts involving at most negligence; falsification or reckless disregard for the truth (or the other claims involved here) were not at issue. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002), also cited by Defendants, did not reach the immunity issue but did conclude, "without deciding any issue of immunity, that a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and

prosecution of an individual can support a claim under 42 U.S.C. § 1983." Thus, the *Herbert*, *Morley* and *Galbraith* cases cited by Defendants do not support the contention that discretionary functions in the abstract establish immunity.

Third, to the extent qualified immunity is relevant, the conduct here – presentation by forensic examiners of false information with a reckless disregard for the truth or the rights of the Defendant – violates clearly established law, whether the coroner's activity leads to criminal charges or creates civil harm. While the law has evolved over time, it was clear by no later than 2010 that such conduct, even in the civil context, violates clearly established law. *See Galbraith, supra*; *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government"); *Costanich v. Department of Social and Health Services*, 627 F.3d 1101, 1111 (9th Cir. 2010) (establishing that, going forward, deliberately mischaracterizing witness statements in investigative report constitutes fabrication of evidence in violation of due process in the context of civil as well as criminal consequences); *Pierce v. Gilchrist*, *supra*, 359 F.3d 1279, 1298099 (10th Cir. 2004) (no qualified immunity for forensic analyst's "contrived and erroneous statements… beyond the limits of forensic science" presented "with knowing and reckless disregard for the truth"; "[n]o one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986"); *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) (no qualified immunity for "misleading and materially inaccurate inculpatory serology report" lab report in 1984; "the right of criminal Defendants to be free from false or fabricated evidence was well settled by 1959 or earlier"); *Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6th Cir. 2006) (denying qualified immunity for forensic hair examiner's assertion, presented with "reckless disregard for the truth", that hairs matched Plaintiff's); *Keko v. Hingle,* 318 F.3d

639, 644 (5th Cir.2003) (declining to extend absolute immunity to a forensic examiner who allegedly falsified a forensic report); *Lacy v. County of Maricopa*, 631 F.Supp.2d 1197, 1208-09 (D.Ariz. 2008) (no immunity for due process claim against medical examiner for deliberate or reckless fabrication of autopsy report; qualified immunity not raised; absolute testimonial immunity "does not extend to the intentional or reckless pretrial fabrication of evidence").

Here, Plaintiff has established that 1) the original report was patently false and published to third parties, 2) the revised report not only repeated and republished the false statements from the original report, but contained numerous false, misleading and contradictory statements even if the supplemental report were considered alone, 3) made reckless recommendations for disciplinary or related action not reasonably justified by the Report, 4) continued to cite and rely on the completely unsubstantiated anonymous letter, 5) covered up the Coroner's destruction of exculpatory evidence during the harvesting process, and 6) omitted substantial relevant and exculpatory evidence regarding Ms. Rojeski's past medical history of which it was well aware.

The instant motion, of course, does not address Valley's entitlement to injunctive relief but only its request for expedited discovery. Thus, Valley need not establish its entitlement to an injunction at this stage – that is one of the purposes of the expedited discovery. But there can be no doubt that Valley has established a good faith basis for obtaining expedited discovery and proceeding to file a motion for a preliminary injunction.

## C. VALLEY HAS DEMONSTRATED GOOD CAUSE FOR EXPEDITED DISCOVERY.

Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f)." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo.2003) (footnote added); *In re Countrywide Fin.*

1    *Corp. Derivative Litig.,* 542 F.Supp.2d 1160, 1179 (C.D.Cal.2008); *Ayyash v. Bank*

2    *Al–Madina,* 233 F.R.D. 325, 326 (S.D.N.Y.2005).

3          "However, courts may permit expedited discovery before the Rule 26(f)

4    conference upon a showing of good cause." *In re Countrywide Fin. Corp.*

5    *Derivative Litig.,* 542 F.Supp.2d at 1179; *Semitool, Inc. v. Tokyo Electron Am.,*

6    *Inc.,* 208 F.R.D. 273, 276 (N.D.Cal.2002); *see also Qwest Commc'ns Int'l, Inc.,*

7    213 F.R.D. at 419 (The "party seeking expedited discovery in advance of [the]

8    Rule 26(f) conference has the burden of showing good cause for the requested

9    departure from usual discovery procedures."); *Merrill Lynch, Pierce, Fenner &*

10    *Smith v. O'Connor,* 194 F.R.D. 618, 623 (N.D.Ill.2000) ("Expedited discovery is

