O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY SURGICAL CENTER LLC., a California Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF LOS ANGELES, a government entity, et al.,<br><br>　　　　Defendants. | Case No. CV 13-02265 DDP (AGRx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Dkt. No. 44] |

Presently before the Court is Defendants County of Los Angeles (the "County"), Lakshmanan Sathyavagiswaran, Adrian Marinovich, Raffi Djabourian, Denis C. Astarita, Selma Clames, John Kades, and Ed Winter (collectively, "Defendants")'s Motion to Dismiss Valley Surgical Center, LLC ("Valley")'s First Amended Complaint ("FAC"). Having considered the parties' submissions, the Court GRANTS the Motion and adopts the following order.

**I.　BACKGROUND**

This case arises out of an investigation conducted by the Los Angeles County Coroner's Office (the "Coroner's Office") into the

death of Paula Rojeski ("Rojeski"). On September 8, 2011, Rojeski, a 55 year old woman, underwent laparoscopic surgery at Valley for the placement of an adjustable gastric band to treat her obesity. (SAC ¶ 36.) The surgery lasted approximately 30 minutes, with records showing it began at 9:15 AM and ended at 9:45 AM that morning. (Id.) From 9:45 AM until approximately 10:55 AM, Rojeski recovered from anesthesia, and the anesthesiologist remained by Rojeski's side until 11:15 AM. (Id. ¶ 37.) At approximately 10:55 AM, Rojeski suffered pulseless electrical activity and cardiac arrest, after which the surgeon at Valley initiated CPR and called 911. (Id.) Valley alleges that LA city firemen responded and also initiated their own CPR at the scene, which cause fractures to Rojeski's ribs, hemmorhaging, and abrasions of the midline anterior chest. (Id. ¶ 38, 39.) Valley alleges that prior to the initiation of CPR, there was no blood coming from the laparoscopic incisions, but afterwards, that the firemen observed blood coming from the incisions. (Id. ¶ 39.) The firemen transported Rojeski to West Hills Medical Center at 11:15 AM, where Rojeski was pronounced dead at 11:41 AM. (Id.)

    At 12:17 PM that same day, the Coroner's Office was informed of Rojeski's death, and the Coroner opened a case. (Id. ¶ 40.) Valley alleges that, prior to the autopsy, the Coroner allowed a tissue procurement company to harvest Rojeski's heart, skin, and bones. (Id. ¶ 41.) On September 12, 2011, the Coroner's Office conducted an autopsy of Rojeski's body. (Id. ¶ 42.) Valley alleges that the Coroner's Report states that Rojeski's "skin and bones, legs, arms, and back" were harvested before the autopsy. (Id.) Valley further alleges that the Coroner's Office knew that

Rojeski had suffered from pulseless electrical activity, which Valley alleges is frequently caused from a pulmonary embolism resulting from dislodging of blood clots from the lower extremities. (Id. ¶ 43.) Valley alleges that, despite this knowledge, the Coroner's Office allowed the organ procurement service to harvest bones from Rojeski's lower extremities as well as Rojeski's heart and lungs. (Id. ¶ 44.) Valley alleges that the Coroner's Office did not observe the harvesting of the tissue and bone, did not limit the harvesting procedure, and merely requested that the "recovery avoids operations site," in violation of the California Health and Safety Code § 7151.2 and the Cal. Gov't Code § 27491.45. (Id. ¶ 45.) Valley also alleges that the Coroner's Office failed to embalm Rojeski's body, despite having the statutory authority to do so, which as a consequence allowed the destruction of the heart valves which Valley alleges were incorrectly interpreted as normal in the autopsy. (Id. ¶ 46.) Valley alleges that Rojeski had calcification of the heart valves and moderate aortic regurgitation as evidenced by radiographic imaging. (Id.)

Valley alleges that on October 17, 2011, the Coroner's Office received an anonymous letter claiming that, during Rojeski's surgery: (1) oxygen tanks were empty, (2) fluids leaked on the floor, (3) the anesthesiologist recorded false information, (4) the monitoring equipment was broken, and (5) the times of the cardiac arrest were falsified. (Id. ¶ 52.) Valley alleges that in late November, the Coroner's Office announced that it wished to inspect Valley's anesthesia equipment and other equipment on site. (Id. ¶ 53.) Valley alleges that it learned at this time that the

