1  Kenneth A. Maranga, SBN 94116
   Patricia E. Ellyatt, SBN 112552
2  Morgan A. Metzger, SBN 273330
   Patricia "Molly" Ford, SBN 285045
3  MARANGA • MORGENSTERN
   A Professional Law Corporation
4  5850 Canoga Avenue, Suite 600
   Woodland Hills, California 91367
   (818) 587-9146 / Fax (818) 587-9147
5  Emails:   ken.maranga@marmorlaw.com
             pellyatt@marmorlaw.com
6            mmetzger@marmorlaw.com
             pford@mmarmorlaw.com

7  **Attorneys for Defendant SELMA CALMES, M.D., a public employee**

8  [Additional Counsel Continued On Next Page]

9

10

11             UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  VALLEY SURGICAL CENTER, LLC,    )   Case No. CV 13-02265 DDP (AGRx)
    a California Limited Liability Company, )   Complaint Filed: March 29, 2013
15                                   )   Assigned to: Hon. Dean D. Pregerson - Courtroom 3
              Plaintiff,             )
16                                   )   **MEMORANDUM OF POINTS AND**
         v.                          )   **AUTHORITIES IN SUPPORT OF**
17                                   )   **MOTION TO DISMISS AND MOTION**
    COUNTY OF LOS ANGELES, a         )   **TO STRIKE**
    government entity, LAKSHMANAN     )
18  SATHYAVAGISWARAN, M.D., an       )   [Notice of Motion and Motion to Dismiss and
    individual, ADRIAN MARINOVICH,   )   to strike; [Proposed] Order; Request for
    M.D., an individual, RAFFI       )   Judicial Notice filed concurrently]
19  DJABOURIAN, M.D., an individual, )
    DENIS C. ASTARITA, M.D., an      )
20  individual, SELMA CALMES, M.D., an )
    individual, JOHN KADES, an individual, )   DATE:         August 8, 2016
21  ED WINTER, an individual, and    )   TIME:         10:00 a.m.
    DOES 1-10,                       )   LOCATION:     Courtroom 3
22                                   )   _____
              Defendants.            )
23  _____  )   Discovery Cut-Off:  None Set
                                         Motion Cut-Off:     None Set
                                         Trial Date:         None Set
24

25

26

27

28

Jon F. Monroy, SBN 51175
Jennifer E. Gysler, SBN 143449
MONROY, AVERBUCK & GYSLER
32123 Lindero Canyon Road, Suite 301
Westlake Village, California 91361
(818) 889-0661 / Fax (818) 889-0667
Emails:   mag@flash.net
          jennifergysler@gmail.com

**Attorneys for Defendants COUNTY OF LOS ANGELES,
a government entity; LAKSHMANAN SATHYAVAGISWARAN,
M.D., ADRIAN MARINOVICH, M.D., RAFFI DJABOURIAN, M.D.,
DENIS C. ASTARITA, M.D., JOHN KADES, ED WINTER, public employees**


Timothy T. Coates, SBN 110364
Marc J. Poster, SBN 48493
Alana H. Rotter, SBN 236666
GREINES, MARTIN, STEIN & RICHLAND LLP
5900 Wilshire Boulevard, 12th Floor
Los Angeles, California 90036
(310) 859-7811 / Fax (310) 276-5261
Emails:    tcoates@gmsr.com
           mposter@gmsr.com
           arotter@gmsr.com

**Attorneys for Defendants COUNTY OF LOS ANGELES,
a government entity; LAKSHMANAN SATHYAVAGISWARAN, M.D.,
ADRIAN MARINOVICH, M.D., RAFFI DJABOURIAN, M.D.,
DENIS C. ASTARITA, M.D., SELMA CALMES, M.D.,
JOHN KADES, ED WINTER, public employees**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................... 1

SUMMARY OF ALLEGATIONS ...................................................................... 2

    A.    A Valley Surgical Patient Dies Shortly After Surgery; The Coroner Investigates The Death. ........................................................ 2

    B.    In Response To Valley's Criticisms, The Coroner Reopens Its Investigation. ............................................................................................. 3

    C.    Valley Sues The Coroner's Office And, When The Revised Report Is Released, Amends Its Complaint To Attack The Revised Report As Well. ............................................................... 3

    D.    This Court Dismisses Several Of The Claims In Valley's First And Second Amended Complaints Without Leave To Amend. ............... 4

    E.    Overview Of Claims In Third Amended Complaint. ........................ 5

        1.    First Claim (§ 1983 against the individual defendants) ............ 5

        2.    Second Claim (*Monell*) ......................................................... 5

        3.    Third Claim (California Civil Code § 52.1) .............................. 6

        4.    Fourth Claim (defamation) ...................................................... 6

        5.    Fifth and Sixth Claims (intentional and negligent interference with prospective economic advantage ...................... 6

ARGUMENT ..................................................................................................... 6

I.    The Court Should Dismiss Valley's State Law Claims Because They Do Not State A Cause Of Action. ................................................. 6

    A.    Valley's State Law Claims Implicate State Law Privileges And Immunities. ..................................................................................... 7

        1.    California Government Code section 821.6 (prosecutorial immunity). ................................................... 7

            a.    Section 821.6 bars Valley's claims arising out of defendants' official investigations. ............................. 7

            b.    Valley's previous arguments are unavailing. ................ 9

        2.    California Civil Code section 47 (the litigation privilege). ............................................................................... 11

        3.    California Government Code section 815.2 (public entity immunity). ......................................................................... 12

1

**TABLE OF CONTENTS (Continued)**

2

Page

3    B.    The California Tort Claims Act Bars Claims Accruing Before
      November 2012.                                                     12

4

5    C.    The California Privileges, Immunities, And Tort Claim Filing
      Requirements, Together With Other Flaws, Dispose Of All Of
      Valley's State Law Claims.                                         15

6

7           1.    Valley's Third Claim (Civil Code section 52.1).        15

8           2.    Valley's Fourth Claim (defamation).                    17

9           3.    Valley's Fifth and Sixth claims (intentional and
                  negligent interference with prospective economic
                  advantage).                                            17

10

11   II.   The Court Should Strike Valley's Allegations Regarding Emails That
      Defendants Have Asserted Are Privileged, Pending A Ruling On The
      Privilege Assertion.                                               18

12

      CONCLUSION                                                         21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**      **Page**

Agster v. Maricopa Cnty.,
    422 F.3d 836 (9th Cir. 2005) ........ 20

Amylou R. v. Cnty. of Riverside,
    28 Cal. App. 4th 1205 (1994) ........ 7, 9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........ 6, 18

