WILLIAM WELDEN, ESQ. (SBN: 117056)
  wbwlaw@gmail.com
**LAW OFFICE OF WILLIAM WELDEN**
9663 Santa Monica Blvd, No. 234
Beverly Hills, California 90210
(310) 947 – 4633  |  telephone

*Attorneys for Plaintiff*, VALLEY SURGICAL CENTER, LLC.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY SURGICAL CENTER LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a government entity, LAKSHMANAN SATHYAVAGISWARAN, M.D., an individual, ADRIAN MARINOVICH, M.D., an individual, RAFFI DJABOURIAN, M.D. , an individual, DENIS C. ASTARITA, M.D. , an individual, SELMA CALMES, M.D., an individual, JOHN KADES, an individual, ED WINTER, an individual, and DOES 1-10,<br><br>Defendants. | Case No. CV 13-02265 DDP (AGRx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RELIEF UNDER FRCP 60 (b) FROM THE COURT'S ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE SUMMARY JUDGMENT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; WELDEN DECLARATION**<br><hr><br>*Hearing Date*:  August 24, 2020<br><br>*Hearing Time*:  10:00 a.m.<br><br>*Courtroom*:   9C<br><br>Honorable Dean D. Pregerson |

TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on August 24, 2020, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 9C of the above-entitled Court,

located at United States Courthouse, 350 West 1st Street, Los Angeles, CA. 90012, before
the Hon. Dean D. Pregerson, Plaintiff Valley Surgical Center, LLC ("Valley") will and
hereby does move under Fed.R.Civ.P. 60(b) for an order to of this court relieving Valley
from the Court's July 9, 2020, order denying Valley's Motion for Reconsideration of the
Court's granting Defendants' Motion for Summary Judgment for the following reasons:
Rule 60(b)(2), newly discovered material evidence;  Rule 60(b)(3), fraud (whether
heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of
an adverse party; and Rule 60(b)(6), any other reason justifying relief from the operation
of the judgment.

   Valley intends to take Defendant ED Winter's deposition in order to prove to the
Court that Winter has perjured himself and committed fraud on the Court to unfairly win
summary judgment.  As one example, Winter claimed he never asked for a criminal
investigation of Rojeski's death by the LAPD when he actually did ask.  Winter was to
have been deposed in the case at Bar when the Summary Judgment Motion was granted.
In a separate state case, Golden State Practice Management LLC. et. al. v. County of Los
Angeles et al. LASC Case No. SC126530, in which Winter has twice been noticed for a
deposition, the County has steadfastly refused to make him available and then filed a
Motion for a Stay.  Given the new evidence as to Winter's material perjured testimony,
Defendants can be counted on the fight extremely hard to avoid Winter's being deposed.

   This Motion is based upon this Notice of Motion and Motion, the attached
Memorandum of Points and Authorities, the Court's file in this matter, and other oral and
documentary evidence presented to the Court or that the Court deems appropriate.

   This Motion is made following an attempted conference of counsel pursuant to
C.D. Cal. Civ. L.R. 7-3, which took place by phone on July 15, 2020 with attorney
Valorie Ferrouilet (Attorneys Monroy and Gysler could not be reached by phone).
Defendants and their counsel are, however, well aware of and are quite familiar with the
issues raised in this Motion which have been raised with them previously. As such, any
further meet and confer is futile. Further, given Defendants' history of refusing to make

Winter available for a deposition in a separate State case, in the face of clear new evidence of Winter's perjury, and then seeking a stay, a meet and confer is further rendered futile, but an attempt to meet and confer was made by the undersigned counsel. (*See* Welden Declaration, Paras. 13-14 *infra*).

*Respectfully Submitted,*

July 15, 2020                    By:  */s/ William B. Welden, Esq.*
                                     WILLIAM B. WELDEN, ESQ. *for*
                                     **LAW OFFICE OF WILLIAM WELDEN**
                                     *Attorney for Plaintiff*
                                     VALLEY SURGICAL CENTER, LLC,

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Valley Surgical Center LLC ("Valley") brought a motion to reconsider the Court's Order, granting Defendants County of Los Angeles, (the "County"), Lakshmanan Sathyavagiswaran, Adrian Marinovich, Raffi Djabourian, Denis C. Astarita, John Kades, and Ed Winter, and Selma Calmes (collectively, "Defendants")'s motion for summary judgment [Dkt. Nos. 483, 492] for Valley's Third Amended Complaint (the "TAC"), [Dkt. No. 238].  That motion to reconsider was denied on July 9, 2020 [Dkt. No. 620], but the motion to reconsider was denied in the absence of the Plaintiff and Court knowing that Defendants had provided a materially false Declaration.