11    not the norm. Plaintiff must make some *prima facie* showing of the *need* for the

12    expedited discovery."). "Good cause exists 'where the need for expedited

13    discovery, in consideration of the administration of justice, outweighs the prejudice

14    to the responding party.' " *In re Countrywide Fin. Corp. Derivative Litig.,* 542

15    F.Supp.2d at 1179 (quoting *Semitool, Inc.,* 208 F.R.D. at 276). "The good cause

16    standard may be satisfied where a party seeks a preliminary injunction." *Qwest*

17    *Commc'ns Int'l, Inc.,* 213 F.R.D. at 419; *see also El Pollo Loco, S.A. de C.V. v. El*

18    *Pollo Loco, Inc.,* 344 F.Supp.2d 986, 991 (S.D.Tex.2004).

19          Expedited discovery is appropriate where narrowly tailored to obtain

20    information relevant to a preliminary injunction. "[W]here a Plaintiff seeks

21    expedited discovery to prepare for a preliminary injunction hearing, it makes sense

22    to examine the discovery request ... on the entirety of the record to date and the

23    reasonableness of the request in light of all the surrounding circumstances...."

24    *Merrill Lynch, Pierce, Fenner & Smith,* 194 F.R.D. at 624 (footnote added).

25    "Factors commonly considered in determining the reasonableness of expedited

26    discovery include, but are not limited to: '(1) whether a preliminary injunction is

27    pending; (2) the breadth of the discovery requests; (3) the purpose for requesting

28    the expedited discovery; (4) the burden on the Defendants to comply with the

1   requests; and (5) how far in advance of the typical discovery process the request

2   was made.' " *Disability Rights Council of Greater Wash.,* 234 F.R.D. at 6

3   (citations omitted); *Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419. *Am. LegalNet,*

4   *Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066-69 (C.D. Cal. 2009).

5        Courts within the Ninth Circuit generally use the "good cause" standard to

6   determine whether to permit discovery prior to a Rule 26(f) conference.

7   *Millennium TGA, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 38636 (E.D. Cal. 2012).

8   "Good cause may be found where the need for expedited discovery, in

9   consideration of the administration of justice, outweighs the prejudice to the

10  responding party." *Semitool, Inc. v. Tokyo Electron America, Inc*., 208 F.R.D. 273,

11  276 (N.D. Cal. 2002).

12       Legions of federal courts in California employ a good cause standard which

13  looks to whether the "need for expedited discovery, in consideration of the

14  administration of justice, outweighs the prejudice to the responding party." *Am.*

15  *LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1066 (C.D. Cal. 2009); *Matson &*

16  *Isom Technology Consulting v. Dell Inc*., 2008 U.S. Dist. LEXIS 75753 (E.D. Cal.

17  2008); *Qwest Commc'ns Int'l, Inc*., 213 F.R.D. 418, 419 (D. Colo. 2003) (The

18  "party seeking expedited discovery in advance of [the] Rule 26(f) conference has

19  the burden of showing good cause for the requested departure from usual discovery

20  procedures.").

21       Valley has demonstrated good cause to expedite discovery because it will be

22  presenting a request for a preliminary injunction against Defendants' repeated

23  pattern and practice of violating its constitutional rights, and, in order to fully

24  present that motion, it must conduct discovery. The Coroner's conduct of a corrupt

25  investigation and publishing a report with fabricated findings and clearly erroneous

26  conclusions along with calling for further prosecutorial action to the California

27  Medical board is a irreparable injury designed to chill Valley's constitutional

28  rights.

1    Valley was questioned by the court on April 4, 2013 as to the scope and

2   breath of the alleged conspiracy to violate Valley's constitutional rights and the

3   motive for Defendants or any of them for doing so. Valley contends that expediting

4   the depositions of four of the Defendants and expediting the production of five

5   document requests will reveal evidence 1) that supports its claim that the original

6   reports or its contents was improperly released to various parties and influenced

7   their actions; 2) that members of the Coroner's Office were biased against Valley,

8   those associated with it, and the out-patient procedure in which it engages; 3) that

9   members of the Coroner's Office consciously and deliberately included

10   unsubstantiated allegations against Valley and omitted evidence favorable to

11   Valley; 4) that members of the Coroner's Office collaborated on an ongoing basis

12   in conduct that violated Valley's constitutional rights; and 5) regarding the motive

13   behind Defendants' repeated actions over the past 20 months.