1  Coroner's Office had retained Defendant Selma Calmes, M.D.
2  ("Calmes") as its Anesthesia Consultant for the Rojeski case, and
3  that she would be assisting in the on-site inspection. (Id.)
4  Valley alleges that, on or about December 1, 2011, its counsel sent
5  the Coroner's Office a letter asking that the Coroner's Office use
6  a different Anesthesia Consultant. (Id. ¶ 54.) The letter
7  informed the Coroner's Office that Calmes had a professional bias
8  against ambulatory surgery centers, and that Calmes had publicly
9  stated in a previous autopsy report that she considered such
10 centers to be an inappropriate platform for gastric banding
11 procedures for patients with sleep apnea. (Id.) The Coroner's
12 Office informed Valley that they would not use a different
13 Anesthesiology Consultant. (Id.) Valley alleges that, in response
14 to its protest regarding Calmes, the Coroner's Office issued an
15 administrative subpoena on December 5, 2011, that improperly
16 demanded that Valley consent to a search of its premises and
17 equipment. (Id. ¶ 55.) Valley alleges that the issuance of the
18 administrative subpoena was a retaliation for Valley's letter
19 regarding Calmes. (Id. ¶ 58.) At the inspection, Valley alleges
20 that it showed the representatives from the Coroner's office that
21 the accusations in the anonymous letter were false. (Id. ¶ 59.)
22      During the four months after the inspection, Valley alleges
23 that it heard nothing from the Coroner's Office about the
24 investigation into Rojeski's death because there was a "Security
25 Hold" on the investigation that prevented discussing the case until
26 the investigation had been completed. (Id. ¶ 60.) Valley alleges
27 that despite the "Security Hold," it discovered in April 2012 that
28 the Coroner's Office had referred the Rojeski case to the Los

4

Angeles Police Department Robbery-Homicide Division. (Id. ¶ 62.) Valley further alleges that the Coroner's Office leaked the referral to news outlets. (Id.) Valley alleges that Defendant Calmes further breached the "Security Hold" on September 21, 2012, when Calmes gave a presentation titled "Ambulatory Surgery Disasters" in San Francisco. (Id. ¶ 63.) Valley alleges that during the presentation, Calmes violated the "Security Hold" by openly criticizing surgery centers including Valley and by discussing two lap band-related deaths, one of which Valley alleges was clearly Rojeski's. (Id. ¶¶ 63, 64.) Valley alleges that this presentation was retaliatory because it occurred approximately two weeks after Valley submitted a letter to the Coroner's Office that called into question the methodology used during the autopsy and pointed out allegedly significant cardiac damages Rojeski had from prescription weight loss medication use prior to Valley's surgery. (Id. ¶ 65.) Valley further alleges that it had sent a series of letters from September 2012 through December 2012 that attached Rojeski's medical records and stated that Rojeski's death was likely caused by her severe heart injury from taking weight loss medications, which Rojeski had not disclosed to Valley prior to surgery. (Id. ¶¶ 67-71.)

Valley alleges that, in January 2013, it discovered that the Coroner's Office had shared the findings of its autopsy report with representatives of Rojeski's estate. (Id. ¶ 73.) Armed with this new information, Valley met with the Coroner's Office on January 15, 2013. (Id. ¶ 74.) At the meeting, Valley alleges that the Coroner's Assistant Chief Investigator, Ed Winter, agreed to release a copy of the "Rojeski Final Report" to Valley's legal

1  counsel, and that the Coroner's Office gave Valley one week to
2  review the report. (Id. ¶¶ 74, 75.) Valley alleges that Winter
3  stated that if Valley released or disclosed the Rojeski Final
4  Report to any third party, then the Coroner's Office would
5  immediately release and distribute the Rojeski Final Report to the
6  public. (Id. ¶ 76.) Valley alleges that the Rojeski Final Report
7  found that the attending anesthesiologist and the attending surgeon
8  were grossly negligent and that they should both be referred to the
9  California Medical Board. (Id. ¶ 77.) Valley alleges that the
10 Rojeski Final Report also contained a separate opinion by Calmes
11 that erroneously stated the length of surgery and also erroneously
12 stated that anesthesia was not given for the last 1.5 hours of
13 surgery. (Id.)

14      Valley alleges that the Calmes opinion was clearly
15 contradicted by the operating records, which showed that the
16 surgery ended much earlier and that anesthesia had been
17 administered for the entire length of the surgery. (Id. ¶¶ 80-86.)
18 Valley alleges that the pathologists performing the autopsy relied
19 on the inaccurate information contained in the Calmes findings to
20 make their own findings. (Id. ¶¶ 87-89.) Furthermore, Valley
21 alleges that the autopsy findings also relied on the erroneous
22 information contained in the anonymous letter that had been sent to
23 the Coroner's Office. (Id. ¶ 92.)