Baughman v. State,
    38 Cal. App. 4th 182 (1995) ........ 8

Beauchamp v. Anaheim Union High Sch. Dist.,
    816 F.3d 1216 (9th Cir. 2016) ........ 20

Benson v. Superior Court,
    185 Cal. App. 4th 1179 (2010) ........ 11

Block v. Sacramento Clinical Labs, Inc.,
    131 Cal. App. 3d 386 (1982) ........ 12

Branch v. Tunnell,
    14 F.3d 449 (9th Cir. 1994) ........ 2

Braun v. Bureau of State Audits,
    67 Cal. App. 4th 1382 (1998) ........ 11

Cang Wang v. Heck,
    203 Cal. App. 4th 677 (2012) ........ 12

Cnty. of L.A. v. Superior Court,
    181 Cal. App. 4th 218 (2009) ........ 7-9

Dinius v. Perdock, No. C 10-3498 MEJ,
    2012 WL 1925666 (N.D. Cal. May 24, 2012) ........ 10

Edgerly v. City & Cnty. of S.F.,
    713 F.3d 976 (9th Cir. 2013) ........ 9

Gillan v. City of San Marino,
    147 Cal. App. 4th 1033 (2007) ........ 7, 9

Gonzalez v. City of McFarland,
    2014 WL 3940295 (E.D. Cal. Aug. 12, 2014) ........ 16

**TABLE OF AUTHORITIES (continued)**

Page

Hagberg v. Cal. Fed. Bank FSB,
    32 Cal. 4th 350 (2004) .................................................................. 11

Hebrew Acad. of S.F. v. Goldman,
    42 Cal. 4th 883 (2007) .................................................................. 14

Howard Jarvis Taxpayers Ass'n v. City of La Habra,
    25 Cal. 4th 809 (2001) .................................................................. 13

In re Kirkland,
    915 F.2d 1236 (9th Cir. 1990) ...................................................... 10

Ingram v. Flippo,
    74 Cal. App. 4th 1280 (1999) ................................................... 9, 11

Jager v. Cnty. of Alameda,
    8 Cal. App. 4th 294 (1992) ............................................................. 9

Jenkins v. Cnty. of Orange,
    212 Cal. App. 3d 278 (1989) ...................................................... 8, 10

Kinsman v. Unocal Corp.,
    37 Cal. 4th 659 (2005) .................................................................. 10

Martin v. Cnty. of San Diego,
    650 F. Supp. 2d 1094 (S.D. Cal. 2009) ........................................ 16

Mazzola v. Feinstein,
    154 Cal. App. 3d 305 (1984) ........................................................ 12

Moreno v. Town of Los Gatos,
    267 F. App'x 665 (9th Cir. 2008) .................................................. 16

Mullis v. U.S. Bankr. for Dist. of Nev.,
    828 F.2d 1385 (9th Cir. 1987) ........................................................ 2

NBCUniversal Media, LLC v. Superior Court,
    225 Cal. App. 4th 1222 (2014) ..................................................... 14

OSJ PEP Tenn. LLC v. Harris,
    2014 WL 4988070 (C.D. Cal. Oct. 7, 2014) ................................ 16

O'Shea v. Gen. Tel. Co.,
    193 Cal. App. 3d 1040 (1987) ...................................................... 11

iv

1

**TABLE OF AUTHORITIES (continued)**

2

**Page**

3

Park 100 Inv. Grp. II v. Ryan,
4      180 Cal. App. 4th 795 (2009)      17

5

People v. Wardlow,
     118 Cal. App. 3d 375 (1981)      12
6

Ready Transp., Inc. v. AAR Mfg., Inc.,
7      627 F.3d 402 (9th Cir. 2010)      20

8

Richardson v. City of Antioch,
     722 F. Supp. 2d 1133 (N.D. Cal. 2010)      15
9

Roth v. Rhodes,
10      25 Cal. App. 4th 530 (1994)      18

11

Salma v. Capon,
12      161 Cal. App. 4th 1275 (2008)      17

13

Shively v. Bozanich,
     31 Cal. 4th 1230 (2003)      13
14

Silberg v. Anderson,
15      50 Cal. 3d 205 (1990)      11

16

Stearns v. Cnty. of L.A.,
17      275 Cal. App. 2d 134 (1969)      8

18

Sullivan v. Cnty. of L.A.,
     12 Cal. 3d 710 (1974)      10
19

Taus v. Loftus,
20      40 Cal. 4th 683 (2007)      17

21

United States v. de la Jara,
22      973 F.2d 746 (9th Cir. 1992)      19

23

W. Shield Investigations & Sec. Consultants v. Superior Court,
     82 Cal. App. 4th 935 (2000)      13
24

Wheat v. Lee,
25      2013 WL 2285174 (N.D. Cal. May 23, 2013)      10

26

Wilcox v. Arpaio,
27      753 F.3d 872 (9th Cir. 2014)      20

28

**TABLE OF AUTHORITIES (continued)**

**Page**

**Statutes**

California Civil Code
    § 47 ............................................... 1, 11, 15, 17-18
    § 52.1 ................................................ passim

California Business and Professions Code
    § 802.5 ............................................... 17

California Government Code:
    § 815.2 .............................................. 1, 12
    § 821.6 .............................................. passim
    § 901 ................................................ 13
    § 905 ................................................ 12
    § 911.2 .............................................. 13
    § 945.4 .............................................. 12
    § 950.2 .............................................. 12
    § 24000 .............................................. 11
    § 27491 .............................................. 11
    § 27491.5 ............................................ 11

**Rules**

Federal Rules of Civil Procedure
    8(a)(2) .............................................. 6
    12(b)(6) ............................................. 1, 6
    12(f) ............................................... 1, 20

## INTRODUCTION

The Los Angeles County Coroner's Office investigated the death of a Valley Surgical Center (Valley) patient, concluding that her aorta was perforated during surgery and that the manner of death was undetermined. Valley responded by suing the Coroner's Office and the individuals involved in the investigation. Its claim is essentially that defendants labeled the manner of death "undetermined" instead of "accident" in order to retaliate against or otherwise harm Valley. This Court has dismissed several of Valley's federal claims with prejudice, but allowed a pared-down retaliation claim and a *Monell* claim to proceed.