Specifically, the newly discovered evidence not available to Plaintiff shows that Defendant Winter had lied and materially perjured himself in his Declaration about asking the Los Angeles Police Department ("LAPD") to initiate a criminal investigation into the death of Paula Rojeski. Winter had consistently asserted and declared that he had never sought an investigation into the death of Paula Rojeski, a key fact presented in support of Defendants' summary judgment motion, which Plaintiff was unable to refute.

The material fact showing that Winter had committed perjury in his declaration in support of the Defendants' summary judgment motion was not known to Plaintiff Valley until June 19, 2020 when undersigned counsel received a final citable transcript of Detective Daniel Myers' Deposition, which refuted Winter's Declaration. It is the undersigned legal and ethical obligation to bring this material perjury and fraud on the attention of the Honorable Court to remedy the injustice which has occurred in this case.

In the motion for reconsideration, Valley had underscored this Honorable Court's prior Order, which held that Valley's retaliation claim was viable, and specifically reasoned that:

> a homicide investigation unsupportable by the medical evidence, Defendants' later insistence on adhering in the supplemental autopsy report to the core conclusion that homicide was a potential cause of Rojeski's death could have been the product of retaliatory animus.

C.D. Cal. Civ. L.R. 7-18; *Valley II*, 2016 WL 2981757, at *4 (emphasis added).

Valley provided numerous medical expert reports declaring the homicide investigation of Valley was unsupportable by the medical evidence; yet, Defendants persisted to assert that homicide was a potential cause of death. Dkt. No. 550-27, at 2 (Dr. Cyril Wecht); Dkt. No. 550-29, at 3 (Dr. Terry Simpson); Dkt. Nos. 550-26, at 1-2, 550-20, at 5, 550-20, at 5-6, 550-26, at 7, 559, at 8, 585, at 2 (Dr. Michael Sedrak); Dkt. No. 550-22, at 2 (Dr. Michael Fishbine); and Dkt. No. 550-23, at 3 (Dr. Juan Felix); *see also*, Dkt. No. 592, at 2-8. The Dr. Sedrak April 3, 2013 Declaration (Dkt. No. 201-4 at CM/ECF p. 91), and the Dr. Wecht December 13, 2013 Declaration (Dkt. No. 201-5 at CM/ECF p. 29), were exhibits to the SAC, and correspond to Dkt. No. 550-26 and Dkt. No. 550-27, respectively, submitted by Plaintiff in opposition to the summary judgment. The Court has always been aware of these expert Declarations.

Now, as a result of Detective Myers' April 27, 2020, deposition, for which the citable transcript became first available on June 19, 2020, this Court knows for the first time that Ed Winter had asked LAPD for a homicide investigation in 2011 or 2012 and dissembled about it, under penalty of perjury, thereafter. *See* Exhibits A and C to Welden Declaration, *infra*. This information was not available to Plaintiff at the time when the summary judgment motions were briefed.

## II. <u>NEWLY DISCOVERED MATERIAL FACTS</u>

The newly discovered evidence from Detective Myers, discussed below, (1) underscores the direct and material contradiction of the June 20, 2019 Declaration by Winter (Exhibit A, attached), and (2) buttresses the Official Report from Food and Drug Administration Agent Samanta Kelly who spoke to Defendant Winter on January 6, 2012, when Defendant Winter stated to her that Mrs. Rojeski's death "will be ruled a homicide." Exhibit B, attached.

***First***, Defendant Winter testified in his June 20, 2019, sworn Affidavit under penalty of perjury:

> During the pendency of the case, I had contact with LAPD. However, I ***did not*** request they initiate an investigation. I responded to their inquiries regarding the

case, which is customary.

Exhibit A, 6-20-19 Winter Dec., p. 2, lines 17-19 (emphasis in original).