14    Defendants cannot demonstrate and have failed to demonstrate any prejudice

15   to expedited discovery. The four Defendants sought for expedited depositions all

16   work for the Coroner's Office of Defendant County of Los Angeles. Thus there is

17   no undue burden so far as logistics are concerned and the roles played these four

18   defendants are vital to proving Valley's claims:

19    a.    Defendant Lakshmanan Sathyavagiswaran, M.D. heads the Coroner's

20   Office and Valley's representatives were informed by various individual

21   Defendants that Dr. Sathyavagiswaran personally oversaw this investigation and

22   the drafting of the Rojeski Autopsy Report;

23    b.    Defendant Selma Calmes, M.D., was the lead anesthesiologist from

24   the Coroner's Office who has been involved in every phase of the investigation and

25   drafting of the autopsy report. Every other contributing author to the autopsy report

26   has relied entirely or in part on her fabricated findings and conclusions. Moreover,

27   she has mysteriously without explanation changed some of her findings so that her

28

part of the Autopsy Report is internally inconsistent, as both her previous findings and subsequent findings are contained in the published version;

c.    Defendant Ed Winter is the Assistant Chief Investigator of the Operations Bureau of the Coroner's Office. He was the lead civilian investigator for the Coroner's Office in the Rojeski investigation and made statements regarding how the Coroner's Office would react to actions bringing its illegal conduct to light;

d.    Defendant Raffi Djabourian, M.D is the Senior Deputy Medical Examiner assigned to the Rojeski case for the Coroner's Office. Moreover, he has mysteriously without explanation changed some of his findings so that his part of the Autopsy Report is internally inconsistent, as both his previous findings and subsequent findings are contained in the published version.

These four defendants are more likely to have better recollection of the events of the past 20 months if they are deposed forthwith, as opposed to taking their testimony months from now.

Defendants allege that they should not be compelled to appear for depositions because they cannot ascertain the scope of the depositions until the pleadings are confirmed. This argument lacks for several reasons, including 1) Defendants were served with a 42 page complaint accompanied by approximately 300 pages of exhibits, and an Application for a TRO, which contained over 100 pages of briefing and exhibits; 2) Defendants have been aware for months of the concerns Valley had regarding their handling of the autopsy, as Valley provided detailed explanations of those concerns; and 3) Defendants were served with Valley's instant motion for expedited discovery in which Valley set forth in detail the scope and focus of the proposed four depositions and five document production requests.

Under Defendants'' logic, no application for a TRO or motion for a preliminary injunction would be appropriate because, until the pleadings are

1   settled, they do not know the scope of the claim. For Defendants to state that they

2   cannot decipher the scope and focus of Valley's discovery request is just patently

3   illogical. This court is empowered to reject such incredible explanations. *See*

4   *United States v. Stanley,* 24 F.3d 1314, 1321 (11th Cir. 1994).

5       In addition, Defendants repeatedly complain about Valley's "one sided

6   request" for expedited discovery. It is not Valley's obligation in a motion for

7   expedited discovery to forecast or conjecture what expedited discovery the non-

8   moving parties might desire. Defendants have not in any manner whatsoever

9   advised the court in their opposition brief as to what expedited discovery they

10  might want in order to redress their complaint that Valley's motion is one sided.

11  They are free to seek such relief, but it has no bearing on Plaintiff's request.

12      **D.   VALLEY'S EXPEDITED DOCUMENT REQUESTS CAUSE NO PREJUDICE**
13          **TO DEFENDANTS.**

14      Defendants complain that they will have to review and redact thousands of

15  pages of documents and cannot do so on short notice. This argument is speciou.

16  Plaintiff Valley provided thousands of pages of relevant documents including Ms.

17  Rojeski's previously unknown medical and legal records confirming her repeated

18  use and abuse of Fen-Phen and other prescription weight loss medications along

19  with the resulting but hidden severe cardiac damage, which pages do not require

20  release back to Valley.Defendants have unequivocally stated in writing and in

21  court that the investigation was completed and that the underlying documents and

22  materials for the Rojeski Autopsy Report were publicly available, thereby

23  rendering specious any claim of a need to redact documents before releasing them.