24       Valley alleges that it responded to the flaws it found in the
25 Rojeski Original Report and provided the Coroner's Office with
26 independent reviews from seven medical experts that contradicted
27 the findings in the Rojeski Original Report. (Id. ¶¶ 98-105.)
28 After several months with no update from the Coroner's Office,

Valley alleges that it notified the Coroner's Office that it would seek a temporary restraining order in federal court on April 1, 2013. (Id. ¶ 112.) Valley alleges, that on April 1, 2013, the Coroner's Office retaliated against Valley by issuing an amended autopsy report. (Id.) Valley alleges that the amended report only partially retracted the errors in its findings, and that the amended report was internally inconsistent and a deliberate misrepresentation of the facts surrounding Rojeski's death. (Id. ¶ 113.) Valley further alleges that the amended report failed to explain the errors made in the original report, and that, because the amended report included the full original report, it still publicized the findings from the original report. (Id. ¶ 114.)

Defendants now move to dismiss Valley's FAC for failure to state a claim.

**II. LEGAL STANDARD**

A 12(b)(6) motion to dismiss requires the court to determine the sufficiency of the plaintiff's complaint and whether or not it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." Id. at 679 (alterations and citation omitted).

**III. DISCUSSION**

Defendants argue that the claims in the FAC should be dismissed, first because claims as pled do not meat the

plausibility standard of Twombly and Iqbal, and second because the individual defendants are entitled to qualified immunity. Defendants also argue that the Court should not grant the injunctive relief that Valley seeks, as it would improperly interfere with ongoing criminal investigations. The Court will address each of Valley's claims in turn.

### A. Section 1983 Claims against Individual Defendants

Valley alleges that each of the Defendants individually violated 18 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts sufficient to show: 1) a person acting "under color of state law" committed the conduct at issue, and 2) the conduct deprived the plaintiff of some right protected by federal law or the federal Constitution. 42 U.S.C. § 1983; see also Shah v. Cnty. of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986). Valley alleges claims for multiple violations of its constitutional rights, citing the First, Fourth, Fifth and Fourteenth Amendments. Some of Valley's Section 1983 claims against the individual Defendants appear to be duplicative, but as far as the Court can discern from the FAC, Valley's claims can be consolidated into the following: (1) violation of due process right to an unbiased governmental investigation because of Defendants' actions in using false evidence and destroying exculpatory evidence; (2) violation of First Amendment and due process in preventing Valley from petitioning the government and having access to the courts; (3) violation of First Amendment by retaliating against Valley for speech; (4) violation of Fourth Amendment right not to be subject to an unlawful search or seizure; and (5) violation of equal protection and/or due process due to

9

discriminatory treatment.  See FAC ¶ 126.  The Court will address each of these claims in turn.

        1.   Violation of Due Process in Fabricating and Destroying Evidence

    Valley alleges that Defendants falsified evidence and destroyed exculpatory evidence, thereby violating Valley's due process rights to an unbiased governmental investigation and to not have exculpatory evidence destroyed in bad faith.  In support of this claim, the FAC details allegations relating to the inaccurate length of surgery and anesthesia recorded in the Coroner's Report as well as the harvesting of organs and bones prior to the autopsy.  Valley's Opposition only addresses the allegations regarding the destruction of evidence and not falsification of evidence.  Since it appears that the Coroner's Office subsequently corrected its report to account for the time Valley's records show surgery was in process and anesthesia was administered, the Court will assume this claim is premised solely on the allegations regarding the destruction of evidence.

    The Supreme Court has held that in order for destruction of evidence to rise to the level of a constitutional violation, "[the] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  California v. Trombetta, 467 U.S. 479, 489 (1984).  Furthermore, when the evidence destroyed was only potentially exculpatory, as opposed to clearly exculpatory at the time of destruction, that the party bringing the constitutional

claim must show bad faith on the part of the police. <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988).

As an initial matter, the Court notes that, as far as it can determine, there have been no criminal charges filed against Valley. <u>Trombetta</u> and <u>Youngblood</u> were cases where the party alleging the constitutional violation had not only been charged, but further tried and convicted, of crimes. Given that no criminal proceedings are pending in this case, it is unclear whether there would be any "exculpatory" evidence to begin with. However, the Court finds that the destruction of evidence claim should also be dismissed because the facts alleged fail to show evidence was destroyed in bad faith.