Valley has now filed a Third Amended Complaint that includes the surviving federal claims, and four state-law claims whose merits this Court has not yet addressed. Defendants have twice moved to dismiss the state-law claims, but in each instance, the Court acceded to Valley's request for leave to amend the claims without ruling on defendants' arguments. Valley's third attempt at pleading the state-law claims fares no better than the prior iterations. The claims are barred by California Government Code sections 821.6 (prosecutorial immunity) and 815.2 (public entity immunity), California Civil Code section 47(b) (litigation privilege), the California Tort Claims Act, and by deficiencies in the factual allegations. They should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Third Amended Complaint also includes allegations purporting to describe emails that defendants have claimed are privileged under federal law, and that defendants produced only under compulsion of a court order in a state action where they are third parties. Those allegations should be stricken either under Federal Rule of Civil Procedure 12(f) or under this Court's inherent power to manage its litigation, so that their content is not further disseminated before a federal court has an opportunity to rule on the privileges.

MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

# SUMMARY OF ALLEGATIONS

### A.   A Valley Surgical Patient Dies Shortly After Surgery; The Coroner Investigates The Death.

Paula Rojeski died shortly after gastric band surgery at Valley.  The Los Angeles County Coroner's Office was called in to investigate the death.  It concluded that although Rojeski's heart disease and enlarged heart "are significant conditions," the actual cause of her death was a hemorrhage due to her aorta being perforated during surgery.  2d Am. Compl. Ex. 6, p. 13, Dkt. No. 201-2 (hereinafter Coroner's Report).[1/]  The Report opined, based on the autopsy and reviews by medical consultants, that Valley's surgeon and anesthesiologist had been grossly negligent and should be referred to the California Medical Board.  *Id.* It explained that the manner of death "could not be determined," however, because "[c]ertifying the death as homicide vs. accident would require knowledge of whether or not this death resulted from a conscious disregard for the patient's safety," and although the incident reflected "an extreme deviation from the standard of care," "[t]he currently available information does not allow for a

---

[1/]  Although Valley did not attach the Coroner's Report and Amended Coroner's Report to the Third Amended Complaint, this Court has already taken judicial notice of them and, as it noted at the time, they are properly before it on a Rule 12(b)(6) motion.  *See* Order Dismissing 1st Am. Compl. 11, n. 1 (hereinafter Order Dismissing FAC), Dkt. No. 189 (citing *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994)).  Allegations purporting to describe the Reports' contents need not be accepted as true if they are contradicted by the actual Reports. *Branch*, 14 F.3d at 454; *Mullis v. U.S. Bankr. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987).
    The Reports refute Valley's allegation that the Coroner's Office ignored Rojeski's prior heart damage.  TAC ¶¶ 77; TAC App. ¶¶ 4, 6, 9, 14, 15, 19, 24. Not only does the Report note that "decedent's atherosclerotic heart disease and enlarged heart are significant conditions," Coroner's Report 13, the Amended Report expressly explains that "[h]eart disease is listed as a contributory factor, however but for the surgical injury, the heart would not have given out when it did."  Coroner's Amended Report 18.  The Reports likewise contradict Valley's allegation that they "intentionally failed to note the destruction of" harvested organs (TAC ¶¶ 68, 77; TAC App. ¶¶ 4, 6, 9, 14, 15, 19, 24)–the Reports in fact document the post-mortem tissue procurement and the resulting skin defects. Coroner's Report 4; *see also* Coroner's Amended Report 18 ("skin was only recovered from the legs and back, and tissues from the chest and abdomen were not recovered").

MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

1   conclusion that the surgeon or anesthesiologist intentionally disregarded the

2   patient's safety."  Coroner's Report 13.

3      **B.     In Response To Valley's Criticisms, The Coroner Reopens Its**

4           **Investigation.**

5      Valley criticized a pre-release version of the Coroner's Report, pointing out

6   a factual error relating to the length of the surgery, attempting to discredit an

7   anonymous letter about the condition of Valley's anesthesia equipment, and

8   proffering outside doctors' critiques of the Report.  3d Am. Compl. ¶¶ 46-48, Dkt.

9   No. 238 (hereinafter TAC).  In response, the Coroner's Office reopened its

10  investigation.  2d Am. Compl. Ex. 15, Dkt. Nos. 201-03, 201-4 (hereinafter

11  Coroner's Amended Report).  The Coroner considered the materials Valley had

12  provided; re-reviewed the evidence; obtained a supplemental opinion from the

13  original consulting anesthesiologist to correct an error affecting her prior analysis;

14  had a review discussion with the consulting surgeon; and solicited an opinion from

15  a new outside anesthesiology consultant.  Coroner's Amended Report 16-17.

16     **C.     Valley Sues The Coroner's Office And, When The Revised Report**

17          **Is Released, Amends Its Complaint To Attack The Revised**

18          **Report As Well.**

19     Before the Coroner's Office could release the results of its renewed

20  investigation, Valley sued, alleging that the pre-release version of the report

21  violated Valley's constitutional rights and speculating that the Coroner would

22  refuse to revise its conclusions.  *See* Compl., Dkt. No. 1.  The Coroner then

23  finalized and issued a report that showed Valley's speculation to be unfounded:

24  It acknowledged the factual error that Valley had identified and expressly revised

25  several conclusions that had been based on the error.  Coroner's Amended

26  Report 16-18.

27     The Coroner's Amended Report again found that Rojeski died from a

28  hemorrhage after her aorta was perforated during surgery.  *Id.*  It opined that

3

1    Valley's anesthesiologist's conduct fell below the standard of care.  *Id.*  That

2    standard-of-care finding rested in part on the opinion of the new anesthesiology

3    consultant who concluded—with a correct understanding of the length of the

4    surgery and without relying on the anonymous letter—that Valley's

5    anesthesiologist should have realized from Rojeski's low blood pressure that she

6    was having a problem and should have alerted the surgeon to the need for

7    additional interventions.  Coroner's Amended Report 17-18, 41-44.

8         The Report noted that manner of death is an opinion, and that "extreme

9    medical negligence" may be categorized as a homicide.  *Id.* at 18.  It explained that

10   "[i]f any future investigations clarify that there definitely was or was not a

11   conscious disregard for patient safety, the manner of death can be revised to

12   homicide or accident," but that "as of now, the manner of death is undetermined,

13   as this death does not strictly conform to any one particular manner of death."

14   *Id*. at 17.

15        Valley responded to the Coroner's Amended Report by filing a First

16   Amended Complaint (Dkt. No. 42), followed by a Second Amended Complaint

17   (Dkt. No. 201), and now a Third Amended Complaint (Dkt. No. 238).