However, on April 27, 2020, LAPD Detective Dan Myers testified to the direct opposite of Winter's claim, demonstrating the falsity of Defendants' claim and the correctness of Valley's lawsuit in this case. Specifically, Detective Myer testified in his 4-27-20 Deposition in the case of Golden State Practice Management et. al. v. County of Los Angeles et al., LASC Case No. SC126530, as follows:

> "Q.   The question is did Ed Winter want you to moving on your investigation --
> "MR. BRENTE:  That's going to call for speculation.
> "BY MR. OMIDI:
> "Q.   -- on the February 2nd, 2012 meeting.  Did he tell you that?
> "A.   You're asking me to speak for Ed Winter and I can't --
> 'Q.   No.  No.  No.  Did he tell you that?  Did he tell you that?
> "A.   Did he tell me what?
> "Q.   Did he tell you that he wanted the LAPD to get moving on their investigation in to Paula Rojeski?
> "A ***They asked us to initiate an investigation.***"

Exhibit C, Myers 4-27-20 Deposition, p. 197, lines 11-25 (Emphasis added).

***Second***, on June 20, 2019, Defendant Winter signed a Declaration under penalty of perjury (Exhibit A) stating:

> "I did not inform any agency that the manner of death was a 'homicide.' "

Exhibit A, 6-20-19 Winter Dec., p. 3, lines 1-2.

In direct contradiction to this false statement is an Official Report from Food and Drug Administration Agent Samanta Kelley who spoke to Defendant Winter on the telephone on January 6, 2012, when Defendant Winter stated to her that Mrs. Rojeski's death will be ruled a homicide."

> 8   On 01/08/2012, SA Kelley submitted a letter to the Los Angeles County Coroner office requesting a 90
> 9   day security hold on the public release of the County of Los Angeles Department of Coroner's investigative findings into the death of Ms. Paula Rojeski, who had died getting the Lap-Band procedure at one of the eight surgical centers operated by the OMIDI brothers.  Ed Winter, Assistant Chief advised
> 10   SA Hadley and SA Kelley that Mrs. Rojeski's death will be ruled a homicide.

Exhibit B to the Welden Declaration, attached.

These above two (2) cited documents, the Winter 6-20-19 Declaration and the 1-6-

12 FDA Official Report of Investigation by FDA Agent Samanta Kelley are irreconcilable.  However, the Report from Agent Kelley was in the course of her official business and she had no reason to alter the truth.  On the other hand, as the newly discovered evidence from the Deposition of Detective Daniel Myers shows, Defendant Winter has committed perjury in his June 20, 2019, Declaration, and that perjury should be of enormous concern to this Court.

## III.   <u>ARGUMENT</u>

The newly discovered record from Detective Myers establishes Defendant Winter has committed perjury with false testimony multiple times in his June 20, 2019, Affidavit. Defendant Winter knew the falsity of his June 19, 2020 Declaration at the time he made it. The material falsity conceals his active participation in the effort to "shut them down", *i.e.*, Valley and those associated as detailed in previous briefings on this issue, with a false Autopsy Report which led to an improper report to law enforcement and an unwarranted criminal investigation. The falsity of Winter's statement in his June 19, 2020 Declaration is a material fact that demonstrates the Coroner created a false autopsy to violate Valley's due process rights under the United States Constitution and to "shut them down."

Defendant Winter declared, with bold emphasis added to his statement, that he never asked anyone to initiate an investigation into Paula Rojeski's Death.  Detective Myer testified, however, that Defendant Winter asked the LAPD to initiate an investigation into the Rojeski Death, contrary to Winter's Declaration.  The existence of this contradiction demonstrates that the summary judgment needed to be reconsidered. There was no basis for the Defendants to instigate an LAPD criminal investigation into the death of Paula Rojeski, which all of Valley's multiple medical experts have testified was an accident.

The falsity of Winter's under oath statement is material to this proceeding because it demonstrates (1) Defendants' participation in the conspiracy to "shut them down," (2) active concealment of the conspiracy, (3) perjury and fraud on the Court in the course of this proceeding, and (4) Defendants' instigation a homicide investigation by the LAPD in

the Rojeski death where no homicide ever was possible.

The material perjury committed by Defendant Winter should so disturb this court that the grandiose claims Defendants made in their Summary Judgment Motions raise the undeniable conclusion that Defendants are engaged in bad faith and frivolous litigation tactics, and have submitted material perjured testimony to this Court, constituting a fraud on this Court.