24      Even if redaction were permissible, Defendant have not justified it. Any

25  legitimate concerns can be addressed by an appropriate protective order concerning

26  the documents. Defendants did not identify with any specificity what would have

27  to be redacted or why. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172,

28  1183-84 (9th Cir. 2006) (even where specific redactions were proposed, it was

insufficient to justify them absent "specific compelling reasons to justify these redactions"; listing. "general categories of privilege (privacy, law enforcement, confidential source, and ongoing investigation)… without any further elaboration or any specific linkage with the documents, does not satisfy the burden"). Here, Defendants have simply asserted a generalized need for redaction, far less than what was  rejected in *Kamakana*. Redaction poses the substantial risk that it will be utilized to hide evidence critical to showing the motives, scope and breadth of the concerted effort to violate Valley's constitutional rights.

### E.   VALLEY HAS ALSO DEMONSTRATED GOOD CAUSE BECAUSE THE REQUESTED DISCOVERY WILL LIKELY DEMONSTRATE DEFENDANTS' MOTIVES.

This court questioned Valley's counsel on April 4, 2013 as to Defendants' motives for engaging in this conspiracy. We initially note that Ms. Rojeski's death has been the subject of extreme media attention with scores of unflattering articles directed at Valley and its medical staff during the past 20 months. The Coroner's Office insisted (over repeated objections) that the heavily biased Dr. Selma Calmes act as its anesthesia expert – an expert who has had to admit egregious errors in her original report and whose conclusions were roundly criticized by a host of experts, including one hired by the Coroner.

Further, Defendants have admitted in their pleadings filed on April 4, that the Coroner's office had meetings with members of the FBI, FDA (neither of which have any jurisdiction whatsoever with respect to the Coroner's investigation), California DOJ, and the LAPD during the time that they were investigating Ms. Rojeski's death. Simply stated, the Coroner's office appears to have been under intense pressure and scrutiny not only to make a determination of death, but to assign fault. Plaintiff is entitled to discovery to demonstrate that fact.

While motive is not an element of Plaintiff's claims, the practical reality is that it is a question that arises.One purpose of the discovery is to obtain such evidence to the extent that Valley is able in order to answer the question posed by

the Court. Possible motives that Plaintiff intends to explore, but needs discovery to do so, include 1) defense of Selma Calmes in light of Plaintiff's vigorous critique of her bias and conduct by intensifying the Coroner's Office attack on Valley, 2) pre-existing bias by other participants in the Coroner's investigation, 3) pressure or encouragement by other government agencies, with which the Coroner's Office has admitted it met , investigating Valley or those associated with it, and 4) false information (such as the anonymous letter) provided the Coroner's Office that led to hostility toward Valley.

The Coroner's Office claimed that it issued its report in the ordinary course of business – an extraordinary claim given that two expert statements contained admittedly false information. Plaintiff believes that discovey may reveal the the pressure or encouragement from other agencies to act substantially influenced the timing of the Report. There was clearly nothing "ordinary" about the way this report was created and released because two (2) of the original signatories of the Report, Dr. Astarita and Dr. Marinovich, have refused to sign the amended report resulting in a report that is unintelligible.

There was clearly nothing "ordinary" about the way this report was created and released. Plaintiff believes that discovery will allow it to establish that this assertion was pretextual. See, e.g., *Miller v. Fairchild Indus., Inc.* 797 F.2d 727, 731 (9th Cir.1986), *aff'd in part, rev'd in part on other grounds,* 885 F.2d 498 (1989) (*en banc* ) (citations omitted) ("[c]ausation sufficient to establish a *prima facie* case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge"); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) ("plaintiff may prove pre-text by demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact-finder could infer that the employer did not act for the asserted non-discriminatory reasons") (internal quotations and citations

omitted). The pretext gives rise to the inference that Defendants' conduct was biased and intended to prevent Valley's ability to continue to operate.

**IV.   CONCLUSION.**

For the reasons stated above, the Court should allow expedited discovery. Plaintiff has demonstrated good cause, and Defendants have not shown that they will suffer any meaningful prejudice. Plaintiff has demonstrated that there is effective and meaningful injunctive relief this Court can grant if it concludes that it is appropriate to do so, and thus is entitled to discovery to allow it to bring a proper motion for a preliminary injunction.

DATE: April 15, 2013                   Respectfully Submitted,

KAYE, MCLANE, BEDNARSKI & LITT, LLP


By:__/s/ Barrett S. Litt_____
       Barrett S. Litt
       Attorneys for Plaintiff

VALLEY SURGICAL CENTER, LLC
CENTURION LAW GROUP, P.C.


By:__/s/ Konrad L.Trope _____
    Konrad L.Trope
    Attorneys for Plaintiff
    VALLEY SURGICAL CENTER, LLC

25