As to the alleged destruction of evidence due to bone and tissue harvesting, Defendants point out that the FAC is internally contradictory, on one hand stating that the Coroner's Office allowed Rojeski's heart and lungs to be harvested (<u>see</u> FAC ¶ 44), and on the other hand stating that Rojeski's heart was examined as part of the autopsy (<u>see</u> FAC ¶¶ 46-47). The Coroner's Report, attached as an exhibit to the FAC, indicates that skin and bone were removed from the lower extremities only.[1] Although the Court should take the facts as pled in the light most favorable to the plaintiff, it need not accept internally inconsistent facts as true. See <u>Riggs v. Clark County School Dist.</u>, 19 F. Supp. 2d 1177, 1179 (D. Nev. Sept. 22, 1998).

---

[1] The Court takes judicial notice of the Coroner's Report and its contents. See <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994) (stating that the Court may take judicial notice of exhibits submitted with the complaint as well as documents not physically attached to the complaint but whose contents are alleged in the complaint and whose authenticity no party questions).

11

     Furthermore, given that the evidence that might have resulted from examination of the removed tissue and bone was only potentially exculpatory, Valley is required to plead facts supporting bad faith.  None of Valley's allegations plausibly support a finding of bad faith, with the possible exception of Defendant Calmes.  Valley appears to allege that Defendant Calmes was acting in bad faith because she gave a presentation critical of ambulatory surgery centers, including Valley, who performed gastric banding procedures.  However, Calmes was the Anesthesia Consultant for the Coroner's investigation in this case, and it is unclear how Calmes would be involved in approving or allowing either the bone and tissue to be harvested or the body to be released without being embalmed.  Although the Section 1983 claims are alleged against all Defendants, only Calmes is mentioned specifically in allegations that might show bad faith with respect to destruction of evidence.

     Given the internal inconsistencies in the FAC and the lack of clarity with respect to the allegations against Defendants other than Calmes, it is difficult to determine whether Valley has pled facts supporting the claim that potential exculpatory evidence was removed, much less facts supporting bad faith destruction.

          2.   <u>Violation of First Amendment and Due Process in
               Preventing Access to the Courts</u>

     It is unclear to the Court how Defendants' actions prevented Valley from exercising its First Amendment rights in petitioning the government and gaining access to the Courts.  The Coroner's Report, as revised, has been issued, and Valley appears free to bring claims against the Coroner's Office, as it has done in the present case, if it believes its rights have been violated.

Furthermore, the fact that there was an alleged "Security Hold" on the release of the Coroner's Report does not support finding a constitutional violation.  Without clearer allegations from Valley indicating how its First Amendment and due process rights have been violated in this context, the Court finds that Valley has not pled a First Amendment claim for denial of access to the courts.

### 3. Violation of First Amendment and Retaliation

Valley's retaliation claim appears to be premised on a presentation made by Calmes two weeks after Valley submitted a letter to the Coroner's Office arguing that the autopsy and accompanying report had errors and had not considered Rojeski's medical history.  To state a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant[']s actions cause the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Forte v. Jones, 2014 WL 2465606, at *3 (E.D. Cal. 2014).  The defendant's desire to cause a chilling effect must be a but-for cause of the defendant's actions. Skoog v. Cnty. of Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006).

Although Valley has not pled any facts that directly show Calmes or the Coroner's office intended to chill Valley's speech, Valley argues that the fact that Calmes made her presentation two weeks after Valley submitted its letter is enough to infer retaliatory intent.  The timing of an allegedly retaliatory action

may be considered in determining retaliatory motive. See Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir.2003). But although the timing of an action can be circumstantial evidence of retaliation, here the presentation does not seem to be motivated to chill Valley's speech. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir.1995). Furthermore, although Calmes' presentation may have portrayed Valley's practices in a negative light, the Court cannot see how such a presentation would cause Valley to stop engaging in speech regarding Rojeski's autopsy.

### 4. Violation of Fourth Amendment

Valley alleges that its Fourth Amendment rights were violated when the Coroner's Office issued an administrative subpoena requesting Valley submit to an on-site inspection of its anesthesia equipment. Although administrative subpoenas to "search" a person's property are not per se unconstitutional, the Fourth Amendment does place "minimum requirements of definiteness and reasonable relevance" on their use. Hell's Angels Motorcycle Corp. v. Cnty. of Monterey, 89 F. Supp. 2d 1144, 1150 (N.D. Cal. 2000), aff'd sub nom. Hell's Angels Motorcycle Corp. v. McKinley, 354 F.3d 1000 (9th Cir. 2004). Under the Fourth Amendment, an administrative subpoena is constitutional if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." Reich v. Montana Sulphur & Chem. Co., 32 F.3d 440, 448 (9th Cir. 1994) (quoting United States v. Morton Salt Co., 388 U.S. 632, 652-53 (1950)). In essence, "the disclosure sought shall not be unreasonable." Id. (internal citations omitted). Here, a subpoena to inspect Valley's surgical and anesthesia equipment would be reasonable when the

Coroner's Office is investigating the death of a woman during a surgery that used that same equipment.  The Coroner's Office has the authority to investigate the cause of death of its subjects, and the subpoena asked to inspect relevant equipment.  Given the circumstances, the Court cannot find that Valley has pled facts supporting an improper or unconstitutional subpoena.