18        **D.    This Court Dismisses Several Of The Claims In Valley's First**

19              **And Second Amended Complaints Without Leave To Amend.**

20        This Court granted defendants' motion to dismiss the First Amended

21   Complaint, disposing of some claims with prejudice and others with leave to

22   amend, in June 2015.  Order Dismissing FAC 17-18.  It granted in part and denied

23   in part a motion to dismiss the Second Amended Complaint in March 2016, and

24   partially reconsidered that ruling in May 2016.  Order Dismissing In Part 2d

25   Amend. Compl. (hereinafter Order Dismissing SAC), Dkt. No. 226; Order Re:

26   Pl.'s Mot. for Recons. (hereinafter Order re Recons.), Dkt. No. 237.  The result is

27   that the following claims have been dismissed with prejudice and are no longer in

28   the case:

- Claim that organ harvesting violated due process.  Order Dismissing FAC 10-12.
  - Claim that defendants prevented access to courts.  *Id.* at 12-13.
  - Claim that Dr. Selma Calmes' speeches were retaliatory.  *Id.* at 13-14; Order Dismissing SAC 15.
  - Claim that the administrative subpoena violated the Fourth Amendment. Order Dismissing FAC 14-15; Order Dismissing SAC 9-11; Order re Recons. 4-8.

The court twice dismissed the state law claims without prejudice, at Valley's request.  Order Dismissing FAC 16; Order Dismissing SAC 15.

### E.   Overview Of Claims In Third Amended Complaint.

Valley filed a Third Amended Complaint on June 6, 2016.  Dkt. No. 238. It lists six claims:

### 1.   First Claim (§ 1983 against the individual defendants)

Valley alleges a § 1983 claim against six defendants:  Coroner Lakshmanan Sathyavagiswaran; Drs. Adrian Marinovich, Raffi Djabourian, and Calmes; Ed Winter; and John Kades.  TAC ¶¶ 62-70.  Its theory is that defendants retaliated against Valley in violation of the First Amendment, and deprived it of its due process right to an investigation not based on false or fabricated information and violated its right not to be deprived of property without due process.  TAC ¶ 64. Valley seeks compensatory and punitive damages against the individual defendants.  TAC ¶¶ 69-70.

### 2.   Second Claim (*Monell*)

Valley alleges that the County is liable for damages because the head of the Coroner's Office, Sathyavagiswaran, was personally involved in the alleged constitutional violations or was aware of and acquiesced in them.  TAC ¶¶ 74-75.

### 3.    Third Claim (California Civil Code § 52.1)

Valley alleges that defendants violated California Civil Code § 52.1, which prohibits interfering by threats, intimidation, and/or coercion with an individual's constitutional or statutory rights.  TAC ¶¶ 82-88.  It seeks penalties, punitive damages, and attorney's fees on this theory.  TAC ¶ 88.

### 4.    Fourth Claim (defamation)

Valley alleges that defendants published defamatory statements about it with actual malice, and seeks exemplary damages on that basis.  TAC ¶¶ 89-92.

### 5.    Fifth and Sixth Claims (intentional and negligent interference with prospective economic advantage)

Valley alleges that defendants' actions caused unspecified people not to seek it out for surgery and Lap-Band suppliers to stop supplying it, and that this constituted intentional or negligent interference with its prospective economic advantage.  TAC ¶¶ 93-97, 98-100.

## ARGUMENT

### I.    The Court Should Dismiss Valley's State Law Claims Because They Do Not State A Cause Of Action.

Federal Rule of Civil Procedure 12(b)(6) requires dismissing claims that "fail to state a claim upon which relief can be granted."  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim:  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must show "that the pleader is entitled to relief").  None of the state law claims in Valley's Third Amended Complaint meet that standard.  The claims should be dismissed without leave to amend.

**A.   Valley's State Law Claims Implicate State Law Privileges And Immunities.**

The Third Amended Complaint alleges four claims based on California law: defamation, California Civil Code § 52.1, intentional interference with economic advantage, and negligent interference with economic advantage.  Multiple state law privileges and immunities dispose of or sharply curtail those claims.

**1.   California Government Code section 821.6 (prosecutorial immunity).**

**a.   Section 821.6 bars Valley's claims arising out of defendants' official investigations.**

Under California law, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment . . . ."  Cal. Gov't Code § 821.6.[2]  Section 821.6 extends to virtually all causes of action except false imprisonment.  *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007).  It applies "even if [the employee] acts maliciously and without probable cause."  Gov't Code § 821.6.

Courts construe section 821.6 broadly to protect public employees from harassment through civil suits like Valley's.  *Gillan*, 147 Cal. App. 4th at 1048.  The immunity applies to investigations that precede administrative or judicial proceedings—investigations like the one that the Coroner's Office conducted here. *Id.* (investigation prior to judicial proceeding "is part of the prosecution of a judicial proceeding for purposes of the statute"); *Cnty. of L.A. v. Superior Court*, 181 Cal. App. 4th 218, 229 (2009) ("investigations are an essential step toward the institution of formal proceedings"); *Amylou R. v. Cnty. of Riverside*, 28 Cal. App. 4th 1205, 1209-11 (1994) ("administrative proceeding" includes investigatory and

---

[2]  All further statutory citations are to the California codes.

MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

1    other activities in preparation for more formal proceedings).  Section 821.6 bars all

2    of Valley's state-law claims against the individual defendants.

3         Valley alleges that the individual defendants were acting under color of

4    state law.  TAC ¶ 64; *see also* TAC App. ¶¶ 3, 6, 9, 12, 15, 18, 21 (alleging that

5    the individual defendants were either employees of, or retained by, the Coroner's

6    Office), *Stearns v. Cnty. of L.A.*, 275 Cal. App. 2d 134, 136-137 (1969) (coroner's

7    office employees immune from claim of negligent autopsy).  Their investigation

8    into Rojeski's death had the potential to lead to administrative and judicial

9    proceedings.  Indeed, Valley alleges that the Coroner's Office referred the matter

10   to the Los Angeles Police Department for criminal investigation.  TAC ¶ 32.  And

11   Valley's allegations of misconduct relate to defendants' investigation and

12   reporting:  The complaint relies on the handling of the autopsy (¶¶ 14-16); the

13   inspection of Valley's anesthesia equipment pursuant to an administrative

14   subpoena (¶¶ 25-29); defendants' alleged cooperation with the FDA's

15   investigation into Valley (¶¶ 30-31); the treatment of an anonymous letter

16   accusing Valley of wrongdoing (¶ 17-21); and the contents of the Coroner's

17   Reports (¶¶ 40-45, 51-58).

18        The alleged activities on which Valley relies fall squarely within

19   section 821.6's immunity.  *Cnty. of L.A.*, 181 Cal. App. 4th at 230 (where

20   "investigating, obtaining the warrant, searching, seizing, retaining, and even

21   damaging plaintiffs' property" are "committed as part of an investigation of

22   crimes," members of District Attorney's investigating staff are immune from

23   liability); *Baughman v. State*, 38 Cal. App. 4th 182, 193 (1995) (immunity for

24   police officers who destroyed computer disks during a search that exceeded scope

25   of warrant; section 821.6 "frees investigative officers from the fear of retaliation

26   for errors they commit in the line of duty"); *Jenkins v. Cnty. of Orange*, 212 Cal.