Valley should be granted relief under Rule 60(b)(2),because as detailed in Valley's prior pleading, Detective Myers had only recently become available for deposition once he retired from the LAPD. Further, prior attempts to depose Detective Myers were unsuccessful. *See* Dkt. No. 619, Supplement. As such, even though the recently obtained information existed at the time of the summary judgment motions, despite Valley's due diligence, it could not have been discovered earlier. The newly discovered evidence is of such magnitude that production of its earlier would have likely changed the disposition of the case and the summary judgment motions. This Court in the past adjusted its rulings in response to new facts and new arguments. Welden Decl., at Paras. 13-14.

Valley should be granted relief under Rule 60(b)(3), which includes any wrongful act by which a party obtains a judgment under circumstances which would make it inequitable for him to retain its benefit. Fraud covered by Rule 60(b)(3) must be of such a nature as to have prevented the moving party from presenting the merits of his case. "Rule 60(b)(3) expressly permits judgments to be set aside for fraud whether denominated intrinsic (*i.e.*, perjury) or extrinsic (i.e., a party prevented by trick, artifice or other fraudulent conduct from fairly presenting his or her claim)." 3 Jones, Rosen, Wegner & Jones, *Rutter Group Practice Guide: Federal Civil Trials & Evidence,* ¶ 20:388 at 20–76 (2015), *citing* Rule 60(b)(3), *United States v. Chapman,* 642 F.3d 1236, 1240 (9th Cir.2011), *Info–Hold, Inc. v. Sound Merchandising, Inc.,* 538 F.3d 448, 455 (6th Cir.2008), *Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir.1985). Rule 60(b)(3) refers to "misconduct of an adverse party," which the newly evidence certainly shows as to Ed Winter.  His falsity here is not the garden variety "omission," but is rather

a very active form of falsity. Specifically, Winter's actions went to the merits of the case by seeking an improper retaliatory homicide investigation from Detective Myers of the LAPD, promising a homicide ruling to Agent Kelley of the FDA, and then denying ever doing so under oath and the penalty of perjury, and then ducking discovery in order to advance his cause toward Defendants' Summary Judgment.

Valley should also obtain relief under Rule 60(b)(6) ("[A]ny other reason that justifies relief.")  The so-called catch-all provision, Rule 60(b)(6), grants the court significant discretion, and is "a grand reservoir of equitable power to do justice in a particular case." *Compton v. Alton S.S. Co.,* 608 F.2d 96, 106 (4th Cir.1979). While the other enumerated provisions of Rule 60(b) and Rule 60(b)(6) are mutually exclusive, *Liljeberg v. Health Servs. Corp.,* 486 U.S. 847, 863 (1988), relief under Rule 60(b)(6) may still be granted in extraordinary circumstances, *Id.* at 863 n. 11. Valley believes Winter's conduct is egregious enough to justify relief under any incarnation of Rule 60 (b), given what Valley has shown thus far.

Plaintiff Valley needs to (and plans to) take Winter's deposition in order to prove to the Court that Winter has perjured himself in order to procure, and in fact did procure, an unjust summary judgment in favor of the County Defendants. For example, Plaintiff seeks to inquire as to Winter's assertion that he never asked for a criminal investigation of Rojeski's death when he actually did ask, as well as to query him about his interactions with the FDA agents and Agent Kelley's report.  Winter has been made unavailable in the case at Bar and in another case in which he was twice noticed for a deposition. Defendants can be counted on the fight extremely hard to keep the facts about Winter in this matter from coming out, which is why they facts need to come out.  Welden Decl., *infra*, Paras. 13 and 14.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Valley respectfully requests relief under <u>Rule 60(b)(2)</u>, <u>Rule 60(b)(3),</u> and/or <u>Rule 60(b)(6)</u> from the July 9, 2020, Order denying the Motion to Reconsider.

*Respectfully Submitted,*

July 15, 2020                                          By:  ***/s/ William B. Welden, Esq.***
                                                         WILLIAM B. WELDEN, ESQ. *for*
                                                         **LAW OFFICE OF WILLIAM WELDEN**
                                                         *Attorney for Plaintiff*
                                                         VALLEY SURGICAL CENTER, LLC,
                                                         a California Limited Liability Company

## DECLARATION OF WILLIAM WELDEN

I, William Welden, declare and say:

1.  I am an attorney at law duly authorized to practice law before all courts in the State of California, and I am an attorney for Valley Surgical Center, LLC.  I make this declaration of my own knowledge, and if called as a witness I would testify as follows:

2.  Plaintiff has discovered new evidence that Defendant Ed Winter has perpetrated a fraud here using perjured testimony.  The perjury committed by Defendant Winter should so disturb this court that it should grant this Rule 60 (b) Motion because it raises the undeniable fact that Defendants are engaged in bad faith and frivolous litigation tactics.