### 5. Violation of Equal Protection and/or Due Process

Valley alleges a violation of equal protection and/or due process premised on the position that Valley is a "class of one" for equal protection purposes.  A plaintiff can bring a "class of one" equal protection claim if the plaintiff alleges that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In support of its claim, Valley simply asserts that it was subjected to an ongoing investigation based on falsified evidence.  Although Valley may bring a "class of one" claim, it has not alleged facts that support it was treated differently from others who were similarly situated.

**B.  Section 1983 Claims for Monell and Supervisory Liability**

A plaintiff alleging civil rights violations under 42 U.S.C. § 1983 may not state a claim against a government entity for the actions of the entity's employees; only the actions of the entity itself give rise to liability.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).  A municipality is only liable for constitutional violations perpetrated by its employees if the government entity officially adopted and promulgated a "policy, custom, or practice that was the 'moving force' behind the

constitutional violation." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013) (internal quotation and citation omitted). Valley's FAC fails to allege a "policy, custom, or practice" that the government entities in this case implemented, and further fails to allege facts that support finding that such a policy was in place.

With respect to supervisory liability against Defendant Sathyavagiswaran, the FAC has not alleged facts sufficient to support an inference that Sathyavagiswaran was personally involved in the alleged constitutional violations or that Sathyavagiswaran was aware of constitutional violations and acquiesced to or ratified those actions.

### C. State Law Claims

Although the FAC includes a claim for violations of state law, citing to several state law statutes (see FAC ¶ 136), Valley stated in its Opposition that "[a]t this stage, there are not separate claims based on any particular one of these statutes." (Dkt. No. 51 at 19.) Given the lack of clarity with which Valley has pled its state law claims, and given that Valley has stated it intends to amend the complaint in this respect, the Court will dismiss the state law claims with leave to amend.

### D. Injunctive and Declaratory Relief

Although Valley includes a claim in its FAC for "injunctive and declaratory relief" as a separate cause of action, injunctive relief is a remedy, not a cause of action. See Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009) ("Injunctive relief is a remedy which must rely upon underlying claims."); Marlin v. AIMCO Venezia, 154 Cal. App. 4th 154, 162

16

(2007). The Court dismisses the claim for injunctive and declaratory relief.

### E. Leave to Amend

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons not to grant leave to amend include, but are not limited to, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court grants leave to amend the Section 1983 claim against individual defendants insofar as they relate to (1) the violation of due process by fabrication and destroying evidence, (2) the violation of the First Amendment and retaliation, and (3) the violation of the Fourth Amendment. Any amendment with respect to these claims should clarify the specific, non-contradictory, facts that support the claims, and further, should clarify the involvement of each individual defendant against whom the claims are brought. The Section 1983 claim against individual defendants is dismissed with prejudice with respect to the claims for (1) violation of the First Amendment and due process by preventing access to the Courts, and (2) violation of due process and equal protection for the "class of one." The facts do not support these claims, and the Court has determined that amendment would be futile.

As for the Section 1983 claims for <u>Monell</u> and supervisory liability, the Court dismisses these claims without prejudice. The facts, as pled, allege that Valley was targeted specifically, and do not support finding that there was an overall policy or practice in place that resulted in the alleged constitutional violations. However, the Court grants leave to amend in the case that Valley may allege facts go to show such an overall policy or practice existed. Similarly ,although the facts, as pled, do not support a claim for supervisory liability, Valley does allege that Sathyavagiswaran received a copy or copies of certain documents; thus, the Court cannot conclude at this point that amendment of this claim would be futile.

Finally, the state law claims are dismissed with leave to amend, as requested by Valley.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to dismiss. The FAC is dismissed with LEAVE TO AMEND as to the particular claims described in the above section. All other claims are dismissed WITH PREJUDICE. Any amended complaint should be filed within 10 days of the date of this order.

IT IS SO ORDERED.

Dated: June 18, 2015

DEAN D. PREGERSON
United States District Judge