27   App. 3d 278, 284 (1989) (social worker immune from suit based on her

28   investigation of possible child abuse and alleged refusal to consider all evidence).

1   Valley's allegation that defendants acted in bad faith does not change the

2   analysis.  Public employees are immune for injuries caused by their investigatory

3   conduct even if they acted maliciously or otherwise abused their authority.  Gov't

4   Code § 821.6; *Gillan*, 147 Cal. App. 4th at 1048; *Cnty. of L.A.*, 181 Cal. App. 4th

5   at 229.  Valley therefore cannot state a claim against the individual defendants

6   based on their handling of the investigation.

7                    **b.      Valley's previous arguments are unavailing.**

8        In opposing defendants' prior motion to dismiss, Valley attempted to show

9   that section 821.6 does not bar its claims.  This Court has not yet ruled on those

10  arguments because it instead granted Valley's request for leave to replead the state

11  law claims to allege compliance with the California Tort Claims Act.  The

12  arguments, however, remain baseless.

13       First, it makes no difference that no criminal charges have been filed based

14  on the Coroner's investigation.  Investigations fall within the scope of

15  section 821.6 regardless whether charges are ultimately filed.  *See, e.g.*, *Cnty. of*

16  *L.A.*, 181 Cal. App. 4th at 230 (§ 821.6 applies where "investigating, obtaining the

17  warrant, searching, seizing, retaining, and even damaging plaintiffs' property" are

18  "committed as part of an investigation of crimes"); *Amylou R.*, 28 Cal. App. 4th at

19  1210 (investigation "'is also cloaked with immunity'").  Valley has cited no

20  contrary authority.

21       Second, belying Valley's contention that section 821.6 is limited to

22  malicious prosecution claims, the California courts routinely apply section 821.6

23  to bar the same causes of action at issue here.  *E.g., Ingram v. Flippo*, 74 Cal. App.

24  4th 1280, 1291-92 (1999) (defamation); *Cnty. of L.A.*, 181 Cal. App. 4th at 231

25  (Civ. Code § 52.1); *Jager v. Cnty. of Alameda*, 8 Cal. App. 4th 294, 298 (1992)

26  (interference with economic relationship).  This Court must follow that decisional

27  law.  *See Edgerly v. City & Cnty. of S.F.*, 713 F.3d 976, 982 (9th Cir. 2013)

28  (federal court interpreting California law must follow a decision of the California

MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

1    Supreme Court or, absent a decision on point, must "'follow decisions of the
2    California Court of Appeal unless there is convincing evidence that the California
3    Supreme Court would hold otherwise'"); *In re Kirkland*, 915 F.2d 1236, 1238-39
4    (9th Cir. 1990) (same).  The fact that one federal magistrate judge has interpreted
5    section 821.6 more narrowly, *see Dinius v. Perdock*, No. C 10-3498 MEJ, 2012
6    WL 1925666 (N.D. Cal. May 24, 2012), is irrelevant.

7          Not only is *Dinius* not binding, it is wrong.  It cited the California Supreme
8    Court's decision in *Sullivan v. Cnty. of L.A.*, 12 Cal. 3d 710 (1974) for the
9    proposition that section 821.6 is limited to malicious prosecution claims.  *Dinius*,
10   2012 WL 1925666, at *8.  But, as the California Court of Appeal has explained,
11   "this is too broad an interpretation of *Sullivan* . . . ."  *Jenkins*, 212 Cal. App. 3d at
12   283 (rejecting argument that *Sullivan* limits § 821.6 to malicious prosecution
13   claims, and collecting cases applying § 821.6 to claims other than malicious
14   prosecution).

15         *Sullivan* involved the narrow question of whether section 821.6 applies to
16   claims for false arrest.  *See* 12 Cal.3d at 719.  Its conclusion that "the Legislature
17   intended [§ 821.6] to protect public employees from liability only for malicious
18   prosecution and not for false imprisonment," *id.* (emphasis omitted), must be read
19   in that light—i.e., as a comment on whether section 821.6 applies to a false
20   imprisonment claim.  Its statement should not be taken as a broader commentary
21   on the issue that was *not* before the Court, i.e., whether section 821.6 applies to
22   claims other than false imprisonment.  *See Wheat v. Lee*, No. C 12-6299 EMC,
23   2013 WL 2285174, at *9 (N.D. Cal. May 23, 2013) ("Other than *Dinius*, it appears
24   that no California state court has yet to read *Sullivan* as limiting the scope of
25   § 821.6 immunity to malicious prosecution actions to nothing else.  Instead,
26   *Sullivan* only appears to hold § 821.6 immunity does not apply to false
27   imprisonment claims"); *see also Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 680
28   (2005) ("'It is axiomatic that language in a judicial opinion is to be understood in

accordance with the facts and issues before the court.  An opinion is not authority for propositions not considered'").

Finally, Valley argued that there may not be a causal relationship between some of the conduct it attacks and the Coroner's investigation.  There can be no dispute, however, that the administrative subpoena, the autopsy, and the Coroner's reports were within the scope of the investigation.  And as to the alleged leak to the media that the case had been referred to LAPD for a homicide investigation, reporting the progress or results of an investigation is within the scope of section 821.6.  *Ingram,* 74 Cal. App. 4th at 1293.  Section 821.6 therefore bars Valley's state law claims against the individual defendants.

### 2.      California Civil Code section 47 (the litigation privilege).

California law grants an absolute privilege to publications made in any "official proceeding authorized by law."  Civ. Code § 47(b).  This litigation privilege "eliminate[s] the threat of liability for communications made during all kinds of truth-seeking proceedings:  judicial, quasi-judicial, legislative and other official proceedings."  *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990).  Consistent with section 47's broad scope, courts have extended the privilege to statements that are made in governmental investigations or that are intended to instigate an official investigation.  *E.g.*, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 370 (2004) (citizen's report of suspected criminal activity to police); *Braun v. Bureau of State Audits*, 67 Cal. App. 4th 1382, 1388-1389 (1998) (audit statements, including those in search warrant affidavit and audit report); *O'Shea v. Gen. Tel. Co.*, 193 Cal. App. 3d 1040, 1048-1049 (1987) (statements in a CHP background investigation).