3.  Defendant Winter's perjured testimony is material and demonstrates, *inter alia*, that Valley's claims of being targeted are true.  Defendant Winter has perjured himself, contradicted himself, and stated that he reported the Paula Rojeski death as a homicide to the Food and Drug Administration, only to deny that statement in blatant perjury.  The court should not permit Defendants to win a Motion for Summary judgment based on Winter's perjury.

4.  On June 20, 2019, Defendant Winter signed a Declaration under penalty of perjury (true and correct copy attached as Exhibit A) stating:

"I did not inform any agency that the manner of death was a " 'homicide.' "

5.  This statement was false and all of the Defendants knew it was false at the time it was made.  The statement is so blatant in its falsity that a snap-shot of the document is reproduced below:

on this case has always been "undetermined."  I did not inform any agency that the manner of death was "homicide."

6.  In direct contradiction to this false statement is an Official Report from Food and Drug Administration Agent Samanta Kelley who spoke to Defendant Winter on the

On 01/08/2012, SA Kelley submitted a letter to the Los Angeles County Coroner office requesting a 90 day security hold on the public release of the County of Los Angeles Department of Coroner's investigative findings into the death of Ms. Paula Rojeski, who had died getting the Lap-Band procedure at one of the eight surgical centers operated by the OMIDI brothers.  Ed Winter, Assistant Chief advised SA Hadley and SA Kelley that Mrs. Rojeski's death will be ruled a homicide.

telephone on January 6, 2012, when Defendant Winter stated to her that Mrs. Rojeski's death will be ruled a homicide." True and correct copy attached as Exhibit B.

7.  The above two (2) documents are irreconcilable. However, the Report from Agent Kelley was in the course of her official business and she had no reason to alter the truth. On the other hand, Defendant Winter has committed perjury in his June 20, 2019, Declaration, and that perjury should be of enormous concern to this Court.

8.  The falsity of the statement is material to this proceeding because it demonstrates (1) Defendants' participation in the conspiracy to "shut them down," (2) active concealment of the conspiracy, (3) perjury in the course of this proceeding, and (4) instigation of a homicide investigation by the LAPD in the Rojeski death where no homicide ever was possible.

9.  Defendant Winter testified in his June 20, 2019, sworn Affidavit under penalty of perjury:

> "During the pendency of the case, I had contact with LAPD. However, I ***did not*** request they initiate an investigation. I responded to their inquiries regarding the case, which is customary. (Exhibit A, 6-20-19 Winter Dec., p. 2, lines 17-19) (emphasis original).

10.  However, the statement is false, the emphasis Winter placed in his statement was false, and Defendant Winter knew it was false at the time he made it because the falsity conceals his active participation in the effort to "shut them down." The falsity of the statement is a material fact which demonstrates the Coroner created a false autopsy to "shut them down." On April 27, 2020, LAPD Detective Dan Myers testified to the direct opposite demonstrating the falsity of Defendant's claim and the correctness of Valley's claims in this case.

11.  Detective Myer testified in his 4-27-20 Deposition in this case:

> "Q.   The question is did Ed Winter want you to moving on your investigation --
> "MR. BRENTE:  That's going to call for speculation.
> "BY MR. OMIDI:
> "Q.   -- on the February 2nd, 2012 meeting.  Did he tell you that?
> "A.   You're asking me to speak for Ed Winter and I can't --

'Q.   No.  No.  No.  Did he tell you that?  Did he tell you that?
"A.   Did he tell me what?
"Q.   Did he tell you that he wanted the LAPD to get moving on their investigation in to Paula Rojeski?
"A.   They asked us to initiate an investigation."

True and correct copy attached as Exhibit C, Myers 4-27-20 Depo, p. 197, lines 11-25.