The Coroner's autopsy reports fall within the scope of section 47.  The Coroner is a County official.  Gov't Code § 24000(m).  One of his principal official duties is to inquire into and determine the circumstances and causes of deaths.  *Id.* §§ 27491, 27491.5; *Benson v. Superior Court*, 185 Cal. App. 4th 1179,

11

1185 (2010). The resulting report is a public record. *People v. Wardlow*, 118 Cal. App. 3d 375, 388 (1981). It is privileged because of its role as a precursor to possible further proceedings. *Cang Wang v. Heck*, 203 Cal. App. 4th 677, 684, 686 (2012) (observing that § 47 litigation privilege applies in "'all kinds of truth-seeking proceedings'" and holding that privilege barred suit against neurologist based on her allegedly negligent assessment on DMV evaluation form that driver was fit to drive); *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal. App. 3d 386, 393-94 (1982) (holding that § 47 barred negligence suit based on toxicologist's erroneous analysis that led to filing of criminal murder and child neglect charges against plaintiff). Moreover, even if there were some question about whether the privilege applied here, "'[a]ny doubt about whether the privilege applies is resolved in favor of applying it.'" *Cang Wang*, 203 Cal. App. 4th at 686. Valley therefore cannot assert any state law claim based on the Coroner's report.

**3.      California Government Code section 815.2 (public entity immunity).**

A public entity cannot be held liable for injuries as to which its employees are immune. Gov't Code § 815.2(b). To the extent that the privileges and immunities discussed above bar Valley's claims against the individual defendants, they also bar Valley's claims against the County.

**B.      The California Tort Claims Act Bars Claims Accruing Before November 2012.**

Under California's Tort Claims Act, a plaintiff may not seek damages from a public entity or its employees without first presenting a timely written claim to the entity. Gov't Code §§ 905, 945.4, 950.2; *Mazzola v. Feinstein*, 154 Cal. App. 3d 305, 310 (1984) ("It is settled that the filing of a timely claim against the employing public entity is a condition precedent to a tort action against either the public entity or the employee").

1    Valley's state law claims had to be presented within six months of their

2    accrual.  Gov't Code § 911.2(a) (six-month limit for filing notice of claims

3    alleging injury to person or personal property); *W. Shield Investigations & Sec.*

4    *Consultants v. Superior Court,* 82 Cal. App. 4th 935, 953-54 (2000) (Civ. Code

5    § 52.1 claim); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 n.9 (2003) (defamation

6    claim).  Valley admits that it did not present a claim until May 10, 2013.  TAC

7    ¶ 59.  It cannot now assert any claim that accrued more than six months

8    earlier—i.e., before November 9, 2012.

9    This timing bar precludes Valley from asserting any state law claim based

10   on the administrative subpoena/site inspection in December 2011, on Dr. Calmes'

11   public speeches in August 2012 and September 2012, or on defendants allegedly

12   referring Valley for a homicide investigation and leaking the fact of the referral to

13   the media in April 2012.  TAC ¶¶ 25, 32, 34, 37, 86.  Any cause of action relating

14   to those events accrued on the day that they occurred.  Gov't Code § 901

15   (government tort claims accrual determined by same principles as statute of

16   limitations); *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809,

17   815 (2001) (cause of action accrues when the wrongful act occurs and liability

18   arises).  Valley failed to present a tort claim within six months.  It thus forfeited its

19   claims.

20   Attempting to circumvent the lack of a timely claim, Valley contends that it

21   did not discover its harm until it saw the autopsy report in January 2013 and that

22   until then, it assumed the Coroner's office would conduct a legitimate

23   investigation.  TAC ¶¶ 60-61.  But Valley's own allegations belie that claim.

24   Valley contended from the outset that Dr. Calmes was biased and would not

25   conduct a fair investigation:  It objected in December 2011 that she was not

26   professionally competent and that she had a "personal and professional bias[]"

27   against Valley.  TAC ¶ 23.  And it knew that Dr. Calmes would nonetheless be

28   involved in the investigation, because she participated in the site inspection a few

13

days later.  TAC ¶ 26.  Valley also alleges that it "protest[ed] and critiqu[ed] the Coroner's investigation" in September 2012.  TAC ¶ 36.  These allegations belie Valley's claim that it never doubted that the investigation would be "lawful and legitimate" until January 2013.

Valley knew on the day of the site inspection (December 5, 2011) that it had recently sent a letter accusing Dr. Calmes of being biased, that the Coroner's Office had issued an administrative subpoena, and, according to Valley, that the subpoena's purpose was to force Valley to allow Dr. Calmes onto the property. TAC ¶¶ 23, 25, 26.  That was all the information Valley needed for its retaliation claim based on the subpoena.  Valley knew of media reports that the Coroner's Office had referred Rojeski's case to Los Angeles Police Department homicide detectives when those reports were published, in April and May 2012.  TAC ¶¶ 32, 33.  If Valley thought the leak was retaliatory, it should have filed a tort claim within six months.  It failed to do so.

Nor does Valley's allegation that it first learned of Dr. Calmes' speeches in January 2013 (TAC ¶¶ 35, 38) excuse its delay in pursuing that claim.  Valley alleges that one of Dr. Calmes' speeches was "public" and that the other was at a conference at a hotel.  TAC ¶¶ 34, 37.  Valley has not alleged any facts that prevented it from knowing at the time that it had been harmed.  Its allegations therefore do not bring it within California's delayed accrual rule.  *See NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1235 (2014) ("public disclosure to even a limited audience is sufficient to preclude a plaintiff from arguing that the breach and injury were secretive"); *Hebrew Acad. of S.F. v. Goldman*, 42 Cal. 4th 883, 887, 895 (2007) (declining to apply discovery rule where fewer than 10 copies of the transcript containing allegedly defamatory statements were published).  It had to submit its government tort claim within six months of the speeches.

MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

**C.     The California Privileges, Immunities, And Tort Claim Filing
Requirements, Together With Other Flaws, Dispose Of Valley's
State Law Claims.**

**1.     Valley's Third Claim (Civil Code section 52.1).**

Valley alleges that defendants violated California Civil Code § 52.1, which
applies where a defendant "interferes by threat, intimidation, or coercion, or
attempts to interfere by threat, intimidation, or coercion" with constitutional or
statutory rights.  TAC ¶¶ 82-88; Civ. Code § 52.1(a), (b).  There are at least two
problems with this claim.