12.  Defendant Winter has committed perjury with false testimony multiple times in his June 20, 2019, Affidavit in order to conceal the concerted activity to "shut them down" with a false Autopsy Report which led to an improper report to law enforcement of "extreme departure from the standard of care" or homicide.  First, Winter materially declared he never asked anyone to initiate an investigation into Paula Rojeski's Death. Then, Detective Myers testified Defendant Winter asked the LAPD to initiate an investigation into the Rojeski Death.

13.  Valley needs to (and plans to)  take Winter's deposition in order to prove to the Court that Winter has perjured himself in order to win the County's case, e.g., to claim he never asked for a criminal investigation of Rojeski's death when he actually did ask. Winter's request to Myers to investigate Rojeski's death had not been known until Myers' Deposition, Winter had denied doing any such thing as recently as June 2019, and it was not known that Myers would contradict Winter as Myers did on April 27, 2020. Winter's deposition was set to be taken at the time the Motion for Summary Judgment was granted, which pulled the plug on discovery.  The County refused to make Winter available for a deposition in a different case, and then filed a Motion for a Stay.  Had the magnitude of Winter's fraud been known in October 2019, based on past experience and especially the Court's May 23, 2016 ORDER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION Dkt 237, Summary Judgment would not have been granted.  This Court has a history of making changes in response to new facts and new arguments.

14.  This Motion was filed after an attempt to meet and confer under Local Rule 7-3.  Past experience over many years and the fact that opposing counsel all know the above facts about Ed Winter because they also participated in Detective Myers' deposition and

knew of Exhibit C, and we have rehashed in the past the same issues about Ed Winter that appear in Exhibits A and B, supra, all of this underscores that any meet and confer is futile here.  Valley seeks Ed Winter's deposition and I know from past and current experience that the County does not want Winter deposed.  The County has twice sought a stay of discovery in a separate case in which Winter's deposition is being sought.  However, in an attempt to meet and confer, Mr. Welden called Mr. Monroy and Ms. Gysler three times on July 15, 2020, at 818-889-0661, and each time a recording came on that said the number had been dialed wrong or was temporarily unavailable; Mr. Welden called Mr. Becks' office on July 15, spoke to his associate Ms. Ferrouilet who was cordial but could not agree to filing a Rule 60(b) Motion.  Given the July 9 date of the Order denying the motion for reconsideration, and the press of other pending matters, waiting for a week to file the motion was not practicable. At 8:44 pm, I sent this email to all counsel (and Mr. Omidi as a pro per in another case involving Winter):

> "In an attempt to meet and confer prior to filing a FRCP Rule 60 (b) Motion in Valley Surgical v County, I attempted to call Mr. Monroy and Ms. Gysler three times on July 15, 2020, at 818-889-0661, ending at about 3:27 pm; and each time a recording came on that said the number had been dialed wrong or was temporarily unavailable.  I called Mr. Becks' office shortly thereafter on July 15, spoke to his associate Ms. Ferrouilet who was cordial but could not agree to my filing a Rule 60(b) Motion.  Given the July 9 date of the Order denying the motion for reconsideration, and the press of other pending matters, and the history of this case, waiting for a week to file the motion was not practicable."

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct. Executed this 15th day of July, 2020, at Los Angeles, California.

*/s/ William Welden*

William Welden

# EXHIBIT A

# DECLARATION OF ED WINTER

I, Ed Winter, hereby declare:

I am a party to this lawsuit. If called upon to do so, I could and would competently testify to the following facts which are within my own personal knowledge.

1. I am currently the Assistant Chief of Operations / Investigations for the Los Angeles County Coroner's Office and have held that position since April 2007. I began with the Coroner's Office as a Lieutenant from February 2003 to August of 2005. I was promoted to Captain and held that position from August 2005 to April 2007. Thereafter I was promoted to my present position.

2. Prior to working at the Coroner's Office I was a Special Deputized U.S. Marshal for Federal Court Security for approximately one year. Before that I worked for the Arcadia Police Department from 1974 to 2002. My assignments included that of a patrolman, field training officer, traffic officer, K9 handler, Hazardous Devices / Bomb Specialist and SWAT Team member. I was promoted to the rank of Sergeant and served as a Patrol Supervisor and SWAT Supervisor. I was eventually promoted to the rank of Lieutenant and served as Watch Commander, SWAT Commander and Deterective Commaner before I retired in 2002. From 1971 to 1974, I was a police officer with the Pacific Grove Police Department. I served in the U.S. Army from 1969 to 1971, and promoted to the rank of Sergeant while assigned to the 54th Military Police, Provost Marshals Office and worked with the Military Police Investigative Service and Criminal Investigation Detachment.