First, defendants cannot be subject to damages for any of the actions that
constitute the supposed interference with Valley's constitutional rights.  Valley
alleges that defendants interfered with its rights by issuing an administrative
subpoena, issuing the autopsy reports, retaliating, labeling its conduct potentially
homicide, and leaking confidential information.  TAC ¶ 86.[3/]  But as discussed
above, Government Code § 821.6 prosecutorial immunity (covering the entire
investigation), the Civil Code § 47(b) litigation privilege (covering the autopsy
reports), and Valley's failure to present a timely governmental tort claim regarding
the administrative subpoena and alleged media leak, foreclose any liability based
on Valley's allegations.

Second, "[s]peech alone is not sufficient to support an action" under
section 52.1.  Civ. Code § 52.1(j).  Where the "threat, intimidation, or coercion" is
in the form of speech,  the plaintiff must establish that "the speech itself threatens
violence" and leads the target of the threat to "reasonably fear[]" that the violence
will be carried out.  Civ. Code § 52.1(a), (j); *see also Richardson v. City of*

---

[3/] Valley does not specify what retaliation underlies its section 52.1 claim.
The claim cannot be based on Dr. Calmes's speeches, not only because the claim
would be time-barred, but also because this Court has already ruled that Valley
cannot plausibly allege that the speeches were retaliatory.  Order Dismissing
FAC 13-14; Order Dismissing SAC 15.

*Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) ("The test is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and *have perceived a threat of violence*," emphasis added).  The alleged threats, intimidation, and coercion here are in the form of speech:  Valley alleges that defendants threatened to conduct a search, threatened to release an autopsy report, described Valley's conduct as potentially homicide, and leaked information to the media.  TAC ¶ 86.  Valley has not alleged any threat of violence accompanying the speech, nor could it.  That shortcoming independently compels dismissal of its section 52.1 claim.

There is no merit to Valley's argument, in opposing the prior motion to dismiss, that section 52.1 does not require violence or threat of violence.  The case it relied on, *Moreno v. Town of Los Gatos*, 267 F. App'x 665, 666 (9th Cir. 2008), overlooked that section 52.1 explicitly does require violence or a threat of violence if the threat, intimidation, or coercion is by speech alone.  That explicit statutory requirement trumps a judicial opinion that does not mention it, as evidenced by the fact that numerous subsequent federal decisions have rejected section 52.1 claims for failing to satisfy the threat-of-violence requirement.  *See, e.g.*, *Gonzalez v. City of McFarland*, No. 1:13-CV-00086-JLT, 2014 WL 3940295, at *26 (E.D. Cal. Aug. 12, 2014) (granting summary judgment for defendant on § 52.1 claim because even if plaintiff was threatened with termination, there was no evidence that she was physically intimidated or threatened with violence); *OSJ PEP Tenn. LLC v. Harris*, No. CV 14-03741 DDP (MANx), 2014 WL 4988070, at *5 (C.D. Cal. Oct. 7, 2014) (granting motion to dismiss § 52.1 claim because allegation that defendant threatened to shut down plaintiff's business "is not enough to satisfy § 52.1(j)'s threat-of-violence requirement"; "[a] mere statement that an official may take official action is not a threat of violence"); *Martin v. Cnty. of San Diego*, 650 F. Supp. 2d 1094, 1109 (S.D. Cal. 2009) (detective's statement that if plaintiff did not voluntarily submit a DNA sample "he would

16          MEMO OF P'S & A'S ISO MOTION TO DISMISS AND TO STRIKE

1   attempt to get a warrant and 'come look[ing] for you'" could not support a § 52.1

2   claim because there was no threat of violence).  The court should do the same

3   here.

### 2.   Valley's Fourth Claim (defamation).

5   The Third Amended Complaint does not specify what publications Valley's

6   defamation claim is based on.  TAC ¶ 90.  There are none that would suffice to

7   state a claim.  Valley cannot rely on the Coroner's Reports or on any statements

8   that were part of the investigation, because they fall within the Civil Code § 47(b)

9   litigation privilege and the Government Code § 821.6 prosecutorial immunity (*see*

10  pp. 7-12, *supra*), and a defamation claim must be based on *unprivileged*

11  publications.  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); *see also* Bus. & Prof.

12  Code § 802.5(b) (coroner and physicians immune to damages claim based on

13  reporting to the Medical Board findings that a death may have resulted from a

14  physician's gross negligence or incompetence).  Valley also cannot rely on the

15  alleged media leak or on Dr. Calmes' speeches because Valley failed to file a

16  timely tort claim.  *See* pp. 12-14, *supra*.  That leaves no cognizable basis for a

17  defamation claim.

### 3.   Valley's Fifth and Sixth claims (intentional and negligent interference with prospective economic advantage).

20  Valley's intentional and negligent interference with prospective economic

21  advantage claims will require it to prove that defendants engaged in wrongful

22  conduct that disrupted an existing relationship.  *Salma v. Capon*, 161 Cal. App.

23  4th 1275, 1291 (2008).  Valley cannot allege facts meeting that standard, for

24  several reasons.

25  First, Valley cannot identify any actionable conduct.  An interference with

26  prospective economic advantage claim must be based on *unprotected* wrongful

27  conduct.  *Park 100 Inv. Grp. II v. Ryan*, 180 Cal. App. 4th 795, 813 (2009).  But

28  all of the conduct that Valley alleges—"mak[ing] findings contained in an autopsy

17

report," "leaking the investigation to the public," and "false statements" (TAC ¶¶ 95, 99)—falls within Government Code § 821.6 prosecutorial immunity and the Civil Code § 47 litigation privilege, and some of it also was not presented in a timely governmental tort claim.  Pp. 7-14, *ante*.  Valley is left with no basis for its claim.

Second, Valley's theory that hypothetical future patients decided not to seek it out for surgery (TAC ¶ 94) is not sufficient to state a claim.  Valley must identify a specific *existing* relationship that was disrupted.  *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (allegation that defendant interfered with relations with future customers was insufficient).  Valley has not done so.

Third, Valley's theory that Allergan stopped supplying it with Lap-Bands because of defendants' "leaking the investigation to the public, false statements, or the autopsy report" (TAC ¶ 95) not only relies on non-actionable conduct, it also fails to meet *Iqbal*'s plausibility standard.  *Iqbal* dictates that courts draw on "common sense" in assessing whether factual allegations "plausibly give rise to an entitlement to relief," and should consider whether there is an "'obvious alternative explanation'" for the facts alleged.  556 U.S. at 679, 682.  Here, the obvious alternative explanation for Allergan deciding not to supply Valley is that Allergan did not want to be associated with a surgical center where a patient had died immediately following surgery.