3. I have a BA degree from UC Riverside. I have the following specialized trainings: FBI Hazardous Devise Specialist, DEA Drug Commanders School, Emergency Management Training, FBI SWAT School, I have many POST (California Peace Officers Standardized Training) Certificate, and am also a POST Instructor and teach POST Homicide School at the Orange County Sheriff's Department Academy and Homicide School for Los Angeles Police Department.

4. I was aware of the site inspection of plaintiff's facility on December 5, 2011, pursuant to a subpoena. I did not attend the site inspection.

5. In the latter part of 2011, I was informed by Captain Kades that he had been contacted by the FDA in regards to their investigation of the plaintiff's clinic(s), and their lap band surgeries regarding potential insurance fraud and advertising. It is customary that the Coroner's Office would cooperate with other government agencies' investigations. However, the Coroner's Office **did not** initiate contact with the FDA and **did not** request that they conduct any type of investigation. As noted, the FDA requested a security hold during the time the case was pending.

6. During the pendency of the case, I had contact with LAPD. However, I **did not** request they initiate an investigation. I responded to their inquiries regarding this case, which is customary. LAPD requested a security hold on the case pending their investigation, which would preclude us from publicly releasing the autopsy findings.

7. I did not disclose the autopsy findings to the public while the security holds were in place.

8. In my position as Assistant Chief, I do not have the authority to determine the cause of death or manner of death. That is within the purview of the Senior Medical Examiner on the case, Dr. Djabourian. The manner of death

on this case has always been "undetermined."   I did not inform any agency that the manner of death was "homicide."

9. I was not involved in the assignment of this case to the physicians, nor was I involved in determining who would consult on the case.

10. I did not retaliate against Valley Surgical.  I was present at the meeting at the Coroner's Office requested by plaintiff's attorneys in January 2013.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th of June, 2019, at Los Angeles, California.

Ed Winter, Declarant.

# EXHIBIT B

Declaration of Roger Jon Diamond

I, ROGER JON DIAMOND declare as follows:

1)      I am an attorney at law admitted to practice before all of the courts in the State of
California. I have personal knowledge of the forgoing facts and would competently
testify thereto.

2)      Below is a true and correct copy of the relevant portion of Exhibit L, the Food and Drug
Administration's Report of Investigation, to a June 5, 2014 filing in case CR 13-739:

On 01/06/2012, SA Kelley submitted a letter to the Los Angeles County Coroner office requesting a 90
day security hold on the public release of the County of Los Angeles Department of Coroner's
investigative findings into the death of Ms. Paula Rojeski, who had died getting the Lap-Band procedure
at one of the eight surgical centers operated by the OMIDI brothers.  Ed Winter, Assistant Chief advised
SA Hadley and SA Kelley that Mrs. Rojeski's death will be ruled a homicide.

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.

Executed on November 24, 2015, at Los Angeles, California.

Roger Jon Diamond
_____
Roger Jon Diamond

-12-

**SUPPLEMENTAL REPLY DUE TO NEW INFORMATION**

EXHIBIT C

**In the Matter Of:**

GOLDEN STATE PRACTICE MGMT. vs CO. OF LA, ET AL.

CASE NO. SC126530

---

# DANIEL MYERS

*April 27, 2020*

---



800.211.DEPO (3376)
EsquireSolutions.com

1              SUPERIOR COURT OF CALIFORNIA

2                COUNTY OF LOS ANGELES

3

4   GOLDEN STATE PRACTICE MANAGEMENT,
    LLC, et al.,
5

6          Plaintiffs,

7      vs.                          CASE NO. SC126530

8
    COUNTY OF LOS ANGELES, et al.,
9

10          Defendants.

11  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

12

13

14

15      VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

16                  DANIEL MYERS

17

18                April 27, 2020

19                  10:15 a.m.