**II.    The Court Should Strike Valley's Allegations Regarding Emails That Defendants Have Asserted Are Privileged, Pending A Ruling On The Privilege Assertion.**

The Third Amended Complaint purports to quote from an email regarding the FDA having contacted defendant Kades (TAC ¶¶ 30-31), and from emails between Dr. Calmes and the Coroner (TAC ¶¶ 29, 78 & n.2).  Defendants have long asserted in this Court that the emails are privileged.  *E.g.,* Joint Disc. Stip. 9-11, Dkt. No. 63 (privilege log); *see also id.* at 12-54 (defendants' and Valley's

1   privilege arguments).  Valley obtained the emails anyway—not because this Court

2   overruled the privileges, but because a state court ordered defendants to produce

3   them in a state court action where defendants are third parties, over defendants'

4   state-law privilege objections.  *See* Pltf.'s Opp. to Mtn. to Dismiss SAC 1, Dkt.

5   No. 214 (defendants produced the FDA email "pursuant to another court's order").

6          This Court commented during a previous hearing that "there are probably

7   privileges that surround the admissibility of" the FDA email.  Mot. to Dismiss 2d

8   Am. Compl. Hr'g Tr. 14:16-17, Nov. 30, 2015.  But neither this Court nor a

9   magistrate judge has yet had an opportunity to fully consider and decide on the

10  privilege issues because Valley chose to switch to pursuing discovery in the state

11  court action instead of in this case.  *See* Jan. 9, 2014 Order re Pltf.'s Mtn. to

12  Compel, Dkt. No. 118 ("[w]hen the stay is lifted, [Valley] must file a[n] amended

13  notice of motion if it intends to pursue the motion to compel").  Valley should not

14  be permitted to vitiate defendants' privileges by quoting or purporting to describe

15  the emails before this Court has an opportunity to rule on whether they are

16  protected.  All allegations regarding or based on the emails should be stricken

17  until the Court has ruled on them, with an order that the emails not be used in this

18  case until the Court has ruled on whether they are privileged.

19         There is no merit to Valley's anticipated contention that defendants have

20  waived their privileges.  An involuntary disclosure does not waive privilege if "the

21  privilege holder has made efforts 'reasonably designed' to protect and preserve the

22  privilege." *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992).

23  Defendants' disclosure here was involuntary—it was pursuant to court order—and

24  they have consistently made efforts to protect and preserve the privilege in this

25  Court, by objecting each time Valley cited the documents, *see, e.g.*, Def'ts' Reply

26  In Support Of Mot. to Dismiss SAC 1, Dkt. No. 219; Def'ts' Obj. and Reply To

27  Supp. Opp. 2, Dkt. No. 224; Mot. to Dismiss 2d Am. Compl. Hr'g Tr. 21:19-

28  22:18, Nov. 30, 2015, and by pursuing this motion.

1       Nor are defendants collaterally estopped from asserting privileges here.  A

2   ruling in one case has collateral estoppel effect in a second case only if the issues

3   are "identical."  *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216,

4   1225 (9th Cir. 2016).  Valley cannot show that the state trial court decided an issue

5   identical to the one here.  The state trial court decided defendants' state-law

6   privilege claims.  *See* Request for Judicial Notice.  Defendants' privileges in this

7   case, by contrast, are governed by federal law.  *Agster v. Maricopa Cnty.*, 422 F.3d

8   836, 839-40 (9th Cir. 2005) (federal common law governs claims of privilege in

9   federal court; where "there are federal question claims and pendent state law

10  claims present, the federal law of privilege applies"); *Wilcox v. Arpaio*, 753 F.3d

11  872, 876 (9th Cir. 2014) (same).  The state court's ruling therefore is not binding

12  on this Court.

13      Valley objected during the meet-and-confer process that a motion to strike

14  cannot be used for evidentiary objections.  But if defendants do not move to strike

15  the references now, Valley will no doubt argue when the privilege issue is

16  squarely presented later that defendants' silence constituted a waiver.  Defendants

17  therefore bring this motion as part of their ongoing effort to preserve and protect

18  their privilege claims until this Court rules on them.

19      Valley's continued dissemination of defendants' emails prejudices

20  defendants by further violating their confidentiality.  If the emails are privileged,

21  they are immaterial and impertinent, the standard for striking allegations under

22  Federal Rule of Civil Procedure 12(f).  Alternatively, if the privilege claims do not

23  implicate Rule 12(f), this Court's inherent power to manage litigation permits it to

24  strike the email references and order that the emails not be used before the Court

25  rules on defendants' privilege objections.  *See Ready Transp., Inc. v. AAR Mfg.,*

26  *Inc.*, 627 F.3d 402, 404-05 (9th Cir. 2010) (district court has inherent power to

27  strike an improperly-filed confidential document).

28

1     **CONCLUSION**

2     California's prosecutorial immunity, litigation privilege, and Tort Claims

3  Act presentation requirement bar Valley from pursuing a state law claim based on

4  much of the conduct alleged in the complaint.  Any allegations not disposed of by

5  those bars are insufficient to state a claim for relief.  Valley's state law

6  claims—defamation, Civil Code section 52.1, and intentional and negligent

7  interference with prospective economic advantage—should be dismissed with

8  prejudice.

9     Additionally, the Court should strike Valley's allegations regarding emails

10  that defendants produced involuntarily and have asserted in this Court are

11  privileged, and should order that the emails not be cited or referred to before a

12  federal court rules on whether they are privileged.

15  Dated:  June 27, 2016          MARANGA • MORGENSTERN

16                       **Attorneys for Defendant SELMA CALMES, M.D., a public employee**

17                       MONROY, AVERBUCK & GYSLER

18-20  **Attorneys for Defendants COUNTY OF LOS ANGELES, a government entity; LAKSHMANAN SATHYAVAGISWARAN, M.D., ADRIAN MARINOVICH, M.D., RAFFI DJABOURIAN, M.D., DENIS C. ASTARITA, M.D., JOHN KADES, ED WINTER, public employees**

21                       GREINES, MARTIN, STEIN, & RICHLAND LLP

22                       By:_____s/  Alana H. Rotter_____

23                            Alana H. Rotter
                          **Attorneys for Defendants COUNTY OF LOS ANGELES, a government entity; LAKSHMANAN SATHYAVAGISWARAN, M.D., ADRIAN MARINOVICH, M.D., RAFFI DJABOURIAN, M.D., DENIS C. ASTARITA, M.D., SELMA CALMES, M.D., JOHN KADES, and ED WINTER, public employees**

21