20

21

22              Orange, California

23

24

25      Margaret M. Bourgeois, CSR No. 11569



800.211.DEPO (3376)
EsquireSolutions.com

DANIEL MYERS                                                    April 27, 2020
GOLDEN STATE PRACTICE MGMT. vs CO. OF LA, ET AL.                            2

```
 1                    APPEARANCES OF COUNSEL

 2    For Plaintiff Golden State Practice Management,
      LLC:
 3
           Law Offices of William Welden
 4         William Welden, ESQ.
           9663 Santa Monica Boulevard
 5         Suite 234
           Beverly Hills, California   90210
 6         (310) 947-4633

 7
      For Plaintiff Julian Omidi:
 8
           Julian Omidi
 9         In Pro Per
           weightlosscenters@gmail.com
10

11    For Deponent:

12         City of Los Angeles
           Office of the City Attorney
13         Cory Brente, ESQ.
           200 North Main Street
14         7th Floor
           Los Angeles, California   90012
15         (213) 978-8100
           cory.brente@lacity.org
16

17    For County of Los Angeles:

18         Monroy Averbuck & Gysler
           Jon Monroy, ESQ.
19         Jennifer Gysler, ESQ.
           32123 Lindero Canyon Road
20         Suite 301
           Westlake Village, California   91361
21         (818) 889-0661
           triallawyermonroy@gmail.com
22         jennifergysler@gmail.com

23

24

25
```



1        APPEARANCES OF COUNSEL (Continued...)

2

3    For Selma Calmes, M.D.:

4        Harold Becks & Associates
         Harold Becks, ESQ.
5        3250 Wilshire Boulevard
         Suite 708
6        Los Angeles, California  90010
         (213) 385-9852
7        hbecks@beckslaw.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



DANIEL MYERS                                             April 27, 2020
GOLDEN STATE PRACTICE MGMT. vs CO. OF LA, ET AL.                   203

1  that -- what does it mean that there are a number of

2  agencies that are involved in different aspects of the

3  investigation as we need to get the LAPD moving on

4  their investigation?  At the meeting how did they --

5  did anyone from the Coroner's office tell you that how

6  the LAPD should be getting -- moving on with that

7  investigation?  What was going on with that to your

8  understanding?

9          MR. BRENTE:  Okay.  That's compound.  I mean,

10  you're just asking different questions in one question.

11  What's the one question you have?

12  BY MR. OMIDI:

13      Q.   The question is did Ed Winter want you to get

14  moving on your investigation --

15          MR. BRENTE:  That's going to call for

16  speculation.

17  BY MR. OMIDI:

18      Q.   -- on the February 2nd, 2012 meeting.  Did he

19  tell you that?

20      A.   You're asking me to speak for Ed Winter and I

21  can't --

22      Q.   No.  No.  No.  Did he tell you that?  Did he

23  tell you that?

24      A.   Did he tell me what?

25      Q.   Did he tell you that he wanted the LAPD to



DANIEL MYERS                                      April 27, 2020
GOLDEN STATE PRACTICE MGMT. vs CO. OF LA, ET AL.        204

1   get moving on their investigation in to Paula Rojeski?

2        A.   They asked us to initiate an investigation.

3   I mean, I don't know if he actually told me moving?

4   No, they asked -- they asked for LAPD to open up an

5   investigation.

6        Q.   Okay.  Well, I mean, the investigation was

7   already requested on January 19th.  Right?  So this is

8   another meeting.  This is a follow-up meeting.  And

9   why -- why -- what was the purpose of the follow-up

10  meeting on February 2nd, 2012?

11           MR. BRENTE:  So I'm --

12  BY MR. OMIDI:

13       Q.   Why did -- why did -- what was the -- what

14  was the purpose of the meeting?  Why did you attend the

15  meeting?

16           MR. BRENTE:  You've got like four different

17  questions in one transcript so what --

18           MR. OMIDI:  Last question only.

19           MR. BRENTE:  What's the question?

20  BY MR. OMIDI:

21       Q.   Were -- did you attend the February 2nd, 2012

22  meeting?

23       A.   I was asked to go there.

24       Q.   Okay.  And what did you discuss regarding

25  the -- basically if this case is going to be homicide,



# PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 9663 Santa Monica Blvd., No. 234, Beverly Hills, CA 90210.

On July 15, 2020, I served the document described as:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RELIEF UNDER FRCP 60 (b) FROM THE COURT'S ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES; WELDEN DECLARATION**

Upon the interested parties in this action as follows:

_____X_____ By the Court's ECF.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 15, 2020.


/s/ William Welden
_____
William Welden